UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| DARLINGTON AMADASU, | : Case No. 1:01CV182 |
| Plaintiff, | : |
| v. | : Judge S. Arthur Spiegel<br>: Magistrate Judge Timothy S. Black |
| MERCY FRANCISCAN HOSPITAL, et al., | : **I. JOINT MOTION OF DEFENDANTS TO STRIKE PLAINTIFF DARLINGTON AMADASU'S EXPERT IDENTIFICATION** |
| Defendants. | : **II. JOINT MOTION OF DEFENDANTS FOR SUMMARY JUDGMENT** |

Defendants Ravi B. Berry, M.D. ("Dr. Berry"), Mercy Franciscan Hospital - Western Hills, Mercy Franciscan Hospital - Mt. Airy, Steven Grinnell, Charles Lobeck, June Bronhert, n/k/a/ Gatzke, Judy Daleiden, Connie McCoy and Jane(s) Doe(s) Nurses (collectively, "the Mercy Defendants")(together, "Defendants") respectfully move this Court to strike the expert identification of Plaintiff Darlington Amadasu ("Plaintiff" or "Amadasu"). Amadasu, who identified himself as an expert, does not qualify as an expert under Ohio R. Evidence 601(D), nor would his opinions (as reflected in his Report) meet the requirements set forth by Fed. R. Evidence 702 or *Daubert v. Merrell Dow Pharm., Inc.* and its progeny for the admission of expert testimony. Accordingly, Plaintiff's Expert Report and his identification of himself as an expert should be stricken.

In addition, pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants respectfully move this Court for summary judgment in their favor as to all claims requiring

expert testimony. With respect to Dr. Berry, all of Plaintiff's claims fail and Dr. Berry is entitled to summary judgment as to every claim asserted against him. Amadasu has failed to name a qualified expert and the time allowed for him to do so has passed. Accordingly, there is no genuine issue of material fact remaining for trial, even when construing the facts of this case in a light most favorable to Plaintiff, thereby entitling Defendants to judgment as a matter of law. Simply stated, Plaintiff has no expert testimony against Defendants and cannot prove his medical and other related claims without it.

Alternatively, Defendants respectfully request that this Court grant them additional time to identify their experts and submit their expert reports. Such an extension of time would allow Defendants to potentially avoid unnecessary expenses and time involved in obtaining expert witnesses to review the matter and prepare reports, in the event this Court were to grant their motion for summary judgment.

This motion is supported by the attached memorandum of law, the affidavit of Matthew S. Arend (Ex. A), and Plaintiff Amadasu's Responses to Defendant Ravi B. Berry, M.D.'s First Requests for Production of Documents and First Requests for Admissions (Ex. B). A proposed order is attached hereto as Exhibit C.

Respectfully submitted,

/s/ Deborah R. Lydon
Deborah R. Lydon (0013322)
Jennifer Orr Mitchell (0069594)
Matthew S. Arend (0079688)
DINSMORE & SHOHL LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, OH 45202
(513) 977-8200
*Counsel for Defendant Dr. Berry*

/s/ Karen A. Carroll
Karen A. Carroll
Kohnen & Patton LLP
PNC Center, Suite 800
201 East Fifth Street
Cincinnati, Ohio 45202
(513) 381-0656
*Counsel for the Mercy Defendants*

## MEMORANDUM OF LAW

### I.   Introduction.

This case stems from psychiatric care provided by Dr. Berry and the Mercy Defendants to Amadasu in April of 2000. Amadasu was admitted to the emergency department of Mercy Franciscan Hospital - Western Hills ("Western Hills") on or about April 24, 2000 seeking psychiatric treatment.[1] He was later transferred to and admitted as a voluntary inpatient at Mercy Franciscan Hospital - Mt. Airy ("Mt. Airy").[2] Dr. Berry was an attending psychiatrist at Mt. Airy and treated Amadasu during his stay there.[3]

Amadasu apparently became unsatisfied with the care he received there and filed a thirteen page, twenty-two count complaint against eight named defendants and a number of unnamed "Jane Does."[4] The lawsuit makes numerous accusations, ranging from malpractice in the care he received to employment discrimination. Dr. Berry and the Mercy Defendants were the named defendants in the complaint, which appears to claim (among other things as to the Mercy Defendants only) that their actions constituted medical negligence -- i.e., that they violated the applicable standards of care during his treatment of Amadasu in April of 2000.[5] These claims are unsupported by any admissible expert testimony and, accordingly, Defendants

---

[1] See, Complaint ¶ 15.
[2] See, Id.
[3] See, Complaint ¶ 3.
[4] See, Complaint ¶¶ 2-9.
[5] See, Complaint ¶¶ 65-66.

