IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

07 JUN 31  PM 2: 58

DARLINGTON AMADASU
                            Plaintiff

Case No.: C-1-01-182
[Spiegel/Black]

v.

**PLAINTIFF'S OBJECTIONS TO GRANTING
DEFENDANTS'JOINT MOTIONS TO DISMISS, and
FOR SUMMARY JUDGMENT; and
TO REPORT & RECOMMEDATIONS**

MERCY FRANCISCAN HOSPITAL
WESTERN HILLS, et al
                            Defendants.

**WITH AFFIDAVIT, EXHIBITS & DISCOVERY RESPONSES**

**OMNIBUS OPPOSITION TO DEFENDANTS' JOINT SUMMARY JUDGMENT MOTION;
OBJECTIONS TO STRIKING LAY WITNESS DISCLOSURE, DENYING MOTION TO
VACATE 11/07/06 ORDER, & MAGISTRATE REPORT AND RECOMMENDATION**

Plaintiff hereby submits his omnibus oppositions and /or objections to defendants' joint

motions for summary judgment (Docs. 59) as well as Order (Doc.92) striking lay witness disclosure

(Doc.62), Order (Doc.92) denying motion (Doc.76) to vacate & set aside 11/07/06 order (Doc.73); and

Report and Recommendations (R&R) to grant defendants' joint motions (Doc. 93). These oppositions

and or objections are incorporated by reference with plaintiff's motions to vacate and set aside

(Doc.76), Plaintiff's Oppositions (Doc.81) to defendants' motion to dismiss, plaintiff cross-motion for

summary judgment, affidavit with discovery responses and exhibits in support thereof that

contemporaneously filed the same day.

Plaintiff respectfully prays the district judge to make Rule 72 de novo review of the entire

record.

**Standard of Consideration and review under Rule 72:**

FRCP 72(a) provides in pertinent part in nondispositive matters that:
    The district judge to whom the case is assigned shall consider such objections and shall modify
    or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.

FRCP 72(b) provides in pertinent part in dispositive motions that:

    The district judge to whom the case is assigned shall make a *de novo* determination upon the record, or
    after additional evidence, of any portion of the magistrate's disposition to which specific written
    objection has been made in accordance with this rule. The district judge may accept, reject, or modify
    the recommended decision, receive further evidence, or recommit the matter to the magistrate judge
    with instructions

It has been held that the district judge has discretion to consider additional evidence not presented to magistrate. Carpet Group Int'l v. Oriental Rug Importers Association, Inc., 227 F.3d 62, 73 (3rd Cir.2000).

## SUMMARY JUDGMENT STANDARD:

The Ohio Supreme Court had articulated the following standard: A party seeking summary judgment...bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Rule 56 simply by making a conclusory assertion that the moving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Rule 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. Dresher v. Burt, 75 Ohio St. 3d 280, 295 (1996). The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment. Harless v. Willis Day Whse. Co., 54 Ohio St.2d 64, 66 (1978). In determining whether summary judgment is warranted, a court must construe evidence in the light most favorable to the non-moving party (Plaintiff), and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party (Plaintiff) opposing the motion." See, e.g., United States v. Diebold. Inc., 369 U.S. 654, 655 (1962); Matsushita Elec. Industries Co. v. Zenith Radio Corn., 475 U.S. 574, 587 (1986); Brooks v. ABC. Inc., 932 F.2d 495, 500 (6th Cir. 1991).

### Defendants' basis for motions for summary judgment, to compel and dismiss must fail as they are legally defective; and Magistrate's basis of R & R to grant summary judgment and to dismiss must also fail

Defendants seek summary judgment "in their favor as to all claims requiring expert testimony" on the basis that (1) plaintiff does not qualify as an expert under Ohio R. Evidence, (2) he has no expert testimony (Doc.59). Also Magistrate's R&R (Doc.93) to grant summary judgment in favor of defendants is premised on defendants' basis for motions to compel and to dismiss (Docs.77, 78) and for summary judgment. Both should be rejected.

2

**ISSUES OF WHETHER BOTH DEFENDANTS and MAGISTRATE ERRED PROCEDURALLY & SUBSTANTIVELY IN THEIR MOTIONS FOR SUMMARY JUDGMENT, TO DISMISS AND COMPEL; STRIKING LAY WITNESS DISCLOSURE, DENYING MOTION TO VACATE; and REPORT & RECOMMENDATION**

Defendants and magistrate erred both procedurally and substantively in both the said motions and R&R to grant summary judgment in favor defendants thereby precluding granting summary judgment and dismissal of the claims for the reasons set forth below

We hold that the appellate court (Defendants & Magistrate) erred both procedurally and substantively Coleman v. Deno, 813 So.2d 303 (La. 2002).

**A.    Procedurally, defendants and magistrate erred because:**

**1.  Defendants and magistrate erroneously apply improper legal standard :**

Defendants and magistrate mischaracterized this action as "federal diversity action" in which state law governs substantive issues and federal law governs procedural issues. Defendants and plaintiff are all citizens of the same state and residents of the same city and county so there is no diversity actions or issues in this case. This action is primarily based on violation of federal law to wit, COBRA; 42 USC 9501; Civil rights Acts, 42 USC 1981, 85, 86; 4th & 5th Amendments, etc. Federal Rules of Civil Procedure (FRCP) govern the procedures for all civil action proceedings in the District Courts of the United States, Unless a Rule requires or permits the application of State procedures, the federal court do not apply State procedural laws, procedural rules, or procedural decisions. See EEOC v. HBE Corp., 135 F. 3d 543, 551 (8th Cir.1998) (federal rules apply to all civil actions in federal court, and control over conflicting State law). FRCP 56 governs summary judgment proceeding. Ohio Evidence Rule 601(D) or other Ohio Substantive law is inapplicable to federal law claims.

