IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

07 JUL 31 PM 2: 58

DARLINGTON AMADASU
                    Plaintiff

Case No.: C-1-01-182
[Spiegel/Black]

v.

**PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT;**

MERCY FRANCISCAN HOSPITAL
WESTERN HILLS, et al
                    Defendants.

**WITH AFFIDAVIT, EXHIBITS & DISCOVERY RESPONSES**

## I.        INTRODUCTION

Hospitals that execute Medicare provider agreements with the federal government pursuant to
42 U.S.C. § 1395dd must treat all human beings who enter their emergency departments in accordance
with the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd.
Hospitals and responsible physicians found to have violated EMTALA's requirements are subject to
civil money penalties. Burditt v. U.S. HHS, 934 F.2d 1362 (5th Cir.1991). Here, Defendants Mercy
Franciscan Hospitals, Western Hills (MFHWH) and Mt Airy (MFHMA) collectively, (MFH) are such
hospitals and defendant Ravi B. Berry, M.D. (Berry) is such responsible physician under the
EMTALA/COBRA/ANTI-DUMPING ACT's requirements as amended.

## II.        NATURE OF CLAIMS

The present action arises from the violations by MFH and Berry of both federal and state laws
and common-laws; *inter alia*; the provisions and requirements of EMTALA, also known as Section
9121 of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA); Section 1867 of
the Social Security Act, or ANTI-DUMPING ACT as amended 1990. The action also arises from
violations by defendants of Ohio informed consent statute, RC 2317.54; federal Mental Health Bill of
Rights, 42 USC 9501; Ohio Mental Health Act,  RC 5122 et seq.; OH ODC 5122:2-1-02; (RC
5122:20—:27 Transfer of mental patient) ; Ohio Mental Patient Bill of Rights, RC 5122.29; Ohio
Standard of Care, RC 5122.27, etc. This action also arises from violations by MFH of ADA, DEA,
Titles VI and VII of federal civil rights acts.; Ohio Civil Rights Acts, RC 4112.02(A) employment
discrimination, and other torts. Accordingly, this action constitutes mixed federal and state law claims.

1

**III.      INITIAL COMBINED CROSS-MOTION FOR SUMMARY JUDGMENT**

Lay pro se plaintiff Darlington Amadasu moves this Court, and submits this initial combined cross-motion for summary judgment on all claims in his favor pursuant to Federal Rules of Civil Procedure (FRCP) 56(c) and (e) as there are no genuine issues of material facts for trial.

This motion is supported by the pleadings, depositions, answers to interrogatories, admissions, and affidavit with annexed evidentiary exhibits, all of which either demonstrate that there are no genuine issues of material fact and plaintiff is entitled to judgment in his favor as a matter of law, or that the facts and evidence are so one-sided against the defendants that plaintiff is entitled to judgment in his favor as matter of law. Plaintiff also submits opposition to defendants' joint motion for summary judgment and objection to magistrate's Report and Recommendation (R&R). The reason for this cross-motion and opposition are fully set forth in the below Memorandum supported by affidavit with sworn/certified evidentiary exhibits pursuant to Rule 56(e).

This cross-motion for summary judgment is initial or preliminary because the defendants have not provided plaintiff with outstanding responses and documents demanded in plaintiff's Rules 33, 34 and 36 discovery requests, all of which plaintiff needs to adequately and fully respond to defendants' motions for summary judgment and to support his cross-motion, therefore, plaintiff reserves the right, pursuant to FRCP 56(e), to file supplemental or further affidavit in support of his cross-motion for summary judgment and in opposition to defendants' motion for summary judgment and the R&R whenever the court directs defendants to produce the outstanding responses and documents responsive to plaintiff's discovery requests.

Plaintiff put the Court and defendants on notice that defendants have failed to completely and fully respond to plaintiff's discovery requests and had requested pre-motion-to-compel conference with the Magistrate to resolve the discovery disputes but the court is yet to resolve the parties' discovery issues after the conference.

**IV.          MEMORANDUM**

**1.      Background**

**(a) Relevant Procedural Facts**

On 03/26/01, Plaintiff filed a pro se complaint asserting federal and state law claims (Doc.2).On 08/01/01, Calendar Order (CO) was made (Doc.12). Plaintiff completely and fully made

Rule 26(a) initial disclosures and production of documents without waiting for defendants' Rule 34 discovery requests pursuant to Rule 26(a)(1). Between August 2001 and April 2002, parties engaged in discovery. Defendants had completed their entire discovery and obtained plaintiff's timely, complete and full responses to their Rule 30, 33, 34, and 36 discovery requests but they failed to completely and fully respond to plaintiff's discovery requests. Defendants comprehensively, fully and completely deposed plaintiff on 04/28/00 and they denied plaintiff his right to review, correct and sign the transcript thereof pursuant to Rule 30(e) and they failed to file the deposition original transcripts

Initially on 04/16/02 and subsequently, the court repeatedly granted defendant Ravi B. Berry (Berry)'s repeated and consecutive motions to stay the proceedings. (Docs.28, 29, 36, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48). After plus 4 years of case being in abeyance, on 10/03/05 the court lifted the stay on the proceedings following the defendants' motion to lift stay of proceedings (Docs. 51 & 52).

On 04/10/06, the court directed parties to confer, plan discovery and file report pursuant to Rule 26(f). (Doc.53). On 05/23/06, parties filed Rule 26(f) Report Supplemental in which plaintiff listed outstanding discovery responses expected from defendants. The court made Amended Calendar Order (ACO) [Doc.55]. Pursuant to the ACO, plaintiff propounded Rule 33, 34, and 36 discovery requests upon defendants but they neglected, failed and refused to make complete and full responses thereto. Plaintiff filed identification and report of his expert witnesses (Docs. 56, 57, 62) and defendants did likewise (Docs.58, 60, 65, and 66). However, defendants jointly moved (Doc.59) to strike plaintiff's expert witness report (Docs.57, 64). Plaintiff moved (Doc.67) to stay and extend time for his response to Docs.59 & 64 for the reasons stated therein and defendants opposed it (Doc. 68, 69).

For more than six (6) months after ACO was made, Defendants neglected and abandoned their discovery but in the eleventh-hour of the discovery deadline, Defendants collusively filed contemporaneously notice of repeating already-held deposition and emergency motion to repeat deposition (Docs.70, 71), which were not delivered to or received by plaintiff. The court's order (Doc.72) dated and mailed Thursday, 11/02/06 was belatedly delivered to plaintiff's post office mail box on 11/15/06 by the post office. The 11/07/06 court's ex parte order (Docs.73) granting defendants' motion to repeat undue deposition was belatedly by mail delivered to and received by plaintiff on Saturday, 11/11/06. Plaintiff moved (Doc.76) unopposed to vacate and set aside Doc.73.