3

are entitled to summary judgment. Plaintiff's Complaint asserts numerous causes of action against Defendants based on the care provided to him in April of 2000, all of which fail without expert testimony; thus, for purposes of this motion, they are all addressed together, as if one and the same.

It is well-established under Ohio law that, in order to establish a *prima facie* case of medical malpractice as a result of medical negligence, Plaintiffs must establish (a) the prevailing standard of care of doctors under like or similar circumstances; (b) the defendant doctor's deviation from that standard of care; **and** (c) that such deviation by the defendant doctor proximately caused the plaintiff's injuries.[6]

Amadasu cannot establish *any* of these elements, as he has *no expert testimony* and the ***deadline for Plaintiff to identify expert witnesses has now passed***. Although Amadasu identified himself as an "expert" in psychiatry and submitted an unsupported, conclusory, "expert report," he is not qualified to testify as an expert under Ohio law and any testimony he would offer in such an "expert" capacity must be barred as unqualified and unreliable. Accordingly, Amadasu has no support for his claims against Defendants and summary judgment is now appropriate.

**II.   Law and Argument.**

    **A. Legal Standard.**

In federal diversity actions, state law governs substantive issues and federal law governs procedural issues.[7] In medical malpractice actions, where expert testimony is required to establish the standard of care, State witness competency rules are considered substantive issues.[8]

---

[6] *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 131-132, 346 N.E.2d 673 (S. Ct. Ohio 1976); *see also, Ramage v. Cent. Ohio Emergency Serv., Inc.*, 64 Ohio St.3d 97, 102, 592 N.E.2d 828 (S. Ct. Ohio 1992).
[7] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 82 L. Ed. 1188, 58 S. Ct. 817 (1938).
[8] *Legg v. Chopra*, 286 F.3d 286, 289-290 (6th Cir. 2002).

Federal Rule of Evidence Rule 601 incorporates the *Erie* mandate by expressly providing that "with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law."[9]

Ohio Evidence Rule 601(D)[10] governs the competency of persons giving expert testimony on the liability issues in a medical claim and provides that every person is competent to be a witness *except*:

> A person giving expert testimony on the issue of liability in any claim asserted in any civil action against a physician, podiatrist, or hospital arising out of the diagnosis, care, or treatment of any person by a physician or podiatrist, *unless the person testifying is licensed to practice medicine and surgery, osteopathic medicine and surgery, or podiatric medicine and surgery by the state medical board or by the licensing authority of any state, and unless the person devotes at least one-half of his or her professional time to the active clinical practice in his or her field of licensure, or to its instruction in an accredited school.* (Emphasis added.)

In addition, even if a witness is deemed competent to testify under state law to the substantive issue in the case, such as the standard of care, his or her testimony should then be screened by Rule 702 of the Federal Rules of Evidence to determine if it is otherwise admissible testimony.[11] Under Rule 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993), district court judges are to serve a "gatekeeping role" to ensure that all expert testimony admitted is both relevant and reliable.[12] Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, *a witness qualified as an expert by knowledge, skill, experience, training, or education*, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and

---

[9] *Legg*, 286 F.3d at 290.
[10] Subdivision (D) incorporates into the rule on competency of witnesses the provisions of R.C. 2743.43 with respect to expert testimony on medical liability issues. The application of this subdivision is in accordance with the definition of a "medical claim" as provided in R.C. 2305.11(D)(3). The rule as adopted supersedes R.C. 2743.43. See, Ohio Evidence R. 601, Staff Notes, 7-1-91; See also, *McCrory v. State*, 67 Ohio St. 2d 99, 103, 423 N.E.2d 156 (S. Ct. Ohio 1981).
[11] *Legg*, 286 F.3d. at 292.
[12] *See Daubert*, 509 U.S. at 589.

(3) the witness has applied the principles and methods reliably to the facts of the case. (Emphasis added.)