**2.  Amadasu's inability to offer paid expert report or testimony or lack of his expert witness is not fatal to all his claims under Federal and Ohio Law/Evidence Rules; and striking lay witness disclosure violate the Evidence Rule**

**a) Plaintiff's right to be competent and lay witness cannot be denied:** Under Ohio and federal laws, plaintiff is competent to offer lay witness opinion testimony under Evidence **Rule 601**, and can offer lay witness opinion under **Rule 701. b)** Plaintiff can establish his elements of claims **Under Use of Defendant's Testimony Rule**: A finding of negligence in a malpractice case may be based on the testimony of defendant, as well that as of others. Ware v. Richey, 14 Ohio App.3d 3, 469 NE2d 899 (1983). **c)** The plaintiff may call a defendant physician and examine him or her as an expert

3

under the **Adverse Witness Statute, RC 2317.07**, which authorizes the eliciting of testimony from the physician defendant as if he or she were under cross-examination by the plaintiff. Seley v. G.D. Searle & Co., 67 Ohio St. 2d 192, 423 NE2d 831 (1981), Oleksiw v. Weidener, 2 Ohio St. 2d 147, 207 BE2d 375 (1965). See also 67 O Jur 3d 145; *Defendant as adverse witness for the plaintiff.* 16 Am Jur Trials 471; **d)** plaintiff may establish his claim, if necessary, by using court-appointed experts under **Fed. Evid R 706**, which provides that the court on its own motion or on the motion of any party enter an order to show cause why expert witness should not be appointed, and may request the parties to submit nominations. The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection. In Daubert v. Merrell Dow Pharm., Inc, 509 U.S. 579 (1993), the Supreme Court ruled that judge assessing proffer of expert's testimony under Fed, Evid R on testimony by experts should also be mindful of other applicable rules, including...rule allowing court to procure assistance of expert of its own choosing.

Upon striking plaintiff as expert witness, magistrate should have complied with those provision and ruling in the interest of justice knowing that plaintiff is litigating as *in forma pauperis.* **e)** plaintiff may establish his claims by cross-examination, presentation of contrary evidence consistent with Daubert, which held that cross-examination, presentation of contrary evidence, and care ful instruction on the burden of proof, rather than wholesale exclusion under an uncompromising "general acceptance" standard, is the appropriate means by which evidence based on valid principle may be challenged...Rules are to resolve legal disputes. Id.

## 3.    STATUTORY STANDARDS FOR DISCOVERY ISSUES AND SANCTIONS NOT FOLLOWED

Federal Rules of Civil Procedure ("FRCP" or "Rule") and the Local Court Rules of the United States District Court, Southern District of Ohio ("S.D.Ohio Civ.R." or "Local Rule") prescribe the standards and procedures that litigants, lawyers, judges, court personnel and the Court per se must follow in civil cases, and specifically in discovery issues. The discovery Rules 26-37, S.D.Ohio Civ.R.37.1 –37.2 prescribe discovery methodology, steps, enforcements and sanctions. Courts must apprehend the relative responsibilities of the parties for the breakdown in discovery. See, GFI Computer Indust. Inc. v. Fry, 476 F.2d at 3-5(5th Circuit) (reversing default judgment "The court's basis for entering the order [dismissal] in the first instance was a misapprehension of the relative responsibilities of the parties for the breakdown in discovery"). See also Rule 37 provisions and analysis below under **R.W. Intern. Corp. v. Welch Foods, Inc., 937 F.2d 11 (1st Cir.1991)**

### a)    CASE LAW STANDARDS OF REVIEW:

The trial court abuses its discretion in discovery when it reaches a decision that is so arbitrary and unreasonable that it results in a clear and prejudicial error of law. See, e.g., Fanestial v. Alworth, 856 S.W.2d 585 (Tex.1993). Likewise, a trial court abuses its discretion in matters of discovery if its actions substantially tip the balance in an effort to avoid prejudice and delay and thus unreasonably deny a party his day in court. J.P. v. District Court In and For 2nd Judicial District. Of Denver, 873 P.2d 745 (Colo.1994). The court administers the discovery rules within its discretion, but is limited by the parameters of those rules, State ex rel. Norman v. Dalton, 872 S.W.2d 888 (Mo. Ct.App.E.D.1994); and a ruling based on the erroneous interpretation of a discovery rule can constitute an abuse of discretion, Griffith v. Moss, 554 N.W.2d 571 (Iowa Ct. App. 1996).

### b)  Defendants' & Magistrate's non-compliance with, and violation of S.D. Ohio Civ.R. 37.1 and 37.2 precluded defendants' Rule 37et seq. motion to dismiss and R&R

S.D.Ohio Civ.R.37.1 in pertinent part,

> Provides that motions, applications, and requests relating to discovery shall not be filed in this court, under Rules 26 and 37 unless counsel have first exhausted among themselves all extrajudicial means for resolving the differences about discovery have been exhausted, then in lieu of immediately filing a motion under Rules 26 & 37, any may first seek an informal telephone conference with the judicial officer assigned to supervise discovery in the case

S.D.Ohio Civ.R.37.2 in pertinent part,

> Provides that to the extent that all extrajudicial means of resolution of differences have not disposed of the matter, parties seeking discovery may then proceed with filing of a motion to compel discovery pursuant to Rule 37(a). A supporting memorandum shall accompany such motion and by an affidavit of counsel setting forth the extrajudicial means which have been attempted to resolve differences. [see, also Rule 37(a)(2)(B)]

The record is devoid of any evidence of defendants' compliance with these local rules before filing motions to dismiss plaintiff's claims thereby warranting rejecting the dismissal recommended by R&R. Court will not take under consideration any motions to compel discovery where the party requesting discovery does not initiate a conference with the opposite party in an attempt to mediate their discovery differences. Meyers v. Ca Hardware, Inc., 95 FRD 145, appeal dismissed 812 F.2d 1407 (D.C.Ohio 1982). Accordingly, granting defendants' motion to dismiss is void as matter of law

### c). Absent defendants' specific discovery motion to compel discovery under Rule 37(a); non-compliance with provisions of Rule 37(a) of Federal Rules of Civil Procedure (FRCP) foreclosed defendants' Rule 37 motion for dismissal and magistrate's R&R.

Rule 37(a)(1) in pertinent part,

5

> requires a party, upon reasonable notice to other parties and all persons affected thereby, may
> apply for an order compelling disclosure or discovery.

The Advisory Committee's Notes to 1970 Amendment states that Rule 37(a) provides relief to
a party seeking discovery against one who, with or without stated objections, fails to afford the
discovery sought. It has always fully served this function in relation to depositions. Further, Rule
37(a)(2)(B) requires defendants to file certification that they have in good faith conferred or attempted
to confer with plaintiff in an effort to secure the information or material without court action. But
defendants neglected and failed to make Rule 37(a) motion with the certification; thus warranting
reversal of the dismissal. Motion for sanction for failure to comply with discovery requests was
appropriately denied by district court, where motion was made prior to any motion to compel
discovery. Markham v. Colonial Mortg. Service Co., Associates, Inc., 605 F.2d 566, 196 U.S.
App.D.C.50. (1979). The holdings and analysis in **R.W. Intern. Corp. v. Welch Foods, Inc., 937
F.2d 11 (1st Cir.1991)** support this argument as shown below.