Without complying with Local Rule 37.1 and 37.2, and FRCP 37(a) requirements, Defendants contemporaneously moved to compel and dismiss (Docs.77, 78). In good faith effort and pursuant to the local Rule 37.1, Plaintiff organized all-parties conference to resolve the discovery disputes extra-judicially but when defendants refused to cooperate, plaintiff sought informal discovery dispute

conference with the magistrate who converted the informal discovery dispute conference to formal hearing on all pending motions without allowing plaintiff to make his Rule 37(a) motion to compel the defendants. (Docs.79 & 80). Plaintiff filed response (Doc.81) to defendants' motion to compel and dismiss. During and after the 12/11/06 hearing, the magistrate failed and refused to address or rule on the discovery disputes, defendants' non-compliance with the discovery rules or to direct defendants to completely and fully provide plaintiff with their outstanding responses to plaintiff's discovery requests. Rather, the magistrate improperly staying discovery issues and preempting plaintiff's needs for discovery responses, directed plaintiff to respond to defendants' illegitimate motions (Doc.83). When suddenly evicted unlawfully, made homeless, and without access to his belongings and means to respond, plaintiff filed emergency motion to stay proceedings until plaintiff's privation, handicap and homelessness improves (Doc.86). Magistrate granted essentially only one day for plaintiff to file responses (Doc.88). Plaintiff renewed emergency motion to stay proceedings until he got access to the means to respond. (Doc.89).

Without plaintiff exercising his right to respond, Magistrate made about eight (8) bundled-up orders (Doc.92) granting all defendants' motions and denying all plaintiff's meritorious and good-cause motions and contemporaneously made Report and Recommendations (Doc.93) granting defendants' motions to dismiss and for summary judgment. Plaintiff moved for extension of time to respond to the Orders and to make his summary judgment motion (Doc.94) which was granted by the court (Doc.97) but, which was not delivered to plaintiff even to the present.

Now Plaintiff responds and makes his initial summary judgment motion in his favor.

### (b) Relevant facts and evidence in support of plaintiff & contra defendants:

#### There is evidence to establish the following relevant facts of medical COBRA, federal Mental Health statute, 42 USC 9501, Ohio Mental Health Act, ORC 5122 violations:

Plaintiff had emergency psychiatric and medical health conditions requiring treatment. The emergency medical problems involved his respiratory, gastro-intestinal and genito-urinary systems.

On 04/24/00, plaintiff was admitted into the Emergency Department (ED) of Mercy Franciscan Hospital-Western Hills (MFHWH) for psychiatric and medical examination, diagnosis, treatment where triage was done by the nurse but no "appropriate medical screening examinations" and diagnosis were done. (Amad. Aff. Ex.1). After determining that plaintiff had emergency conditions, MFHWH-ED "appropriately transferred" plaintiff to Mercy Franciscan Hospital-Mount Airy (MFHMA). (Comp. #15; Amada. Aff. Ex.2-3). MFHMA admitted plaintiff into its Inpatient Department (IPD) and appointed defendant Ravi B. Berry, M.D. (Berry) as the responsible treating physician for plaintiff.

4

On 04/25/00, the first day of treatment, MFHMA and Berry failed: inter alia; (1) to take and document complete and full complaints of plaintiff's psychiatric and medical conditions; (2) to take and document complete and full plaintiff's medical, surgical, family, and social histories; (3) performed reviews of system; (4) to performed basic, full and complete physical examinations, (5) perform and or order basic and necessary screening and diagnostic tests relative to plaintiff's conditions; (6) to diagnose and document plaintiff's respiratory, intestinal and genito-urinary conditions; (7) to make complete and full admission note as evidenced by deficient Berry's Admission Note in plaintiff's medical record (Amad. Aff.Ex.4-5). Without taking appropriate complaint, history, performing appropriate medical screening examination, diagnostic tests, and diagnosis of plaintiff's respiratory and intestinal conditions (Asthma and Diarrhea), MFH and Berry prescribed medications for Asthma and Diarrhea (Amad. Aff. Ex.10) but failed to make progress notes thereon.

From 04/24/00 through 05/01/00, MFH and Berry failed to perform appropriate medical screening examinations; failed to take plaintiff's daily complaints; failed to perform and or order appropriate tests; failed to request medical expert consultations for plaintiff's medical conditions; and failed to monitor plaintiff's medical conditions responses to medications that they prescribed for plaintiff as evidenced by the Progress Notes in plaintiff's medical record lacking documentations of those mandatory processes (Comp. # 18-23; Amad. Aff. Ex. 6-9).

MFH and Berry failed to allow plaintiff's rightful participation in his treatment, discharge and transfer planning as evidenced by Patient Participation in Treatment Planning in medical record (Amad Aff. Ex. 13). Federal and State laws and MFH's rules mandate patient participation

Discharge Summary in plaintiff's medical record is insufficient, defective and without notations as to (1) complete and full complaints of plaintiff's psychiatric and medical conditions; (2) complete and full plaintiff's medical, surgical, and social histories; (3) basic, full and complete physical examinations done, (4) basic and necessary screening and diagnostic tests relative to plaintiff's conditions; (5) diagnosis of plaintiff's respiratory, intestinal and genito-urinary conditions; (6) course of treatments of the medical conditions; (7) prognosis; (8) benefits/risks of transfer. (Amad Aff. Ex.14-15). Transfer summary and certification pursuant to MFH's Rule 303 was not done.

On 05/01/00, A social worker, Mr. Timothy Sillman, discharged and transferred plaintiff to Crisis Stabilization Center (CSC) in a taxi unaccompanied by any qualified medical personnel of MFH as evidenced by Discharge & Continuing Care Plan in the medical record (Amad Aff. Ex. 16).

Crisis Stabilization Center (CSC) was/is a center for individuals with psychotic behavior who cannot make smooth transition back into the community as evidenced by CSC-brochure (Amad Aff Ex. 17). MFH and Berry inappropriately transferred plaintiff to CSC after they had determined that

5

plaintiff had no psychotic behavior and had not determined his inability to make smooth transition into the community as evidenced by medical record (Amad Aff. Ex.15).