A district court's exclusion of expert testimony will not be set aside except for an abuse of discretion.[13]

Summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[14] In considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party.[15] The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[16] A complete failure of proof concerning an essential element necessarily renders all other factors immaterial.[17]

Amadasu is not competent to offer expert testimony about any aspect of his claims against Defendants under Ohio law, nor is he qualified as an expert witness under Fed. R. Evid. 702. Accordingly, Amadasu should not be permitted to testify against Defendants and his expert identification should be stricken. Without any expert testimony to establish the relevant standard of care for psychiatrists and Defendants' alleged deviation from that standard, Amadasu's claims fail as a matter of law.

### B. Amadasu Is Not Qualified to Offer Expert Opinions Under R. 602(D) of the Ohio Rules of Evidence.

Ohio Evidence Rule 602(D) provides that persons offering expert testimony on issues of liability in a medical claim are competent to testify only if they are (a) licensed to practice medicine and surgery, osteopathic medicine and surgery, or podiatric medicine and surgery by

---

[13] *Gen'l Elec. Co. v. Joiner,* 522 U.S. 136, 143, 139 L. Ed. 2d 508, 118 S. Ct. 512 (1997).
[14] Fed. R. Civ. P. 56(c).
[15] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).
[16] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).
[17] *Rodgers v. Monumental Life Ins. Co.,* 289 F.3d 442, 448 (6th Cir. 2002).

the state medical board or by the licensing authority of any state, *and* (b) devote at least one-half of their professional time to the active clinical practice in their field of licensure, or to its instruction in an accredited school. Amadasu does not meet either of these requirements, and, accordingly, is not competent offer expert testimony.

### 1. Amadasu Is Not Licensed to Practice Medicine In Any U.S. Jurisdiction.

A search of online databases maintained by the state medical boards and licensing authorities of all 50 states and the District of Columbia reveals that Amadasu is not licensed to practice medicine anywhere in the United States.[18] While Amadasu claims to have obtained a medical degree from Nigeria in 1979, this alone will not suffice to qualify him as an expert under Ohio law.[19] Evid. R. 601(D) prohibits an expert witness in a medical malpractice action from testifying on the issue of liability if that expert is not licensed to practice in one of the states of the United States.[20] In his Notice of Compliance With Expert Witness Identification Deadlines, Amadasu states that, among other things, he will "render opinion and testify to the issues of medical and psychiatric care and treatment, informed consent, transfer, confidentiality, and other related issues."[21] Such testimony goes to the alleged liability of Defendants on the claims at issue and Amadasu should not be permitted to testify on these subjects under Ohio Evid. R. 601(D). Amadasu has named no expert witnesses other than himself and, accordingly, his claims against Defendants must fail for lack of expert support.

### 2. Amadasu Does Not Devote at Least One-Half of His Professional Time to Active Clinical Practice or to Instruction in an Accredited School.

---

[18] Arend Aff., Ex. A, at ¶ 3.
[19] See, Expert Report of Darlington Amadasu, Docket No. 57, Attachment No. 1, ¶ 1, ll. 2-7, and Curriculum Vitae (Attachment No. 2 to Docket No. 57), ¶ 2.
[20] *Joyce-Couch v. DeSilva*, 77 Ohio App. 3d 278, 285-286, 602 N.E.2d 286 (Ohio Ct. App. 1991); see also, *Karpinski v. Limm*, 2004 Ohio 3037, *P7, 2004 Ohio App. LEXIS 2678 (Ohio Ct. App. 2004).
[21] See, Docket No. 56. Additionally, by identifying himself as an expert qualified to give testimony on issues of medical malpractice, Amadasu appears to be currently violating the prohibitions against the unauthorized practice of medicine set forth under O.R.C. §§ 4731.34 and 4731.41.

In addition to not being licensed, there is no evidence showing that Amadasu devotes any time to active clinical practice, or to instruction in an accredited school. Indeed, as he currently lacks a medical license, Amadasu cannot devote *any* time to active clinical practice. In addition, Amadasu has never taught at any accredited school, anywhere, much less *now*, in the U.S. His last position that involved a health care-related field in any way appears to have been the time he spent as a first-year resident in occupational medicine at the University of Cincinnati, a position that purportedly ended on June 30, 2000.[22]

When asked by Dr. Berry to identify any documents related to his formal education since 1990, Amadasu provided only a master's degree in public health from the University of Utah in 1999 and a certificate of completion of a residency in occupational medicine from the University of Cincinnati in 2000.[23] Amadasu has failed to provide any evidence that he completed any further medical training beyond 2000 and has refused to provide Dr. Berry with records of any employment since then.