### d) Magistrate Order granting defendants' motion to dismiss is erroneous and contrary to the Rule and violate plaintiff's due process rights; absent specific Rule 37(a) order to compel discovery so as to support Rule 37 dismissal

On 11/17/06, defendants contemporaneously filed two motions to dismiss and to compel
(Docs.78 & 77), which violated the procedural step-by-step methodology required by Rule 37. It is
improper to move to dismiss and compel at the same time. Magistrate granting motion to dismiss
without first granting motion to compel and without Rule 37(a) order to compel in effect is
procedurally erroneous and contrary to Rule 37 requirements. . Magistrate had no Rule 37(a) order
violated by plaintiff that would have authorized or empowered him to grant motion to dismiss. It has
been held, "Generally, judicial management and involvement in discovery process is not required
unless one party challenges activity of an adversary; sanctions aspect of rule governing discovery
provides for alternative approaches by court to ensure that spirit and object of discovery under the rules
are maintained." State of Ohio v. Crofters, Inc., 75 FRD 12, affirmed 570 F.2d 1370, cert. denied 99
S.Ct. 114, 439 U.S. 833 (1977). Because there were improper defendants' motions to compel and
dismiss and plaintiff's response thereto before the court, it was an abuse of discretion to grant motion
to dismiss rather than granting specific mandatory Rule 37(a) order to compel so as to support Rule 37
dismissal. Other than setting forth guidelines to enable counsel [litigants] to arrange for orderly
sequence of depositions and other discovery, court would not establish specific sequence of discovery
events but would allow counsel [litigants] to agree on deposition schedule. Continental Illinois Nat.

Bank & Trust Co., of Chicago v. Caton, 130 FRD 145 (D.Kan.1990). Also the holdings and analysis in
**R.W. Intern. Corp. v. Welch Foods, Inc.**, 937 F.2d 11 (1st Cir.1991) support this argument.

**e) Absent Rule37(a) specific discovery motion and order to compel discovery in effect; and
absent Amadasu's violation of Rule 37(a) specific discovery order to compel discovery,
the trial court had no foundation and authority to dismiss the action under Rule 37**

There must be specific Rule 37(a) order to compel in effect predicated on appellees' specific
Rule 37(a) motion accompanied by affidavit and or certification of their unsuccessful extrajudicial
efforts to resolve discovery issues; and Amadasu must have violated the specific Rule 37(a) order
before the trial court could have foundation and authority to impose sanctions under Rule 37 that
mandates Rule 37(a) order. Defendants and magistrate failed to meet these prerequisites; thus, the
dismissal of plaintiff's complaint would be not warranted.

In absence of evidence of…attempt by defendants to precede their dismissal motion with
motion to compel plaintiff to attend deposition was in contempt of specific court order, dismissal of
pro se plaintiff's action was not warranted. Dean v. Ellington, 115 FRD 576, affirmed 856 F.2d 199
(N.D.Ga.1987). Also the holdings and analysis in **R.W. Intern. Corp. v. Welch Foods, Inc.**, 937 F.2d
11 (1st Cir.1991) support this argument as fully shown in Plaintiff' Opposition (Doc.81).

**f) Not only that the court abused its discretion in failing to afford plaintiff hearing under
Rule 37(a)(4) and imposing a particular sanction, but also the court, under the applicable
rules and prevailing circumstances, had no authority to impose the sanction.**

Under the applicable Rule 37 provisions and the prevailing circumstances, the trial court had no
authority to dismiss plaintiff's case. Dismissal is an abuse of discretion, under rule governing failure to
make or cooperate in discovery, if party does not have ability to comply with request. Bell v.
Lakewood Engineering & Mfg. Co., 15 F.3d 546 (C.A.6 1994). Also the holdings and analysis in **R.W.
Intern. Corp. v. Welch Foods, Inc.**, 937 F.2d 11 (1st Cir.1991) support this argument as shown
below.

**g) The dismissal of plaintiff's claims under Rule 37 will not stand absent compliance by
defendants and the trial court with the step-by-step mechanisms for dismissal under Rule
37**

Rule 37 prescribes step-by-step procedures for sanctions under Rule 37et seq., to wit, after
defendants filed and served Rule 37(a) motion, then, the trial should have made specific Rule 37(a)
order to compel, then, Rule 37(a) order must be violated by plaintiff, and then Rule 37 range of
sanctions may be imposed. The district court's disposition is to comply with rules 26-37 of these rules,

7

not only literally, but also in spirit, and to endeavor to carry out their intended purpose, but not enlarge them, or stretch them out of proportion. U.S. v. New Wrinkle, Inc., 16 FRD 35 (D.C.Ohio1954).

The case of **R.W. Intern. Corp. v. Welch Foods, Inc., 937 F.2d 11 (1st Cir.1991)** (rehearing and rehearing en banc denied 7/29/91) is analogous to this case at bar. The analysis and holdings of United States Court of Appeals First Circuit set controlling standards for discovery issues resolution and sanctions in **R.W. Intern. Corp. v. Welch Foods, Inc., 937 F.2d 11 (1st Cir.1991)**, which are applicable in this plaintiff's action. In that action based on allegedly unjustified termination of distributorship agreement, defendant filed motions seeking dismissal and sanctions. The United States District Court for District of Puerto Rico, 129 FRD 25, ordered sanctions. Thereafter, the District Court, 133 FRD 8, granted reconsideration in part and denied it in part. Plaintiff appealed. The First Circuit held that: before federal rule authorizes dismissal for failure to obey discovery order, court order must be in effect, and then be violated. FRCP 37. The court reversed and remanded because plaintiff did not violate any specific Rule 37(a) order of the court.

Applying the analysis and holdings in **R.W. Intern. Corp. v. Welch Foods, Inc., 937 F.2d 11, 12-13 (1st Cir.1991)**, the question is not only whether the court abused its discretion, but also whether under the applicable rules and the circumstances obtaining, had the authority to impose the sanction.

The court ruled "**NO**"; the trial court had no authority to impose sanction because:

"The rule's language clearly requires two things as conditions precedent to engaging the gears of the Rule 37 sanction machinery: (1) a court order must be in effect, (2) then must be violated, (3) before the enumerated sanctions can be imposed" *Id,* at 15. That is, the trial court's specific Rule 37(a) order must be in effect prompted by and predicated upon defendants' Rule 37(a) motion, and plaintiff must violate the Rule 37(a) order to compel, before the range of sanctions could be imposed but these Rule 37 conditions precedent were not met before recommending dismissing plaintiff's action thereby warrants rejection of defendants' motions and the R&R.