Plaintiff made oral and written complaint about the inappropriate treatment by defendants while on inpatient admission (Amad Aff. Ex.18). MFH's Patient Representative, Ms. Ann Hoffman-Ruffner (Ann) documented that social worker, Mr. Timothy Sillman, of Berry's treatment team, expressed his disappoint and frustration with Berry's failure to take responsibility of leading and directing the treatment team and for asking him (Sillman) to see if plaintiff would go to CSC, rather than Berry talking directly to plaintiff about transfer to CSC. (Amad. Aff. Ex.19-20).

From 05/01/00 to 10/30/00 without justification MFH refused to release plaintiff's medical records to him. At the time of discharge on 05/01/00, and on subsequent dates: 05/03/00, 08/07/00, 08/21/00 and 11/28/00 plaintiff executed authorization for release of medical records to him but MFH neglected, failed and refused to release them in spite of plaintiff's several phone reminders. (Amad. Aff. Ex. 21-25, 29). Plaintiff complained by phone and in writing to defendant Steven Grinnell, (Grinnell) President/CEO of MFHMA to help release medical records (Amad. Aff. Ex. 26-27). Grinnell admitted the inconvenience and frustration caused plaintiff by their undue refusal to release medical record to plaintiff. (Comp. #31-35; Amad. Aff. Ex. 28). After more than six (6) months, MFH belatedly released medical record to plaintiff with certification pursuant to ORC 2317.422 (Amad. Aff. Ex. 38). Plaintiff complained of the incomplete, insufficient and defective documentations made by Berry and the non-release of his medical record. MFH and Berry acknowledged and admitted their undue delay in releasing medical records and frustration thereby caused to plaintiff. (Comp. #48-50; Amad. Aff. Ex. 30-31).

On 10/06/00, at the invitation and appointment of MFH, plaintiff as business invitee-guest went to MFHMA to personally obtain his medical record. The assault, battery, humiliation, ridicules, defamation, false imprisonment, harassments, etc that were proximately caused to plaintiff by the conduct of MFHMA and its employees are set forth in the Complaint (Comp. # 35-45) and is incorporated by reference as if fully re-written herein.

On 10/06/00, Berry made false defamatory statement of facts about plaintiff to known and unknown third-parties without plaintiff consent in which Berry published that plaintiff "has record for spousal abuse, assault on a police officer-is believed to carry on either threats made or statements of violence by same" (Amad. Aff. Ex. 36). MFH produced no evidence of the truth of the statement.

On 10/06/00, MFHMA by and through its employees made false defamatory statement of facts about plaintiff to known and unknown third-parties without plaintiff consent in which they published

that plaintiff was "disorderly person,…pretending to be a doctor" (Comp. #45-47; Amad. Aff. Ex. 35, 37).

In or bout February 2000, plaintiff applied for the MFMA open second year family practice position for which he was qualified but was not hired because of his race, age, and national origin discrimination (Comp. #14).

In August 2000, plaintiff applied for MFH open positions of echocardiographer, general sonograper and epidemiology director, for which plaintiff met and exceed the required qualification. Unprecedented, MFH subjected plaintiff to performance test for the echocardiographer position. MFH by and through its cardiologist and employees determined that plaintiff passed the skill/performance test, personal interview and all background/security checks (Comp. # 25-30; Amad. Aff. Ex. 32) but plaintiff was not hired because of his race, age, national origin, and disability. MFH continued to advertise the open position (Comp. #25-30; Amad. Aff. Ex. 33)

## III.    ARGUMENT, RULES, LAWS AND AUTHORITIES

### STATUTORY SUMMARY JUDGMENT STANDARDS:

Rule 56(c): [1] sets forth the standard for granting summary judgments; and [2] prescribes that the judgment sought shall be rendered forthwith if the pleading(s), depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

### CASE-LAW SUMMARY JUDGMENT STANDARDS:

When parties file cross-motions for summary judgment, court must consider each motion separately, since each party, as movant, bears burden of establishing the nonexistence of genuine issues of material fact, as well as his/her entitlement to judgment as matter of law. In re Rehab Project, Inc., 238 B.R. 363 (N.D. Ohio 1999). When adverse parties each moves for summary judgment, the court will draw all permissible inferences in the light most favorable to each party when considering the motion of the parties. Feldstein v. Nash Community Health Services, Inc., 51 F. Supp. 2d 673 (1999). A defendant may move for summary judgment, the court can evaluate the materials presented in support of and in opposition to the motion, and can then determine whether there is a need for trial. See Wagner v. Allied Chemical Corp., 623 F. Supp. 1407 (D.Md.1985). In order not to usurp the right of a party to a trial by jury, the court is precluded from weighing the evidence, credibility and must

construe all evidence in a manner most favorable to the nonmoving party, <u>Honnover Ins. Co. v.</u> <u>American Eng'g Co.</u>, 33 F.3d 727, 730 (6th Cir. 1994).

**Amadasu is Entitled to Rule 56 (c) Summary Judgment Against Defendants On All Claims As A Matter of Law Because Evidence Supports Elements of His Claims**

Plaintiff is entitled to Rule 56 (c) summary judgment against defendants on all claims as a matter of law because his prima facie case with adduced evidence shows there is no genuine issue as to the material facts and that plaintiff is entitled to a judgment as a matter of law as follows

**1.    <u>Plaintiff establishes prima facie case of violation of elements of COBRA/Anti-dumping</u>**

Plaintiff is (i) an individual patient (ii) who suffered personal harm, (iii) as a direct result of , (iv) a hospital's (MFH) and/or a physician's (Berry), (v) violation of any COBRA requirement; and (vi) entitled to damages. See 42 USCA 1395dd(d)(3), as amended.  i) it is undisputed that plaintiff was/is an individual patient under the statute; ii) who suffered personal harm; iii) as a result of, iv) MFH's and Berry's, v) violation of any of the COBRA  requirements and plaintiff is entitled to the damages. Berry was the physician responsible for the history, examination, diagnosis, tests, treatment or transfer of plaintiff at MFHMA

**(a) <u>There is direct evidence of defendants' violation of COBRA requirements as follow</u>**

Plaintiff' affidavit with exhibits, medical record, admissions by defendants as set forth below constitute direct evidence of their failure: (1) to provide appropriate medical screening examination under 42 USC 1395dd(a); (2) to provide necessary stabilizing treatment for plaintiff psychiatric and medical conditions before transfer under 42 USC 1395dd(b); (3) to obtain signed written informed consent to refuse transfer to CSC; (4) to follow any requirement of restricting transfer under 42 USC 1395dd(c)(1) et seq.; and (5) to follow any requirement of appropriate transfer  and transportation under 42 USC 1395dd(c)(2) et seq.