Accordingly, Amadasu fails the second prong of Evid. R. 601(D) and cannot be deemed an expert. Amadasu may not testify as to issues of Defendants' liability and Amadasu's claims must fail for lack of expert support.

### C. Amadasu May Not Testify as an Expert Witness Under R. 702 of the Federal Rules of Evidence.

Even if this Court were to somehow find that Amadasu was qualified as an expert witness under Ohio Evid. R. 601(D), his testimony would still be barred under Fed. R. Evid. 702 and this Court's *Daubert* "gatekeeping" role. Amadasu's testimony would not be based on any adequate knowledge, skill, experience, training, or education, as required by the rule, and would not assist

---

[22] See, Amadasu Discovery Responses, Ex. B, at p. 4, ¶ 5 and supporting documents attached thereto as PL00022 and PL00023.
[23] Id.

the trier of fact to understand the evidence or to determine a fact in issue. Accordingly, Rule 702 operates as a bar to Amadasu's testifying as an expert witness on any issue as to his claims against Defendants.

### 1. Amadasu Has No Knowledge, Skill, Experience, Training, or Education in the Field of Psychiatry.

To qualify as an expert under Rule 702, a witness must first establish his expertise by reference to "knowledge, skill, experience, training, or education."[24] Although this requirement has always been treated liberally, liberal interpretation of this requirement "does not mean that a witness is an expert simply because he claims to be."[25] While Amadasu claims in his expert report to have been the "associate medical director of Abua Nwaefuna Medical Center" and a "staff physician of Mesmer (psychiatric) Hospital" in Lagos, Nigeria, these claims are directly contradicted by records of his training and by his Curriculum Vitae (C.V.).

On the C.V. Amadasu attached as Exhibit 1 to his expert Report (Docket No. 57), he claims to have held the positions listed above from 1980-1998 and 1980-1996, respectively. However, on that same C.V., Amadasu represents that he was an Internal Medicine Extern/Associate at St. Mary Hospital in Brooklyn, New York from 1991-1992 and a Family Practice Resident at Bronx-Lebanon Hospital Center, Bronx, New York, from 1992-1993. The residency certificate attached as Exhibit 1 to the Arend Affidavit (Ex. A) verifies that Amadasu was actually in New York City, and not in Nigeria practicing psychiatry, as he claims in his expert report.

Furthermore, in the C.V. Amadasu submitted to the University of Cincinnati when he was seeking a resident position in 1998, attached hereto as Exhibit 2 to the Arend Affidavit (Ex. A), he lists both an externship and a residency in New York City, but makes no reference to any

---
[24] Fed. R. Evid. 702.
[25] *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000).

training in psychiatry, or to positions held at either Abua Nwaefuna Medical Center or Mesmer (psychiatric) Hospital. Indeed, the first reference to any training or experience in the field of psychiatry by Amadasu appears to have been made specially for purposes of his testifying as an expert witness in the case at bar.[26]

As shown above, Amadasu cannot substantiate any of the claims made about his psychiatric training and experience listed in his expert Report. The claims are directly contradicted by his own statements in the Report and by records showing he could not have been in Nigeria practicing psychiatry during the period he claims. Accordingly, Amadasu has failed to show that he is qualified under Rule 702 to testify as an expert on issues of psychiatric care. This Court should strike his identification as an expert and prohibit Amadasu from testifying as to Defendants' alleged liability in this matter.

### 2. Amadasu's Testimony Will Not Assist the Trier of Fact to Understand the Evidence or to Determine a Fact in Issue.

A party proffering expert testimony has the burden of demonstrating by a "'preponderance of proof that the expert whose testimony is being offered is qualified and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of issues relevant to the case."[27] Because Amadasu's claims relating to his experience and education in the field of psychiatry cannot be considered reliable, he must be considered a lay witness, rather than an expert. Any testimony offered by him in any other capacity relating to his psychiatric care and treatment would only serve to mislead and confuse the trier of fact.