"The decided cases, and the commentators, are consentient in the view that Rule 37 plain language means exactly what it says. See, e.g., Badalamenti v. Dunham's Inc, 896 F.2d 1359, 1362 (Fed.Cir.), cert. denied,--U.S.--, 111 S.Ct. 142, 112 L.Ed.2d 109 (1990); Salahuddin v. Harris, 782 F.2d 1127, 1131 (2d Cir.1986); Laclede Gas Co. v. G.W. Warnecke Corp., 604 F.2d 561, 565 (8th Cir.1979); 4A J. Moore & J. Lucas, Moore's *Federal Practice* para 37.03(2), at 37-62 to 37-64 (2d ed.1991); 8 C. Wright & A. Miller, *Federal Practice and Procedure*, Sect.2289, at 790 (1970) *Id,* at 15. The **R.W. Intern. Corp** further analysis see plaintiff's Omnibus Objections to Motion to Dismiss (Doc.81).

"While the substantive facts of this case and the substantive legal issues are interesting, they are not relevant to our decision. What is relevant is the procedural posture." WMX Technologies, Inc., v. Miller, 104 F.3d 1133, 1134 (9th Cir.1997).

**h) Defendants' misconduct of refusal to completely answer Rule 33, 34, 36 discovery requests and magistrate failure to compel defendants' responses prejudiced plaintiff.**

Defendants' refusal to submit and the court refusal to compel defendants to provide the Rule 33, 34 and 36 discovery responses  substantially prejudiced plaintiff because plaintiff was hindered, prevented and impaired in preparing his case, adequately opposing summary judgment motion and making his motion for summary judgment. When the party who served the interrogatory moves under FRCP 37(a) to compel an answer to it, "accordingly, an order is entered, and the defendant will answer." Terrell v. Standard Oil Co. of New Jersey, 5 FRD 145, 147 (1945). When defense did not, within time provided by this rule, object in any manner to certain interrogatories of plaintiff, court had no alternative but to grant plaintiff's motion to compel answers. Cephas v. Busch, 47 FRD 371 (1969).

Discovery is intended to assist in obtaining information upon which to prepare case for trial. Bocchono v. Wirkowski, 41 FRD 535 (1966). The purpose of these provisions relating to discovery is to produce evidence for speedy determination of trial. Robison v. Transamerica Ins. Co., 368 F.2d 37 (1966). Rules 26, 33, and 34 relating to discovery, interrogatories and documents production, are intended to go far in making information known by one party available to the other. Hickman v. Taylor, 67 S.Ct. 385, 329 US 495 (1947); and to force a full disclosure, Zucker v. Sable, 72 FRD 1, (DCNY.1975). Plaintiff has the statutory rights to obtain the benefits of discovery procedure promptly and completely but this court and defendants deprived plaintiff of those rights by preempting him to move to compel and for refusal to provide documents.

It has been held, "a party to an action has the right to have the benefits of discovery procedure promptly, not only in order that he may have ample time to prepare his case before scheduled trial, but also in order to bring to light facts, which may entitle him to summary judgment or induce settlement prior to trial." U.S. for Use of Weston & Brooker Co. v. Continental Cas. Co., 303 F.2d 91, 92 (4th Cir.1962). Accordingly, the actions and inactions of defendants deprived plaintiff of that right

**j)   The Doctrines of Equity and Unclean Hands barred granting defendants' motions to dismiss and for summary judgment when they flagrantly violated discovery rules--FRCP 26-37, disobeyed court's calendar orders, set-up plaintiff to fail.**

For factual and legal analysis, plaintiff respectfully refers the court to Plaintiff's Omnibus Objections to Motion to Dismiss (Doc.81) herein incorporated by reference

### Equity Seeks To Do Justice And Avoid Injustice

The trial court's denial of plaintiff's motions and recommending dismissal of his complaint manifested inequities between the parties and unduly bent the rules in favor of defendants

### Equitable "Unclean Hands" Doctrine Bars Defendants:

Unclean hands bar a party from receiving equitable relief because of that party's own inequitable conduct. Food Lion, Inc. v. S.L. Nusbaum Ins. Agency, Inc., 202 F.3d 223 (4th Cir.2000). plaintiff respectfully refers the court to **Plaintiff's Omnibus Objections to Motion to Dismiss (Doc.81)** herein incorporated by reference

**k)    Defendants' Litigation and Discovery Misconduct and the Court's Acquiescence & Connivance Deprived Amadasu of Evidence to Support Amadasu's Dispositive Motions or Trial**

Defendants willfully and intentionally refused and failed to cooperate in the discovery in good

faith. They failed to make Rule 26(a)(1) initial production of documents. They provided evasive, incomplete, ambiguous or non-answers to plaintiff's Rules 33, 34 and 36 discovery requests warranting plaintiff's to seek informal conference with the magistrate. For almost 7-years defendants willfully and purposefully stonewalled discovery responses Defendants and their attorneys withheld pertinent, relevant and probative discoverable materials vital to the issues in dispute from the plaintiff. This defendants' sandbagging behavior constitute misconduct in a manner that prejudiced plaintiff's right to obtain relevant evidence, which were in the defendants' and or their counsel's possession, custody and control. Defendants' attorneys in violation of the rules answered and signed interrogatories sent individual defendants thereby acting as litigants.

Consequently, defendants purposefully denied plaintiff the opportunity to make adequate opposition to their summary judgment motion and to timely submit his cross-motion for summary judgment with all probative documentary materials in opposition to defendants' summary judgment motion and in support of his cross-motion for summary judgment. Failure to disclose or produce materials requested in discovery can constitute misconduct within the purview of FRCP 60(b)(3), Jones, 921 F.2d at 879) (quoting Anderson v. Cryovac, Inc., 862 F.2d 910, 923 (1st Cir.1988)

**l)    Magistrate violated plaintiff's constitutional, statutory and common law rights to due process, jury trial, equal protection and equality under rule of law (a) when he failed to consider plaintiff's Opposition to defendants' motions to dismiss & compel (Doc.81); (b) when it selectively and discriminatorily applied and enforced the rules and his orders in favor of defendants; (c) when he failed to sanction**

**defendants;   (d) counterbalance the rights and interests of the parties; (e) when it
based its decision on defendants' improper and premature  motions, (f) when he
failed to resolve parties discovery disputes equitably, fairly and equally**

In a formal trial, opposing parties have the right and opportunity to appear and be heard before

rendition of a judgment but in dispositive motion, parties do not as a rule appear to be heard, therefore, absent formal hearing, the only mean or way a party can exercise his or her right to be heard in the court is by the papers that a party submitted to court to review, consider and render judgment on it. If the court considered and rendered judgment on the papers submitted by one party and failed to do the same on the other party's paper, thus the due process right of the other party has been violated. Thus, plaintiff's constitutional, statutory and common law rights have been violated by the magistrate for failing to consider and render fair judgment on plaintiff's many motions papers submitted for relief.