**(b)    <u>Defendants' Responses to Plaintiff's Rule 33, 34 & 36 Discovery Dispositive</u>**

<u>MFHMA's Responses to plaintiff's Rule 36 Request for Admissions (Ex. 40-52) dispositive</u>

MFHMA in bad faith denied Requests #1 and #2 and could not admit or deny # 4 but contradicted itself by admitting Requests #3 and #5; MFHMA admitted Request # 7 that it did not obtain or plaintiff did not give written informed consent to transfer to Crisis Stabilization Center (CSC).; MFHMA denied Request #6 but medical record discharge summary (Ex. 14-15) contradicts it. [Amad. Aff. Ex. 40-41]; it denied Request #8, and could not admit or deny Requests #9, 10, 11, 12, 13,

and 14, but Berry's Admission Note, physician progress notes and physician order form in the medical record (Ex.4-12) contradict the responses or show that it should have admitted the Requests in good faith; it admitted Request #15 that those required tests were not done, (Amad. Aff. Ex. 42-45); it denied as inapplicable Request #16 regarding mandatory patient participation in treatment and discharge planning but federal and state laws as well as MFH's rule mandate plaintiff's participation; it denied any failure of Requests #17, 18, 19, & 21 regarding appropriate COBRA's transfer and informed consent requirements but its admissions of Requests #3, 5, and 7 (Ex.40-41) contradict its responses; it failed to answer Requests #20 regarding unsuitable transferee CSC, and #22 regarding any limitations to Berry's medical licensure and practice; it admitted Request # 23 regarding failure to seek specialist consultations for plaintiff's medical conditions; it evaded Requests # 24 and #25 regarding correlation of medical and psychiatric standard of care with accepted authoritative texts, literatures; clinical guidelines; it admitted Request # 26 regarding Berry's "Physician Attestation" of failure to make diagnosis of plaintiff's medical conditions, (Amad. Aff. Ex. 49 and 199); it admitted Request #27 regarding medical record "Doctor Certification of Patient Transfer Order" that standard of transfer was followed in transfer from MFHWH to MFHMA but failed to follow it in transfer from MFHMA to CSC, (Amad. Aff. Ex. 2-3, and 49); it admitted Request # 28 regarding medical record lacking documentation for appropriate medical screening examinations, (Amad. Aff. Ex. 1, and 49); it could not admit or deny Request # 29 regarding deficient and defective medical record Discharge Summary, but it should have admitted as medical record shows (Amad. Aff. Ex. 14-15, and 49); it denied Request # 30 regarding failure to diagnose plaintiff's medical conditions in "Axis III" of Daignostic and Statistical Manual of Mental Disorders (DSM) but its admission of Request #26 contradicts it, (Amad. Aff. Ex. 49-50, & 199); it admitted Request # 31 regarding inappropriate transfer transportation by taxis unaccompanied by qualified medical personnel to CSC , and it denied that medical record did not document transferring plaintiff against his reluctance but medical record discharge summary contradict it (Amad. Aff. Ex. 15, and 50); it denied Request # 32 regarding deficient and defective medical record Admission Note, which shows it should have admitted, (Amad. Aff. Ex. 4-5, and 50); it denied Request #33 regarding predetermination to transfer plaintiff to CSC on the first day of admission but medical record admission note shows that it should have been admitted, (Amad. Aff. Ex. 4-5, and 50); it denied Request # 34 regarding lack of monitoring hospital course of treatment of plaintiff's medical conditions but the medical record physician progress record shows that it should have admitted, (Amad. Aff. Ex. 5-9, and 50); it Requests # 35, 36, 37, 38 and 39 regarding application of American Psychiatric Association (APA) guidelines on standard of care published in the web (Amad. Aff. Ex. 192-193), which show that it should have admitted; and finally, it denied Request

9

# 40 (Ex.52) regarding failure to follow its own policies, procedures, rules and regulations (Amad. Aff. Ex. 186-191, and 49), which show that it should have admitted because the medical records shows that MFH and Berry failed to follow their own rules.

### Berry's Responses to plaintiff's Rule 36 Request for Admissions (Ex. 144-163) dispositive

Berry (He) admitted Requests #1 and #2 regarding lack of evidence of communication with transferee physician of CSC and lack of information disclosure for plaintiff to make informed consent to transfer; he explicitly admitted Requests #3 that he had no obligation to execute MFH's "Doctor Certification for Patient Transfer Order Form" but COBRA and MFH's Rule 303 imposed obligation on Berry to execute the patient transfer form ((Amad. Aff. Ex. 189); he admitted Request #4 regarding lack of certification of the transferee physician of CSC that plaintiff would be accepted upon transfer; he admitted Request #5 that he had no evidence of receiving CSC or physician actually received and accepted plaintiff upon transfer; he denied Request # 7 but medical record discharge summary contradict it  (Amad. Aff. Ex.14-15, & 147); he denied Request # 8 regarding his false defamatory statement about plaintiff but written document by the hearer contradict it (Amad. Aff. Ex.36, & 147); he denied Request #9 regarding his obligation and failure to obtain informed consent before transfer but MFHMA's admissions above and its Rule 303 as well as COBRA and state informed consent law contradict it, (Amad. Aff. Ex.40-41, & 189); he denied Request #10 but medical record discharge summary (Ex. 14-15) contradicts it. [Amad. Aff. Ex. 40-41, 148]; he denied Requests #11 & #12 regarding obligation to do those tests and other things stated therein but Berry's Admission Note, physician progress notes and physician order form in the medical record (Ex.4-12) and accepted medical text (Amad. Aff. Ex.200-201) contradicts the responses or show that he should have admitted the Requests in good faith, (Amad. Aff. Ex. 149-150); he denied in part Request #13 that those required tests were not done, (Amad. Aff. Ex. 151), which is contradicted by medical record and clinical text (Amad. Aff. Ex.200-201) but he admitted that he prescribed medication without first independently collecting data; he denied Request #14 regarding his failed obligation to do the things stated but the medical record contradict it; he admitted Request 16 regarding his failure to do necessary psychological tests listed (Amad. Aff. Ex.153-4); he denied Request #17 regarding mandatory patient participation in treatment and discharge planning  but federal and state laws as well as MFH's rule mandate plaintiff's participation and he contradicted by medical record, (Amad. Aff. Ex.13, 154);