The law recognizes that lay witnesses are simply not qualified to testify about matters requiring scientific, technical, or other specialized knowledge, especially in the medical

---

[26] Arend Aff, Ex. A, at ¶ 4.
[27] *Pride v. BIC Corporation*, 218 F.3d 566, 578 (6th Cir. 2000).

malpractice context.[28] In addition, psychiatry is a highly specialized field of medicine about which non-psychiatrists, even those with experience in other, more general, medical fields, may not be qualified to offer testimony.[29] Any testimony by Amadasu about the field of psychiatry would be pure speculation. Certainly, it should not be relied upon to assist the trier of fact to understand and determine relevant issues in this case.

While Ohio law does recognize that "where the fields of medicine overlap, a witness from a school or specialty other than that of the defendant physician may qualify as an expert witness if he demonstrates sufficient knowledge of the standards of the defendant's school and specialty enabling him to give an expert opinion as to the conformity of the defendant's conduct to those particular standards,"[30] Amadasu had made no showing that the fields of family practice or occupational medicine overlap with psychiatry or that he has sufficient knowledge of the field of psychiatry to offer an expert opinion on the required standard of care in that field.

### III. Conclusion.

For the foregoing reasons, Defendants respectfully request that this Court strike Amadasu's Expert Identification and **GRANT** their Motion for Summary Judgment. Alternatively, Defendants respectfully request that this Court grant them additional time to identify their experts and submit their expert reports.

---

[28] See, *Bruni v. Tatsumi*, 46 Ohio St. 2d 127, 130, 346 N.E.2d 673 (S. Ct. Ohio 1976), (The issue as to whether the physician and surgeon has proceeded in the treatment of a patient with the requisite standard of care and skill must ordinarily be determined from the testimony of medical experts.); see also, *Alexander v. Mt. Carmel Medical Center*, 56 Ohio St. 2d 155, 162, 383 N.E.2d 564 (S. Ct. Ohio 1978), ("A medical malpractice case is generally one of the classic examples of the *necessity* of expert opinion testimony as to the ultimate issue.")

[29] See, *Bouchard v. Am. Home Prods. Corp.*, 2002 U.S. Dist. LEXIS 27517, *6, (6th Cir. 2002), ("A court should exclude proffered expert testimony if the subject of the testimony lies outside the witness's area of expertise. In other words, a party cannot qualify as an expert generally by showing that the expert has specialized knowledge or training which would qualify him or her to opine on some other issue."); see also, *Littleton v. Good Samaritan Hospital & Health Center*, 39 Ohio St. 3d 8, 19, 346 N.E.2d 673 (S. Ct. Ohio 1988), ("A psychiatrist, as a medical specialist, is held to the standard of care of a reasonable specialist practicing medicine or surgery in that same specialty in the light of present day scientific knowledge in that specialty field.")

[30] *Ishler v. Miller*, 56 Ohio St. 2d 447, 453, 384 N.E.2d 296 (S. Ct. Ohio 1978), citing *Alexander v. Mt. Carmel Medical Center*, 56 Ohio St. 2d 155, 383 N.E.2d 564 (S. Ct. Ohio 1978).

Respectfully submitted,

/s/ Deborah R. Lydon
Deborah R. Lydon (0013322)
Jennifer Orr Mitchell (0069594)
Matthew S. Arend (0079688)
DINSMORE & SHOHL LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, OH 45202
(513) 977-8200
*Counsel for Defendant Dr. Berry*

/s/ Karen A. Carroll
Karen A. Carroll
Kohnen & Patton LLP
PNC Center, Suite 800
201 East Fifth Street
Cincinnati, Ohio 45202
(513) 381-0656
*Counsel for the Mercy Defendants*

## CERTIFICATE OF SERVICE

I certify that on August 29, 2006 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all the following except Defendant Darlington Amadasu. I also sent the foregoing via U.S. mail to Defendant Amadasu at the address listed below:

Darlington Amadasu
P.O. Box 6263
Cincinnati, OH 45206

/s/ Jennifer Orr Mitchell
Jennifer Orr Mitchell
DINSMORE & SHOHL LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, OH 45202
(513) 977-8200 (telephone)
(513) 977-8141 (facsimile)
Email: Jennifer.Mitchell@dinslaw.com
*Counsel for Defendant Dr. Berry*

12