District court, defendants and their attorney violated plaintiff's rights to due process, equal protection, equal justice, equal administration of justice, and equality under the law. The limitations inherent in the requirements of due process of law extend to judicial, as well as political branches of the government, so that a judgment may not be rendered in violation of those constitutional limitations and guarantees. Hanson v. Denckla, 357 US 235, 78 S.Ct. 1228, reh den 358 US 858.  When the judgment roll fails to disclose that a party was brought into court by process that is constitutionally due, the judgment rendered in the case is void on the face of the record and is subject to direct and or collateral attack at any time. Parsons Steel, Inc., v. Beasley, 600 So2d 248.  A judgment is void when the court lacks the power to make or enter the particular order involved, or acts in a manner inconsistent with due process of law—Id. Here, magistrate's orders are void.

An opportunity for hearing before a competent and impartial tribunal on proper notice is one of the essential elements of due process of law. Thus, all persons are entitled to an opportunity to be heard in a court of law upon every question involving their rights or interests, before they are affected by any judicial decision on the question. Morley v. Morley, 131 Wash 540, 230 P 645. The judgment of a court without hearing or giving a party an opportunity to be heard is not a judicial determination of its rights, and is not entitled to respect in any other tribunal—Id. Morley, supra; State ex rel. Anderson-Madison County Hospital Dev. Corp. v. Superior Court of Madison County, 245 Ind 371, 199 NE2d 88;

A judgment is irregular where its rendition is contrary to the course and practice of the courts,

Pruit v. Taylor, 247 NC 380, 100 S.E.2d 841, that is, where proper rules or practice have not been followed, or where some necessary act has been omitted or has been done in an improper manner, Sache v. Gillette, 101 Minn 169, 112 NW 386.

Directory rules of procedure are limited to what is required to be done, and simply regulate the orderly manner in which the court exercises its jurisdiction. Mandatory rules, however, prescribe, in addition to specific required actions, the result that will follow if those requirements are not met, and failure to comply with a mandatory rule renders a judgment void. Autry v. Autry, 830 SW2d 140 (14th Dist.Tex App Houston). A strict and literal compliance with the provisions of the law must be shown in order to support the judgment. Hassell v. Wilson, 301 NC 307, 272 SE 2d 77.

A trial court is generally under a duty to render judgment on motion of a party to the cause. Walton v. Walton, 86 Colo 1, 278 P.780; Calson v. Benton, 66 Neb 486, 92 NW 600. A judgment must be based on the then existing facts. Suffolk County Ass'n of Municipal Employees v. County of Suffolk (2d Dept) 175 App. Div 2d, 572 NYS2d 344, app den 78 NY2d 864, 578 NYS2d 879, 586 NE2d 62. It has been declared that each case must be determined on it own facts. Associated Press v. Taft-Ingalis Corp. (CA6) 323 F2d 114. In viewing the factors to be weighed in rendering judgment, the focus should be on the intention of the trial judge. Whittier v. Whittier, 237 Iowa 655, 23 NW2d 435, as gathered from judge's acts and the record as a whole—Id, Associated Press, supra. Rendition of a judgment is a present act, which decides the issues upon which the ruling is made. Intercoastal Warehouse Corp. v. Clear Lake Nat'l Bank, 795 SW2d 294. Therefore, recommendation for undue dismissal should not be sustained. Remand for trial on the merits, which federal courts and public policy mandate & favor should be enforced.

### m) Magistrate's Orders, Report and Recommendation are arbitrary and capricious

Plaintiff has shown the arbitrary and capricious application of discovery rules by the magistrate, who is violating plaintiff's due process right. If application of discovery sanctions are shown to be arbitrary and in violation of due process rights, the judgment is void. Brown v. McCormick, 608 F.2d 410 (C.A. Kan.1979); Court's authority to impose any sanction, including a fine, is limited by considerations of due process. J.M. Cleminshaw Co. v. City of Norwich, 93 FRD 338 (D.C.Conn.1981). Thus, the dismissal of this case would be void. In Quonset Hut, Inc. v. Ford Motor Co., 80 Ohio St.3d 46, 684 N.E.2d 319 (1997) Ohio Supreme Court stated that disposition of cases on merits is favored and that discretion ought to be exercised cautiously and carefully before a case is dismissed on the merits for a procedural default. Thus, in the absence of negligent, irresponsible, contumacious or dilatory actions on the part of plaintiff, the recommended sanction of

12

**2) Defendants' summary judgment motion should be denied because Elements of plaintiff's "all claims" require no expert tesimony**

Plaintiff's claims are premised on the theories or issues of violation of statutory duty, obligation and responsibility sounding in strict liability and or negligence per se under COBRA/Anti-dumping Act as amended; RC 2317.54; and RC 5122 et seq.; statutory and common-law lack of informed consent; confidentiality breach, abandonment; battery, simple negligence; res ipsa loquitur; employment discrimination, civil rights violations. All these and other related issues do not require expert testimony to establish liability as to Berry and MFH and other defendants as shown below.

Plaintiff's "all claims"---Counts One through Twenty-two require no expert witness testimony to establish them

**3) Lack of informed consent and battery theories require no expert testimony to establish liability and causation**

Defendants transferred plaintiff without informed consent sounding in battery. "Lack of informed consent" is a tort within the scope of malpractice similar to but not identical with professional negligence. Lack of any consent absolutely creates liability without expert testimony to establish it or its causal link. Plaintiff's claims for battery for non-consented transfer do not require expert testimony under Ohio law and since defendants have admitted that they had not obtained informed consent to transfer. See **3 OJI 331.04 and .05**.

Expert testimony is not necessary to measure lack of informed consent. Sard v. Hardy, (1977), 281 Md. 432, 379 A.3d 1014. An action for failure to obtain informed consent is not dependent on a showing that the defendant was negligent in providing the treatment. Funke v. Fieldman, 212 Kan 524, 512 P.2d 539 (1973). Under battery theory the defendant is held liable for any intended (i.e., not careless or accidental) action that results in physical contact for which the plaintiff has given no permission. A physician who performs an invasive procedure without the patient's permission may be found guilty of a battery even if a reasonable person would have authorized the procedure if asked. The physician may be found to have committed battery if no consent at all was obtained, if consent was obtained for a procedure different in scope or kind from one actually performed, or if the physician failed to inform the patient adequately about potential consequences of the procedure.

Battery can be based on a relatively slight deviation from planned and agreed upon course of treatment. See, e.g., Hales v. Pittman, 11 Ariz. 305, 576 P2d 493 (1978) (patient consented to 0.2cc injection of Phenol solution; battery found on basis of injection of additional 0.1cc of solution).