Berry denied any failure to follow COBRA, State law, and MFH 'S Rule standard of transfer and informed consent in Requests #18, 19, & 20 regarding appropriate  COBRA's transfer and informed consent requirements but MFHMA  admissions of Requests #3, 5, and 7  in (Ex.40-41)

contradict his responses; he admitted Request #21 regarding the type of conditions treated at CSC but Berry did not informed plaintiff or diagnosed plaintiff with those conditions that would have warranted transfer to CSC; he admitted in part Request # 22 regarding inappropriate transportation to CSC via taxi but denial of the remaining part of the Requests is contradicted by medical record, admissions of MFHMA (Ex.40-41, 157) and COBRA and MFH's Rule 303 requirements; he admitted Request #23 regarding lack of limitations of his scope of medical and psychiatric practice but medical record contradict it and shows he failed to diagnose plaintiff's medical conditions, (Amad. Aff. Ex. 4-12, 14-15, 158, & 200-201); he denied Request #24 regarding his failed obligation to seek medical specialists consultations for plaintiff's medical conditions but medical records and MFHMA's admissions contradict it; he denied Requests #25 and #26 regarding correlation of medical and psychiatric standard of care with accepted authoritative texts, literatures; clinical guidelines; he denied Request # 27 regarding Berry's "Physician Attestation" of failure to make diagnosis of plaintiff's medical conditions but medical record "physician attestation" contradict it, (Amad. Aff. Ex.199); he denied Request #28 regarding medical record "Doctor Certification of Patient Transfer Order" that standard of transfer was followed in transfer from MFHWH to MFHMA but failed to follow it in transfer from MFHMA to CSC, (Amad. Aff. Ex. 2-3, and 49) but MFHMA's admissions contradict Berry's answer;

Berry denied Request # 29 regarding medical record lacking documentation for appropriate medical screening examinations, but medical records and MFHMA's admissions contradict it (Amad. Aff. Ex. 1-15, and 49); he denied Request #30 regarding deficient and defective medical record Discharge Summary, but it should have admitted as medical record shows and MFHMA admitted (Amad. Aff. Ex. 14-15, and 49); he denied Request #31 regarding failure to diagnose plaintiff's medical conditions in "Axis III" of Diagnostic and Statistical Manual of Mental Disorders (DSM) but its admission of Request #26 contradicts it, (Amad. Aff. Ex. 49-50, & 199); he denied Request # 32 regarding inappropriate transfer transportation by taxis unaccompanied by qualified medical personnel to CSC, and documented transferring plaintiff against his reluctance but medical record (Ex. 15 and 16) and MFHMA's admissions contradicts it (Amad. Aff. Ex. 15-16, and 50); he denied Request # 33 regarding deficient and defective medical record Admission Note, which shows he should have admitted, (Amad. Aff. Ex. 4-5, and 50) and medical record contradicts it; he denied Request #34 regarding his subjective predetermination to transfer plaintiff to CSC on the first day of admission but medical record admission note shows that it should have been admitted, (Amad. Aff. Ex. 4-5, and 50, & 161); he denied Request # 35 regarding lack of monitoring hospital course of treatment of plaintiff's medical conditions but the medical record physician progress record shows that it should have

11

admitted, (Amad. Aff. Ex. 5-9, and 50, & 161); he denied Requests # 36, 37, 38 and 39 regarding application of American Psychiatric Association (APA) guidelines on standard of care published in the web (Amad. Aff. Ex. 192-193), which show that he should have admitted; and finally, he denied Request # 40 (Ex.163) regarding failure to follow MFH's policies, procedures, rules and regulations (Amad. Aff. Ex. 186-191), which show that he should have admitted because the medical records shows that MFH and Berry failed to follow their own rules.

## MFHWH's Responses to plaintiff's Rule 36 Request for Admissions (Ex. 71-82) dispositive

Like MFHMA and Berry, MFHWH provided evasive, incomplete response or no answer to the request for Admissions. Its admission of Requests #1 to 5 is consistent with Ex.2-3; its denial of Requests #6, 7 & 26 is contradicted by MFH's Rule 200 (Amad. Aff. Ex. 187) and COBRA, which mandate medical screening that MFHWH failed to do; its denial of Requests #10, 11& 12 is contradicted by medical record, (Amad. Aff. Ex. 1, 4-12, 14-15); it admitted in part Request #22 regarding plaintiff request for his medical record (Ex.77); it admitted Request #27 regarding MFH's Rule 300 (Ex.187) mandating complete history and physical examination by Berry who failed to follow the rule as evidenced by (Amad. Aff. Ex. 4-5, 14-15); it admitted in part Request #28 regarding MFH's Rule 301 (Ex.188) mandating progress notes on all patient's illnesses being treated but denial of remaining parts is contradicted by medical record lacking progress notes on plaintiff's medical respiratory and intestinal conditions (Amad. Aff. Ex.6-10); it admitted in part Request #29 regarding MFH's Rule 302 (Ex.188) mandating consultations to medical consultants to manage plaintiff's medical conditions which were not done, and is admitted by MFH (Amad. Aff. Ex.79); it admitted in part Request #30 regarding MFH's Rule 303 (Ex.189) mandating "appropriate transfer" of patient which defendants violated as evidenced by medical record and MFHMA's admissions above which also contradict its denial of the remaining parts of this Request; it admitted in part Request #31 regarding MFH's Rule 304 (Ex.189) mandating complete and correct medical records which defendants violated as evidenced by medical record (Amad. Aff. Ex.4-15) and MFH's admissions above that also contradict its denial of the remaing parts of this Request; it admitted in part Request #32 regarding MFH's Rule 305 (Ex.190) mandating signed complete and correct medical record discharge summary or signed written transfer summary if the patient is transferred which defendants violated as evidenced by medical record (Amad. Aff. Ex.4-15) and MFH's admissions above that also contradict its denial of the remaining parts of this Request; it admitted in part Request #33 regarding MFH's Rule 500 (Ex.191) requiring all medical staff members to comply with MFH's policies and

12

patient rights which defendants violated as evidenced by medical record (Amad. Aff. Ex.4-15) that also contradicts its denial of the remaining parts of this Request; its inability to admit or deny Requests #34, 36, and 39 regarding federal and state statutory and American Psychiatric Association (APA) standard of care is in bad faith because those are common knowledge standards (Ex.192-193); its denial of Requests #35, 37, 38 is contradicted by medical record and APA's guidelines ((Amad. Aff. Ex.4-15; 192-193); and finally, it could neither admit or deny Request #40 regarding defamation statement about plaintiff but it could have denied it since MFH has no proof of the truth of the statement.