14

Expert testimony is **not** necessary to prove battery, abandonment and to show whether or not defendants performed their statutory obligations under and satisfy the provisions of the informed consent law. The complete failure of a physician to obtain informed consent before proceeding with surgery is more appropriately characterized as a battery Kerr v. Carlos, 582 NE2d 860, 864 (Ind. 1995). An informed consent procedure that falls far short of that mandated by the relevant standard of care could, in some circumstances, support such a claim fro battery. Cacdac v. West, 705 NE2d 506, 512 (Ind. Ct. App.1999). The district court erred in finding that plaintiff's failed because she failed to show a causal injury. Rather, plaintiff's claim rests on a battery theory, which should be heard by a jury. Sanborn v. Zollman, *id, infra.*

Here, the point is that plaintiff did not consent to transfer to Crisis Stabilization Center (CSC) See, e.g., Bowman v. Beghin, 713 N.E.2d 913 (Ind. Ct. App.1999) in which Indiana court found that no expert testimony was necessary or needed with respect to informed consent claim where the patient consented to a procedure, but the physician failed to do the procedure for which consent was given. The court found that no expert testimony was necessary because a layperson could determine that the physician did not "respond accurately" to the scope of the informed consent. Id, at 917. Ohio case laws hold that the issues of whethjer the doctor did or did not discus the material risk or risks, if disputed, and whether a reasonable person in the position of the patient would have chosen not to have the treatment (transfer) had the material risks being disclosed are clearly questions of fact for the jury, for which expert testimony is not required. Schraffenberger v. Persinger, Malik and Haaf, M.D.s', Inc., 114 Ohio App.3d 263, 683 NE2d 60 (1st Dist. Hamilton County 1996).

In Guth v. Huron Road Hosp., 43 Ohio App. 3d 83, 539 NE2d 670 (1987) the court held that where the tort that is alleged amounts to a battery or some other intentional tort, there may be no need for any expert testimony, since in such cases the absence of consent is well within the understanding of the lay person. The court illustrated with a plaintiff's claims of battery for non-consensual administration of drugs and **transfer** of the plaintiff-patient to a mental health center were well within the knowledge and comprehension of lay persons and therefore, did not need to be established by expert testimony. Here, plaintiff's claims are analogous to Guth in that plaintiff claim of battery for non-consented transfer and defendants were not given informed consent to transfer as required by federal and state law. **See 67 O Jur 3d 155**

The Sixth Circuit Court of Appeals in Sanborn v. Zollman and Zollman Center for plastic and Hand Surgery, 2002 U.S. App. LEXIS 1448 (6th Cir. July 16, 2002) (citing *Bowman, id.*) reversing and remanding the judgment of the trial court in favor of defendants, ruled that plaintiff was not required to

15

support her lack of informed consent claim with expert testimony because "inasmuch as a lay person could determine that Dr. Zollman did not "respond accurately" to the scope of the informed consent. Plaintiff did not consent to have liposuction surgery in the manner for which Dr. Zollman expressly sought her consent. As a result, the district court erred in holding that plaintiff's claim failed as a matter of law because she failed to come forward with expert testimony. Plaintiff was not required to adduce expert testimony to support her claim. It concluded that plaintiff's claim rests on a battery theory which should be heard by a jury." Here, plaintiff does not need expert testimony to prove his case consistent with the Sanborn courts holding.

See also Savold v. Johnson, 443 N.W.2d 656 (S.D. 1989) in which a plaintiff commenced a malpractice action alleging defendant *inter alia*, failed to secure her **informed consent**, negligently performing the procedure. The trial court granted defendant's motion for summary judgment on the negligence claim. The informed consent claim went to trial before a jury. Neither side produced expert testimony. The trial court granted summary judgment to defendant physician based on plaintiff's failure to present expert testimony. The S.D. Supreme Court reversed, holding plaintiff's case presented a question of disputed fact concerning an informed consent issue which did not require expert testimony. The Supreme Court reasoned a factual dispute existed as to whether defendant gave plaintiff any information concerning the implantation or removal of the internal pins so she could give her informed consent. It concluded this question of fact did not require the introduction of expert testimony.

Here, expert testimony is not required to determine whether informed consent was given by plaintiff to transfer to CSC. Informed consent is legal standard for procedure, if defendants admit that they did not obtain informed consent for the procedure, they breach the standard. If, however, they claim to have obtained informed consent, plaintiff will have to prove both that informed consent was the legal standard of care and that defendants did not obtain informed consent, and, if medical record shows no documentary evidence of signed written consent, defendant did not obtain consent. Defendants had admitted that they did not obtain plaintiff's informed consent

## 4)    Defendants Violated Ohio Informed Consent Law, therefore, Statutory Standard. Expert Testimony Unnecessary To Determine Their Failure To Perform Their Statutory Obligation To Obtain Informed Consent

The doctrine derives from common law and includes the entire body of law dealing with the obligation, duty and responsibility to obtain informed consent and valid exceptions to the obligation. R.C. 2317.54 (A, B, and C) prescibed the standard for informed consent for all physicians and

16

surgeons in Ohio. A physician has statutory duty, obligation and responsibility both to inform patients

and to obtain their consent. If a patient is injured as a result of a failure on the part of a physician to

disclose information about or obtain informed consent for a procedure, then he is in violation of the

statutory standard of care for informed consent.

### Ohio Inform Consent Disclosure Standards

Two competing disclosure standards are adopted in Ohio to measure the nature and amount of

the information that must be disclosed:

(a) **The professional practice standard**: which requires expert testimony, embraces whatever

the medical community or a reasonable physician would reveal under the circumstances. See,

generally, Annotation (1978), 78 ALR.3D 1008.

(b) **Reasonable person standard**: which does not require expert testimony, focuses on the

information a "reasonable person" needs to know about procedures, risks, alternatives, and

consequences. The legal test of an adequate disclosure is the materiality or significance, of information

to the decision making of the patient. Thus, the right to decide what information is material and due is

shifted from away from the physician or expert to the reasonable patient.

In Ohio, the duty to disclose is not measured solely by the professional standard requiring

expert witness testimony. See, e.g., Nickell v. Gonzalez (1985), 17 Ohio St.3d 136, 477 NE2d 1145.