## Grinnell's Responses to plaintiff's Rule 36 Request for Admissions (Ex. 97-107) dispositive

Grinnell admitted Request #9 regarding lack of written policy, procedure and criteria for appointment of resident in family practice triaing program (Ex.100); he admitted Request #10 regarding failure to consider plaintiff for family practice residency position (Ex.101; his denial of Request #13, and 14 regarding MFH having ultimate authority and control over the family practice residency training program, is contradicted by requirements of Accreditation Council for Graduate Medical Education (ACGME); he) admitted Request #19 (Ex.102) regarding plaintiff going to MFHMA on 10/6/00 to collect his medical record as business-invitee; his denial of Request #20 regarding failure to release medical record is contradicted by the medical record and (Ex.26-31); his denial of Requests #21 (Ex.103) is contradicted by (Ex.35-37); his denial of Requests #22 (Ex.103) is contradicted by medical record (Ex.16); his denial of Requests #23, & 24 (Ex.103) is contradicted by (Ex. 20 & 192-193); he evaded Request #25 (Ex.104) regarding inappropriate transportation to CSC; he admitted Request #26 that Berry was/is not precluded from taking history, doing physical examination, review of systems, diagnostic tests, medical diagnosis of physical illnesses, seeking consultations, and proper documentations, all of which Berry failed to do as evidenced by medical records; denial of Request #27 & 29 (Ex.104) regarding defendants failure to comply with COBRA is contradicted by medical records and defendants' all material admissions;   admitted request #30 (Ex.104) regarding lack of evidence that CSC received or accepted plaintiff's transfer; admitted Requests #31, 32, & 33 (Ex.104-105) regarding inappropriate transfer and transportation of plaintiff to CSC; admitted Request #35 regarding lack of evidence in the medical record that plaintiff's medical conditions were stabilized before transfer (Ex.105); could not admit or deny Request #36 (Ex.105) regarding taxi cab driver dropping plaintiff at the roadside of CSC evidencing inappropriate transfer; In Request #37 (Ex.105) he admitted ignorance of COBRA that prohibits inappropriate transfer and

13

transportation of patient; admitted in Request #38 (Ex.106) that MFH had no duty to comply with requirements of COBRA and MFH's Rule 303 (Ex.189); in Request #39 (Ex.106) denied that MFH continue to be responsible for plaintiff's safety and care until CSC actually received and accepted plaintiff; and finally, he admitted Request #40 (Ex.106 ) that MFH made inappropriate transfer of plaintiff to CSC.

### (c) Violation of discovery rules; discovery and litigation abuses by defendants dispositive

Plaintiff propounded Rule 34 discovery requests upon defendants to which they provided incomplete, evasive or no responses. Example, see Rule 34 request to MFHMA (Ex.55-60), which evidenced its failure to cooperate in discovery. However,  in response to Production Requests # 8, 9, 10, 11, 12, 13, 14, 24, 25 relating to transfer of plaintiff to CSC,  MFH admitted, "Defendant is aware of **no** such document(sic)", that is,  in effect, MFH never obtain (i) plaintiff's signed written informed consent  to transfer to CSC, (ii) certification of receiving facility-CSC showing available space and qualified personnel to treat plaintiff, agreement to accept transfer of plaintiff and to provide treatment; (iv) documentary evidence of transmission of plaintiff's medical record to CSC, (v) evidence of CSC actual acceptance and admission of plaintiff. Accordingly, MFH has no evidence of appropriate transfer of plaintiff to CSC. Also Production Request #17 to 23, 26, and 27 regarding plaintiff's employment discrimination claim, MFH failed to produce documents relating to decision not to hire plaintiff for the jobs applied for.

MFHMA failed and refused to provide verified responses to plaintiff's Rule 33 interrogatories as evidenced by (Amad. Aff. Ex.61-70). The purported answers and objections were signed by defendant's attorney, Karen A. Carroll (Carroll) in violation of Rule 33. Carroll has been acting as the judge in this case by "ruling" that plaintiff exceeded the number of interrogatories. (Ex.67-70). During the court hearing of 12/11/06, Carroll admitted answering and signing the interrogatories but the judge did nothing about it or sanction her

MFHWH failed to provide plaintiff with complete and full responses to Rule 34 production requests as evidence by (Ex.83-88). Also it provided plaintiff with evasive, incomplete or no responses to Rule 33 interrogatory requests as evidence by (Ex.89-96). Again, the purported answers and objections were signed by defendant's attorney, Carroll in violation of Rule 33. The answers were not verified pursuant to Rule 33. During the court hearing of 12/11/06, Carroll admitted answering and signing the interrogatories but the judge did nothing about it or sanctioned her

14

Defendant Grinnell MFHWH failed to provide plaintiff with responses to Rule 34 production requests as evidence by (Ex.108-117). He provided plaintiff with evasive, incomplete or no responses to Rule 33 interrogatory requests as evidenced by (Ex.118-126). Again, the purported answers were signed by defendant's attorney, Carroll in violation of Rule 33. The answers were not verified pursuant to Rule 33. During the court hearing of 12/11/06, Carroll admitted answering and signing the interrogatories but the judge did nothing about it or sanction her

Defendant McCoy, Daleiden, Bronnert and Lobeck failed to provide plaintiff with complete and full responses to Rule 34 production requests as evidence by (Ex.127-133). This court and Sixth Circuit have adopted a ruling that defendant employees' personnel files are discoverable yet defendants by their attorney refused to produce requested documents

Lobeck provided plaintiff with evasive, incomplete or no responses to Rule 33 interrogatory requests as evidenced by (Ex. 134-143). Again, the purported answers were signed by defendant's attorney, Carroll in violation of Rule 33. The answers were not verified pursuant to Rule 33. During the court hearing of 12/11/06, Carroll admitted answering and signing the interrogatories but the judge did nothing about it or sanction her.

Defendant Berry failed to provide plaintiff with responses to Rule 34 production requests as evidenced by (Ex.164-169). He provided plaintiff with evasive, incomplete or no responses to Rule 33 interrogatory requests as evidenced by (Ex.170-183). Again, the purported answers were signed by defendant's attorney, Deborah R. Lydon (Lydon) in violation of Rule 33. The answers were not verified pursuant to Rule 33. During the court hearing of 12/11/06, Carroll admitted answering and signing the interrogatories but the judge did nothing about it or sanction her.