The jury may decide from its own experience whether the risks in evidence are "material." However,

expert medical testimony about what the professional standard of disclosure would be or what risks are

important, although perhaps relevant under the professional standard, but **is not necessary** to a

determination of what information a reasonable patient should have in order to make an "informed"

consent because the material risk standard is basically a reasonable person test. See, e.g., Sard v. Hardy

(1977), 281 Md. 432, 379 A.3d 1014, and Annotation (1973), 52 ALR3d 1084; See also **3 OJI 331.04**

**[comment]** and copies of case laws annexed to plaintiff's affidavit (Amad Aff. Ex. 194 – 198)

### 5)    PLAINTIFF INVOKES THEORY OF RES IPSA LOQUITUR

Plaintiff Res ipsa loquitur means, roughly, "the thing speaks for itself." Courts developed the

concept of res ipsa loquitur to deal with cases in which the actual negligent act cannot be proved, but it

is clear that the injury was caused by negligence. This doctrine was first recognized in the case of a

man who was struck and severely injured by a barrel that rolled out of the second-story window of a

warehouse. In the trial of the case, the defense attorney argued that the plaintiff did not know what

17

events preceded the barrel rolling out of the window and thus could not prove that a warehouse employee was negligent. The plaintiff's attorney countered that barrels do not normally roll out of warehouse windows. The mere fact that a barrel fell from the window was res ipsa loquitur; "it spoke for itself," and it said that someone must have been negligent.

The strategic value of a res ipsa loquitur claim is that it does not require an expert to testify as to the proper standard of care. Ohio courts adopt the use of res ipsa loquitur in medical malpractice litigation when the court has determined that the evidence is sufficient to raise the issue of res ipsa loquitor. Res ipsa loquitor may be given when plaintiff alleges and seeks to prove specific acts of negligence. Oberlin v. Frieman (1965), 5 Ohio St.2d 1, 34 O.O.2d 1, 213 NE2d 168. The doctrine of res ipsa loquitor applies to procedures, transactions, events, or occurrences as well as the use of a single physical instrumentality, Shields v. King (1973), 40 Ohio App.2d 77, 317 NE2d 922, and to several defendants acting together as well as a single defendant, provided that the defendants include all of those in exclusive control of the instrumentality, procedure or occurrence. *Id.* If plaintiff alleges and offers proof of specific acts of negligence as well as res ipsa loquitor, instruction will have to cover those specific acts. *Id.* The doctrine can be invoked where a layperson can infer negligence as a matter of common knowledge or where the plaintiff relies upon common knowledge to invoke the doctrine, the fact that such events do not ordinarily occur without negligence must be based upon a widespread consensus of common understanding. See, e.g., Kollin v. Saint Luke's Regional Medical Center, 130 Idaho 323, 940 P.2d 1142 (1997). (Res ipsa loquitor apply to those cases, which are within the common knowledge and experience of the average layperson).

The Supreme Court of Ohio upheld a trial court decision finding defendants physician and hospital guilty of negligence. The court held the doctrine of res ipsa loquitor was available where two or more defendants who were in concurrent control of instrumentalities that caused injury to the plaintiff. Becker v. Lake County Memorial Hosp. West, 53 Ohio St.3d 202, 560 NE2d 165 (1990).

Here, the event clearly speaks for itself and documentary evidence, medical record, and Admissions speak for themselves.. Defendants were in concurrent or collective control of the events, occurrences or the inappropriate transfer without consent that injured plaintiff. See **67 O Jur 3d, sections 164 & 165 [Res ipsa loquitur]; OJI 331.03 [physician/surgeon: res ipsa loquitur]**

## 6) DEFENDANTS COMMITTED NEGLIGENCE PER SE or STRICT LIABILITY and NO EXPERT TESTIMONY NECESSARY TO ESTABLISH LIABILITY & CAUSATION

Plaintiff alleges violation of federal COBRA/Anti-dumping law , Mental Health Bill of Rights, 42 USC 9501; Ohio Mental Health law, RC 5122 et seq, Ohio Informed Consent Law. These are strict

18

liability laws without showing of fault or deviation by expert witness testimony. Health care providers who violate COBRA provisions are liable, even without a showing of negligence, for any damages proximately caused by their actions-"failure to adhere to a standard, whether or not negligent, creates liability. See, e.g., Reid v. Indianapolis Osteopathic Medical Hosp., 709 F. Supp. 853 (S.D. Ind. 1989).

Negligence per se or *strict liability* lawsuits are brought by private plaintiffs based on the defendant's violation of a law. In these cases the law that was violated defines the appropriate standard of care. For the court to accept a negligence per se claim, the plaintiff must show, and has established that defendants (a) violated federal and state laws; inter alia; COBRA, and Ohio Informed Consent Statute, RC 2317.54, Ohio Mental Health Act; (b) that the law was intended to prevent the type of injury that occurred to plaintiff; and (c) that the plaintiff was in the class of persons intended to be protected by the law. Then the burden shifts to defendants to produce evidence that they did not violate the law. No expert testimony is needed to prove violation of the law.

In such cases, the plaintiff has adduced evidence that the defendants have violated the law. Negligence per se claims are intended to protect patients. Negligence per se claims also could be brought against physicians who do not obtain informed consent for procedure, treatment, diagnosis or transfer mandated by federal and state laws.

The determination of any question of duty, that is, whether the defendant stands in such relation to the plaintiff that the law will impose upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff, is an issue of law for the court rather than for jury or expert witness. James v. Meow Media, Inc., 300 F.3d 683 (6th Cir.2002), cert. denied, 537 US 1159, 123 S. Ct. 967 (2003). The court determines as a matter of law, the existence and scope or range of the duty, that is, whether the plaintiff's interest that has been infringed by the conduct of the defendant is entitled to legal protection. Metropolitan Gas Repair Service, Inc. v. Kulik, 621 P.2d 313 (Colo.1980). It has been held that the distinction between "negligence" and "negligence per se" is the means and method of ascertainment; negligence must be found by a jury by evidence, while negligence per se results from violation of a specific law or ordinance. Wayne Palmer & Associates v. Heldor Industries, Inc., 839 F. Supp. 770 (D.Kan.1993).

## 7) Ohio Medical Malpractice Law is preempted by federal COBRA/Anti-dumping Act because expert witness requirement conflict with federal COBRA provisions

Expert witness testimony are not mandated in COBRA/Antidumping Act

In Spradlin v. Acadia-St. Landry Med. Found., 758 So.2d 116 (La. 2000), it is held that a state law may be preempted because of a direct or actual conflict with federal law in one of two ways: First,

19

there is preemption . . . if it is impossible to comply with both state and federal law. If dual compliance is not "physically impossible" . . . there is no "actual conflict." Second, state law "actually conflicts" with federal law "where state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." (citing, 2 Ronald D. Rotunda and John E. Nowak, Treatise on Constitutional Law §12.4 (3d ed. 1999)(quoting *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238 (1984)). Hence, the test for determining whether a direct conflict exists is two-fold: "Such a [direct] conflict is found where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (emphasis added). 2 Norman J. Singer, Sutherland Statutory Construction §36.08.50 (5th ed. 1993); Deberry v. Sherman Hosp. Ass'n, 741 F.Supp. 1302, 1307 (N.D. Ill. 1990).