Defendants via their counsels received numerous plaintiff's signed authorizations to release medical records and employment records from all specifically identified sources but defendants wanted more blanket authorizations to release information and materials from unidentified or specified sources as evidenced by (Ex. 184-185). Plaintiff in good faith requested defendants to specify the name of person, agency or facility from which they sought to obtain information but they refused to do that.

## 2.    Plaintiff establishes prima facie case for claim of lack of informed consent/refusal to transfer to Crisis Stabilization Center(CSC) sounding in battery

Plaintiff established prima facie case of the elements of a claim of lack of informed consent to transfer that MFH and Berry: (a) had a duty to obtain informed consent for discharge and transfer, (b) breached that duty, (c) the breach was a direct and proximate cause of plaintiff's injury. Once plaintiff

had made a prima facie case and gone forward with evidence on these points, the burden shifts to defendants to produce evidence that they had obtained informed consent consistent with RC 2317.54. See, e.g., Cobbs v. Grant 8 Cal.3d 229, 502 P.2d 1, 104 Cal. Raptr. 505 (Cal. 1972)

**Plaintiff presents direct evidence of lack of informed consent to transfer & battery**

Defendant MFH and Berry never obtained informed consent/refusal to the transfer to CSC, they breached that duty to do so as the medical record and their admissions show, and the breach of their duty proximately caused plaintiff the injury, which could not have resulted if they had obtained informed consent and plaintiff would not have consented to transfer if they had performed that duty. Accordingly, there is no genuine issue of material fact regarding this claim for trial and plaintiff is entitled to judgment as a matter of law. If the form does not include all of the material risks associated with a given procedure, then there is lack of informed consent. See, e.g., Foreman v. Wi., 1998 Ohio App. LEXIS 4625 (11th Dist.1998)

**3. MFH and BERRY Failed To Comply With Their Own Rules, regulations, Policies and procedure**

There is direct evidence that defendants failed to follow their own rules, regulations, policies and procedures as set forth above. Their failure proximately caused plaintiff's harm. Specifically regarding examination, treatment, transfer, informed consent/refusal and patient-client's rights

**4. Plaintiff established prima facie case of race and national origin employment discrimination under Title VII and RC 4112 et seq.**

That he is black of Nigeria origin, applied and qualified for jobs applied for but was not hired because of his race and national origin and defendants continued to advertise the open positions even after informing plaintiff that he passed the unusual ultrasound scanning test, the background check and interview. There is direct evidence that plaintiff passed the undue test (Amad. Aff. Ex.32). Once plaintiff established a prima facie case of discrimination and produced evidence the burden shifts to defendant

**5.      DEFENDANTS COMMITTED NEGLIGENCE PER SE or STRICT LIABILITY and NO EXPERT TESTIMONY NECESSARY TO SUPPORT OR PROVE IT**

Plaintiff alleges violation of federal COBRA/Anti-dumping law, Mental Health Bill of Rights, 42 USC 9501; Ohio Mental Health law, RC 5122 et seq, Ohio Informed Consent Law. These are strict liability laws without showing of fault or deviation by expert witness testimony. Health care providers

16

who violate COBRA provisions are liable, even without a showing of negligence, for any damages proximately caused by their actions-"failure to adhere to a standard, whether or not negligent, creates liability. See, e.g., Reid v. Indianapolis Osteopathic Medical Hosp., 709 F. Supp. 853 (S.D. Ind. 1989).

Negligence per se or *strict liability* lawsuits are brought by private plaintiffs based on the defendant's violation of a law. In these cases the law that was violated defines the appropriate standard of care. For the court to accept a negligence per se claim, the plaintiff must show, and has established that defendants (a) violated federal and state laws; inter alia; COBRA, and Ohio Informed Consent Statute, RC 2317.54, Ohio Mental Health Act; (b) that the law was intended to prevent the type of injury that occurred to plaintiff; and (c) that the plaintiff was in the class of persons intended to be protected by the law. Then the burden shifts to defendants to produce evidence that they did not violate the law. No expert testimony is needed to prove violation of the law.

In such cases, the plaintiff has adduced evidence that the defendants have violated the law. Negligence per se claims are intended to protect patients. Negligence per se claims also could be brought against physicians who do not obtain informed consent for procedure, treatment, diagnosis or transfer mandated by federal and state laws.

The determination of any question of duty, that is, whether the defendant stands in such relation to the plaintiff that the law will impose upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff, is an issue of law for the court rather than for jury or expert witness. James v. Meow Media, Inc., 300 F.3d 683 (6th Cir.2002), cert. denied, 537 US 1159, 123 S. Ct. 967 (2003). The court determines as a matter of law, the existence and scope or range of the duty, that is, whether the plaintiff's interest that has been infringed by the conduct of the defendant is entitled to legal protection. Metropolitan Gas Repair Service, Inc. v. Kulik, 621 P.2d 313 (Colo.1980). It has been held that the distinction between "negligence" and "negligence per se" is the means and method of ascertainment; negligence must be found by a jury by evidence, while negligence per se results from violation of a

17

specific law or ordinance. <u>Wayne Palmer & Associates v. Heldor Industries, Inc.</u>, 839 F. Supp. 770 (D.Kan.1993).

### 6)   Ohio Medical Malpractice Law is preempted by federal COBRA/Anti-dumping Act because expert witness requirement conflict with federal COBRA provisions

Expert witness testimony are not mandated in COBRA/Antidumping Act

In <u>Spradlin v. Acadia-St. Landry Med. Found.</u>, 758 So.2d 116 (La. 2000), it is held that a state law may be preempted because of a direct or actual conflict with federal law in one of two ways: First, there is preemption . . . if it is impossible to comply with both state and federal law. If dual compliance is not "physically impossible" . . . there is no "actual conflict." Second, state law "actually conflicts" with federal law "where state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." (citing, 2 Ronald D. Rotunda and John E. Nowak, Treatise on Constitutional Law §12.4 (3d ed. 1999)(quoting *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238 (1984)). Hence, the test for determining whether a direct conflict exists is two-fold: "Such a [direct] conflict is found where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (emphasis added). 2 Norman J. Singer, Sutherland Statutory Construction §36.08.50 (5th ed. 1993); <u>Deberry v. Sherman Hosp. Ass'n</u>, 741 F.Supp. 1302, 1307 (N.D. Ill. 1990).