Spradlin court quoting as the [Virginia Supreme Court in] Smith observed, EMTALA "establishes a separate federal cause of action, cognizable in federal and state courts, independent of any additional or pendant state claims," with a two-year statute of limitation in § 1395dd(d)(2)(C) for filing claims. Id. Notwithstanding the fact that the Virginia Act tolls the statute of limitations during compliance with its procedural prerequisites, these state law tolling provisions cannot toll the running of EMTALA's two-year statute of limitations. . . . Because Virginia's procedural requirements are potentially in direct conflict with, and therefore inconsistent with EMTALA, we hold that they are not applicable to an EMTALA claim . . . . 42 F.3d 851, 866 (quoting *Smith v. Richmond Memorial Hosp.*, 416 S.E.2d at 695). Permitting plaintiffs' medical malpractice and EMTALA claims to be lumped together and then applying the mandatory pre-suit panel review procedure to the claims as a whole would subvert the plain meaning and intent of 42 U.S.C. §1395dd. Griffith v. Mt. Carmel Medical Ctr., 842 F.Supp. 1359, 1364 (D. Kan. 1994)(declining to engraft comparative fault law onto EMTALA claim). Unlike medical review panels which are designed to weed out spurious medical malpractice claims and to encourage pre-trial settlement, EMTALA's private cause of action is designed to penalize hospitals and thereby discourage "dumping." This difference in purpose buttresses our holding that the procedural requirement of the Louisiana Medical Malpractice Act directly conflicts with EMTALA and is thus preempted" Spradlin further held that the federal and state courts that have addressed the issue have held that engrafting such a procedural limitation onto a federally created cause of action would result in a direct conflict and is thus preempted. See, e.g., Reid v. Indianapolis Osteopathic Medical Hosp., Inc., 709 F. Supp. 853 (S.D. Ind. 1989); *Smith v. Richmond Memorial Hosp.*, supra; HCA Health Services of Indiana, Inc. v. Gregory, 596 N.E. 2d 974 (Ind. App. 1st Dist. 1992).

Factors supporting this conclusion by courts and commentators include: (1) EMTALA does not provide a requirement, expressly or impliedly, for a pre-trial medical review panel (or expert witness

20

testimony); (2) EMTALA's strict liability approach to stabilization claims makes a panel's [expert witness] finding of fault or negligence irrelevant and unnecessary; (3) EMTALA's two-year peremptive period of limitation could elapse before a panel decision is rendered; and (4) the purpose behind EMTALA's creation of a private cause of action would be defeated or undermined by engrafting such a procedural obstacle. Taken together, these factors establish an actual conflict between EMTALA and a pre-trial medical review panel [expert witness] requirement. Hence, the EMTALA preemptive provision precludes engrafting such a procedural requirement onto a plaintiff's federal cause of action pursued in state court. *Id.*

Applying *Spradlin* in the present case, plaintiff demands damages under EMTALA based on defendants' alleged breach of their duty to provide appropriate medical screening examination, to properly stabilize or to appropriately transfer AND TRANSPORT plaintiff. If plaintiff proves a violation of any of the requirements of EMTALA (which does not distinguish between intentional and unintentional conduct), plaintiff will be entitled to recover the appropriate damages. Plaintiff also alleged in this action conduct by defendants that fell below the professional standard of care and would constitute medical malpractice under theory of lack of informed consent and violation of State laws. This claim must not be subjected to state's malpractice expert witness requirement.

In any event, plaintiffs are entitled to recover damages on both claims, whether in one or two trials, if the different requirements of proof are met, despite the fact that the law requires exhaustion of an administrative remedy in one action that is not applicable to the other. *Id, Spradlin.* Accordingly, since EMTALA/COBRA preempts need for expert testimony, summary judgment for defendants on basis of lack of plaintiff's expert testimony is precluded

## 8) Credibility issues precludes summary judgment

In Rosell v. Esco, 549 So.2d 840, 844-45 (La. 1989) (holding that "[w]here documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness based upon a credibility determination."). Defendants' responses to plaintiff's discovery requests are replete with self-contradictions, internal inconsistencies and shifting of responsibilities among defendants. (Amada ff. Ex.39-183).

**9)    Defendants and magistrate improperly played "fast and loose" with the court**

Defendants and magistrate played self-serving fast and loose with the court to the prejudice of plaintiff. It has been held that under federal law, "judicial estoppels" is equitable doctrine designed to protect integrity of judicial system by preventing litigants from playing fast and loose with court to suit exigencies of self-interest. Palcesz v. Midland Mut. Life Ins. Co., 87 F.Supp.2d 409 (DNJ 2000).

See **Wendy W. Bera,** Comment, Preventing "Patient Dumping": The Supreme Court Turns Away the Sixth Circuit's Interpretation of EMTALA, 36 Hous. L.Rev. 615, 623 (1999).

**10) Defendants' Admissions of Plaintiff's Rule 36 Requests for Admissions Warrant Summary Judgment in favor of plaintiff as matter of law**

In Cleveland Trust Co. v. Willis, 20 Ohio St.3d 66, 485 NE2d 1052, 20 Ohio B. Rep. 364 (1985), the Ohio Supreme Court held that: "...admission can be used to establish a fact, even if it goes to the heart of the case. This is in accord with the purpose of the request to admit – to resolve potentially disputed issues and thus to expedite the trial. See St. Paul Fire & Marine Ins. Co. v. Battle, 44 Ohio App.2d 261, 269, 337 N.E.2d 806, 73 Ohio Op.2d 291 (8th Dist. Ct. App., Cuyahoga 1975)

Summary judgment under Rule 56 could be based on matter deemed admitted by failure to reply to request for admissions. See, e.g., Kurelov v. Szabo, No. 66292 (8th Dist. Ct. App., Cuyahoga, Sept. 8, 1994) (1994 Ohio App. LEXIS 3994). Here, defendants admitted all the material facts dispositive of plaintiff's claims. Accordingly, plaintiff is entitled to judgment as a matter of law. See (Amada Aff. Ex.39-183). Filed with plaintiff's cross-motion for summary judgment.

**CONCLUSION**

Based on the foregoing defendants' motions to compel, to dismiss and for summary judgment, and magistrate's granting thereof and Report and Recommendation should be rejected in their entirety Striking lay witness disclosure and denying unopposed motion to vacate 11/7/06 should be granted,

Respectfully submitted,

Darlington Amadasu

**CERTIFICATE OF SERVICE**

I certify that the foregoing was served on Deborah R. Lydon, Dinsmore & Shohl LLP, 1900 Chemed Center, 255 East Fifth Street, Cincinnati, OH 45202 obo Karen A. Carroll, Kohnen & Patton LLP, 201 East Fifth St., Cincinnati, OH 45202 by delivery to receptionist on 7/31/07

22