<u>Spradlin</u> court quoting as the [Virginia Supreme Court in] Smith observed, EMTALA "establishes a separate federal cause of action, cognizable in federal and state courts, independent of any additional or pendant state claims," with a two-year statute of limitation in § 1395dd(d)(2)(C) for filing claims. Id. Notwithstanding the fact that the Virginia Act tolls the statute of limitations during compliance with its procedural prerequisites, these state law tolling provisions cannot toll the running of EMTALA's two-year statute of limitations. . . . Because Virginia's procedural requirements are potentially in direct conflict with, and therefore inconsistent with EMTALA, we hold that they are not applicable to an EMTALA claim . . . . 42 F.3d 851, 866 (quoting *Smith v. Richmond Memorial Hosp.*, 416 S.E.2d at 695). Permitting plaintiffs' medical malpractice and EMTALA claims to be lumped together and then applying the mandatory pre-suit panel review procedure to the claims as a whole would subvert the plain meaning and intent of 42 U.S.C. §1395dd. <u>Griffith v. Mt. Carmel Medical Ctr.</u>, 842 F.Supp. 1359, 1364 (D. Kan. 1994)(declining to engraft comparative fault law onto EMTALA claim). Unlike medical review panels which are designed to weed out spurious medical malpractice claims and to encourage pre-trial settlement, EMTALA's private cause of action is designed to penalize hospitals and thereby discourage "dumping." This difference in purpose buttresses our holding that the

18

procedural requirement of the Louisiana Medical Malpractice Act directly conflicts with EMTALA and is thus preempted" Spradlin further held that the federal and state courts that have addressed the issue have held that engrafting such a procedural limitation onto a federally created cause of action would result in a direct conflict and is thus preempted. See, e.g., Reid v. Indianapolis Osteopathic Medical Hosp., Inc., 709 F. Supp. 853 (S.D. Ind. 1989); *Smith v. Richmond Memorial Hosp.*, supra; HCA Health Services of Indiana, Inc. v. Gregory, 596 N.E. 2d 974 (Ind. App. 1st Dist. 1992).

Factors supporting this conclusion by courts and commentators include: (1) EMTALA does not provide a requirement, expressly or impliedly, for a pre-trial medical review panel (or expert witness testimony); (2) EMTALA's strict liability approach to stabilization claims makes a panel's [expert witness] finding of fault or negligence irrelevant and unnecessary; (3) EMTALA's two-year peremptive period of limitation could elapse before a panel decision is rendered; and (4) the purpose behind EMTALA's creation of a private cause of action would be defeated or undermined by engrafting such a procedural obstacle. Taken together, these factors establish an actual conflict between EMTALA and a pre-trial medical review panel [expert witness] requirement. Hence, the EMTALA preemptive provision precludes engrafting such a procedural requirement onto a plaintiff's federal cause of action pursued in state court. *Id.*

Applying *Spradlin* in the present case, plaintiff demands damages under EMTALA based on defendants' alleged breach of their duty to provide appropriate medical screening examination, to properly stabilize or to appropriately transfer plaintiff. If plaintiff proves a violation of the requirements of EMTALA (which does not distinguish between intentional and unintentional conduct), plaintiff will be entitled to recover the appropriate damages. Plaintiff also alleged in this action conduct by defendants that fell below the professional standard of care and would constitute medical malpractice under theory of lack of informed consent and violation of State laws. This claim must not be subjected to state's malpractice expert witness requirement. Requiring separate suits based on related claims growing out of the same transaction or occurrence appears to be judicially inefficient and may produce inconsistent results.

In any event, plaintiffs are entitled to recover damages on both claims, whether in one or two trials, if the different requirements of proof are met, despite the fact that the law requires exhaustion of an administrative remedy in one action that is not applicable to the other. *Id, Spradlin.*

See **Wendy W. Bera,** Comment, Preventing "Patient Dumping": The Supreme Court Turns Away the Sixth Circuit's Interpretation of EMTALA, 36 Hous. L.Rev. 615, 623 (1999).

**10) Credibility issues precludes summary judgment** See <u>Rosell v. Esco,</u> 549 So.2d 840, 844-45 (La. 1989) (holding that "[w]here documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness based upon a credibility determination."). This is a case whereby Coleman's signature recognizing Dr. Deno's order to go immediately to Charity, Coleman acknowledged that he was ordered not to delay, and he later seeks to undermine his own acknowledgment. Under this court's test for finding manifest error, because Coleman is essentially contradicting himself, his delay=causation argument is even more "internally inconsistent or implausible on its face." See id.

## 11) <u>ADMITTED MATERIAL FACTS NOT IN GENUINE DISPUTE DISPOSITIVE.</u>

### Defendants' Admissions of Plaintiff's Rule 36 Requests for Admissions Warrant Summary Judgment in favor of plaintiff as matter of law

In <u>Cleveland Trust Co. v. Willis,</u> 20 Ohio St.3d 66, 485 NE2d 1052, 20 Ohio B. Rep. 364 (1985), the Ohio Supreme Court held that: "...admission can be used to establish a fact, even if it goes to the heart of the case. This is in accord with the purpose of the request to admit – to resolve potentially disputed issues and thus to expedite the trial. See <u>St. Paul Fire & Marine Ins. Co. v. Battle,</u> 44 Ohio App.2d 261, 269, 337 N.E.2d 806, 73 Ohio Op.2d 291 (8th Dist. Ct. App., Cuyahoga 1975)

Summary judgment under Rule 56 could be based on matter deemed admitted by failure to reply to request for admissions. See, e.g., <u>Kurelov v. Szabo,</u> No. 66292 (8th Dist. Ct. App., Cuyahoga, Sept. 8, 1994) (1994 Ohio App. LEXIS 3994). Here, defendants  admitted all the material facts dispositive of plaintiff's claims. Accordingly, plaintiff is entitled to judgment as a matter of law.

## CONCLUSION

Based on the foregoing, plaintiff prays the court to grant plaintiff's motion for summary judgment on all claims against defendantsas a matter of the law as there are no genuine issues of material facts for the factfider to decide because defendants admitted all the facts material to plaintiff's claims

Respectfully submitted,

Darlington Amadasu

## CERTIFICATE OF SERVICE

I certify that the foregoing was served on Deborah R. Lydon, Dinsmore & Shohl LLP, 1900 Chemed Center, 255 East Fifth Street, Cincinnati, OH 45202 obo Karen A. Carroll, Kohnen & Patton LLP, 201 East Fifth St., Cincinnati, OH 45202 by 1st class mail on 7/31/07