IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

07 JUL 31 PM 2:59

DARLINGTON AMADASU
Plaintiff

v.

MERCY FRANCISCAN HOSPITAL WESTERN HILLS, et al
Defendants.

Case No.: C-1-01-182
[Spiegel/Black]

**PLAINTIFF'S AFFIDAVIT WITH EXHIBITS & DISCOVERY RESPONSES IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR**
**1. SUMMARY JUDGMENT;**
**2. OBJECTIONS TO DEFENDANTS' JOINT MOTIONS FOR SUMMARY JUDGMENT**
**3. OBJECTIONS TO ORDERS STRIKING LAY WITNESS, DENYING MOTION TO VACATE;**
**and 4.REPORT & RECOMMEDATION**

..................................................................................................................................

I, Darlington Amadasu, M.D. after being first duly sworn, deposed and testified as follows:

1. I am a family, occupational and environmental medicine physician who has been engaged in the general practice of medicine, which include without limitation, the practice of psychiatry.

2. I certify that the documents and or exhibits attached hereto are true and accurate copies of some of the documents that I kept and maintained in the course of my physician-patient and hospital-patient relationships with Ravi R. Berry and the Mercy Franciscan Hospitals (MFH), at Western Hills (MFHWH) and at Mount Airy (MFHMA); and are excerpted copies of relevant part of my medical record being kept, maintained and produced by defendants as business records pursuant to RC 2317.40 and under Evid R 803(6). The documents also include true copies of discovery responses or non responses from defendants. They are hereby sworn to and certified.

3. During the relevant period, Berry and I had physician-patient relationship, and the MFH and I had hospital-patient relationship. Berry was the responsible physician under COBRA

**There is evidence (direct and/or circumstantial) to establish the following facts**:

4. On 03/26/01, Plaintiff filed a pro se complaint asserting federal and state law claims (Doc.2).On 08/01/01, Calendar Order (CO) was made (Doc.12).

5. Plaintiff completely and fully made Rule 26(a) initial disclosures and production of documents without waiting for defendants' Rule 34 discovery requests pursuant to Rule 26(a)(1). Between August 2001 and April 2002, parties engaged in discovery.

6. Defendants had completed all their discovery and obtained plaintiff's timely, complete and full responses to their Rule 30, 33, 34, and 36 discovery requests but they failed to completely and fully respond to plaintiff's discovery requests.

7. Defendants comprehensively, fully and completely deposed plaintiff on 04/28/00 and they denied plaintiff his right to review, correct and sign the transcript thereof pursuant to Rule 30(e) and they failed to file the deposition original transcripts
8. Initially on 04/16/02 and subsequently, the court repeatedly granted defendant Ravi B. Berry (Berry)'s repeated and consecutive motions to stay the proceedings. (Docs.28, 29, 36, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48). After plus 4 years of case being in abeyance, on 10/03/05 the court lifted the stay on the proceedings following the defendants' motion to lift stay of proceedings (Docs. 51 & 52).
9. On 04/10/06, the court directed parties to confer, plan discovery and file report pursuant to Rule 26(f). (Doc.53). On 05/23/06, parties filed Rule 26(f) Report Supplemental in which plaintiff listed outstanding discovery responses expected from defendants.
10. The court made Amended Calendar Order (ACO) [Doc.55]. Pursuant to the ACO, plaintiff propounded Rule 33, 34, and 36 discovery requests upon defendants but they neglected, failed and refused to make complete and full responses thereto.
11. For more than six (6) months after ACO was made, Defendants neglected and abandoned their discovery but in the eleventh-hour of the discovery deadline, Defendants collusively filed contemporaneously notice of repeating already-held deposition and emergency motion to repeat deposition (Docs.70, 71), which were not delivered to or received by plaintiff.
12. The court's order (Doc.72) dated and mailed Thursday, 11/02/06 was belatedly delivered to plaintiff's post office mail box on 11/15/06 by the post office. The 11/07/06 court's ex parte order (Docs.73) granting defendants' motion to repeat undue deposition was belatedly by mail delivered to and received by plaintiff on Saturday, 11/11/06.
13. Plaintiff moved (Doc.76) unopposed to vacate and set aside Doc.73.
14. Without complying with Local Rule 37.1 and 37.2 requirements, Defendants contemporaneously moved to compel and dismiss (Docs.77, 78). I opposed it (Doc.81).
15. In good faith effort and pursuant to the local Rule 37.1, Plaintiff organized all-parties conference to resolve the discovery disputes extra-judicially but when defendants refused to cooperate, plaintiff sought informal discovery dispute conference with the magistrate who converted the informal discovery dispute conference to formal hearing on all pending motions without allowing plaintiff to make his Rule 37(a) motion to compel the defendants. (Docs.79 & 80).
16. Plaintiff filed response (Doc.81) to defendants' motion to compel and dismiss. During and after the 12/11/06 hearing, the magistrate failed and refused to address or rule on the discovery

disputes, defendants' non-compliance with the discovery rules or to direct defendants to completely and fully provide plaintiff with their outstanding responses to plaintiff's discovery requests. Rather, the magistrate improperly staying discovery issues and preempting plaintiff's needs for discovery response, directed plaintiff to respond to defendants' illegitimate motions (Doc.83).

17. When suddenly evicted unlawfully, made homeless, and without access to his belongings and means to respond, plaintiff filed emergency motion to stay proceedings until plaintiff's privation, handicap and homelessness improves (Doc.86). Magistrate granted essentially only one day for plaintiff to file responses (Doc.88). Plaintiff renewed emergency motion to stay proceedings until he got access to the means to respond. (Doc.89).

18. Without plaintiff exercising his right to respond, Magistrate made about eight (8) bundled-up orders (Doc.92) granting all defendants' motions and denying all plaintiff's meritorious and good-cause motions and contemporaneously made Report and Recommendations (Doc.93) granting defendants' motions to dismiss and for summary judgment.

19. Plaintiff moved for extension of time to respond to the Orders and to make his summary judgment motion (Doc.94) which was granted by the court (Doc.97) but, which was not served on plaintiff.

**There is evidence to establish the following relevant facts of medical COBRA, federal Mental Health statute, 42 USC 9501, Ohio Mental Health Act, ORC 5122 violations:**

20. Plaintiff had emergency psychiatric and medical health conditions requiring treatment. The emergency medical problems involved his respiratory, gastro-intestinal and genito-urinary systems.

21. On 04/24/00, plaintiff was admitted into the Emergency Department (ED) of Mercy Franciscan Hospital-Western Hills (MFHWH) for psychiatric and medical examination, diagnosis, treatment where triage was done by the nurse but no "appropriate medical screening examinations" and diagnosis were done. (Ex.1).After determining that plaintiff had emergency conditions, MFHWH-ED "appropriately transferred" plaintiff to Mercy Franciscan Hospital-Mount Airy (MFHMA). (Comp. #15; Ex.2-3). MFHMA admitted plaintiff into its Inpatient Department (IPD) and appointed defendant Ravi B. Berry, M.D. (Berry) as the treating physician for plaintiff.

22. On 04/25/00, the first day of treatment, MFHMA and Berry failed: inter alia; (1) to take and document complete and full complaints of plaintiff's psychiatric and medical conditions; (2) to take and document complete and full plaintiff's medical, surgical, family, and social histories;

(3) performed reviews of system; (4) to performed basic, full and complete physical examinations, (5) perform and or order basic and necessary screening and diagnostic tests relative to plaintiff's conditions; (6) to diagnose and document plaintiff's respiratory, intestinal and genito-urinary conditions; (7) to make complete and full admission note as evidenced by deficient Berry's Admission Note in plaintiff's medical record (.Ex.4-5).

23. Without taking appropriate complaint, history, performing appropriate medical screening examination, diagnostic tests, and diagnosis of plaintiff's respiratory and intestinal conditions (Asthma and Diarrhea), MFH and Berry prescribed medications for Asthma and Diarrhea (Ex.10).

24. From 04/24/00 through 05/01/00, MFH and Berry failed to perform appropriate medical screening examinations; failed to take plaintiff's daily complaints; failed to perform and or order appropriate tests; failed to request medical expert/consultants for plaintiff's medical conditions; and failed to monitor plaintiff's medical conditions responses to medications that they prescribed for plaintiff as evidenced by the Progress Notes in plaintiff's medical record lacking documentations of those mandatory services (Comp. # 18-23; Ex. 6-9).

25. MFH and Berry failed to allow plaintiff's rightful participation in his treatment, discharge and transfer planning as evidenced by Patient Participation in Treatment Planning in medical record (Amad Aff. Ex. 13).

26. Discharge Summary in plaintiff's medical record is insufficient, defective and without notations as to complete and full complaints of plaintiff's psychiatric and medical conditions; (2) complete and full plaintiff's medical, surgical, and social histories; (3) basic, full and complete physical examinations done, (4) basic and necessary screening and diagnostic tests relative to plaintiff's conditions; (5) diagnosis of plaintiff's respiratory, intestinal and genito-urinary conditions; (6) course of treatments of the medical conditions; (7) prognosis; (8) benefits/risks of transfer. (Ex.14-15).

27. On 05/01/00, A social worker, Mr. Timothy Sillman, discharged and transferred plaintiff to Crisis Stabilization Center (CSC) in a taxi unaccompanied by any qualified medical personnel of MFH as evidenced by Discharge & Continuing Care Plan in the medical record (Ex. 16).

28. Crisis Stabilization Center (CSC) was/is a center for individuals with psychotic behavior who is cannot make smooth transition back into the community as evidenced by CSC-brochure (Ex. 17). MFH and Berry inappropriately transferred plaintiff to CSC after they had determined that plaintiff had no psychotic behavior and had not determined his inability to make smooth transition into the community as evidenced by medical record (Ex.15).

29. Plaintiff made oral and written complaint about the inappropriate treatment by defendants while on inpatient admission (Ex.18).
30. MFH's Patient Representative, Ms. Ann Hoffman-Ruffner (Ann) documented that social worker, Tim Sillman, of Berry's treatment team, expressed his disappoint and frustration with Berry's failure to take responsibility of leading and directing the treatment team and for asking him (Sillman) to see if plaintiff would go to CSC, rather than Berry talking directly to plaintiff about transfer to CSC. (Ex.19-20).
31. From 05/01/00 to 10/30/00 MFH without justification refused to release plaintiff's medical records to me. At the time of discharge on 05/01/00, and on subsequent dates: 05/03/00, 08/07/00, 08/21/00 and 11/28/00 I executed authorization for release of medical records to me but MFH neglected, failed and refused to release them in spite of my several phone reminders. ( Ex. 21-25, 29).
32. Plaintiff complained by phone and in writing to defendant Steven Grinnell, (Grinnell) President/CEO of MFHMA to help release medical records (Amad. Aff. Ex. 26-27). Grinnell admitted the inconvenience and frustration caused plaintiff by their refusal to release medical record to plaintiff. (Comp. #31-35; Ex. 28). After more than six (6) months, MFH belatedly released medical record to plaintiff with certification pursuant to ORC 2317.422 (Amad. Aff. Ex. 38).
33. Plaintiff complained of the incomplete, insufficient and defective documentations made by Berry and the non-release of his medical record. MFH and Berry acknowledged and admitted their undue delay in releasing medical records and frustration thereby caused to plaintiff. (Comp. #48-50; Ex. 30-31).
34. On 10/06/00, at the invitation and appointment of MFH, plaintiff as invitee-business guest" went to MFHMA to personally obtain his medical record. The assault, battery, humiliation, ridicules, defamation, false imprisonment, harassments, etc that were proximately caused to plaintiff by the conduct of MFHMA and its employees are set forth in the Complaint (Comp. # 35-45) and is incorporated by reference as if fully re-written herein.
35. On 10/06/00, Berry made false defamatory statement of facts about plaintiff to known and unknown third-parties without plaintiff consent in which Berry published that plaintiff "has record for spousal abuse, assault on a police officer-is believed to carry on either threats made or statements of violence by same" (Ex. 36).
36. On 10/06/00, MFHMA by and through its employees made false defamatory statement of facts about plaintiff to known and unknown third-parties without plaintiff consent in which they

published that plaintiff was "disorderly person,…pretending to be a doctor" (Comp. #45-47; Ex. 35, 37).

37. In or about February 2000, plaintiff applied for the MFMA open second year family practice position for which he was qualified but was not hired because of his race, age, and national origin (Comp. #14).

38. In August 2000, plaintiff applied for MFH open positions of echocardiographer, general sonograper and epidemiology director, for which plaintiff met and exceed the required qualification.

39. Unprecedented, MFH subjected plaintiff to performance test for the echocardiographer position. MFH by and through its cardiologist and employees determined that plaintiff passed the skill/performance test, personal interview and all background/security checks (Comp. # 25-30; Ex. 32) but plaintiff was not hired because of his race, age, national origin, and disability. MFH continued to advertise the open position (Comp. #25-30; Ex. 33)

40. Contrary to magistrate's false conclusions in the R&R, throughout this action, I had fully and completely cooperated by fully and completely complying with defendants' Rules 26, 30, 33, 34, and 36 discovery requests and deposition by fully and completely providing responses and answers to all their requests and deposition to the best of my know-how, ability and availability of information and documents in my possession as evidenced by exhibits that defendants annexed to their motion papers, to wit: (Docs.25, 59) which show that plaintiff provided defendants with Rule 26 initial disclosures and even production, multiple signed authorizations for release of information, medical records, educational records, background check records, information relating to his education, employment, income, and medical history.

41. Defendants, their counsels and the court, not Amadasu, delayed this action for more than four (4) years as evidenced by (Docs.28, 29, 36, 37, 38, 39, 40, 41, 42, 43, 44, 47, 48, 50, 51, and 52). I made fruitless attempt to get the action go on but was denied by the court (Docs.46)

42. A review of transcript of deposition of plaintiff by defendants will contradict both defendants' and Magistrate's false discovery allegations against me.

**Violation of discovery rules; discovery and litigation abuses by defendants & their counsels**

43. Plaintiff propounded Rule 34 discovery requests upon defendants to which they provided incomplete, evasive or no responses. Example, see Rule 34 request to MFHMA (Ex.55-60), which evidenced its failure to cooperate in discovery. However, in response to Production Requests # 8, 9, 10, 11, 12, 13, 14, 24, 25 relating to transfer of plaintiff to CSC, MFH admitted, "Defendant is aware of no such document(sic)", that is, in effect, MFH never obtain

(i) plaintiff's signed written informed consent to transfer to CSC, (ii) certification of receiving facility-CSC showing available space and qualified personnel to treat plaintiff, agreement to accept transfer of plaintiff and to provide treatment; (iv) documentary evidence of transmission of plaintiff's medical record to CSC, (v) evidence of CSC actual acceptance and admission of plaintiff. Accordingly, MFH refused to provide documents relating to appropriate transfer of plaintiff to CSC.

44. Production Request #17 to 23, 26, and 27 regarding plaintiff's employment discrimination claim, MFH failed to produce documents relating to decision not to hire plaintiff for the jobs applied for.

45. MFHMA failed and refused to provide verified responses to plaintiff's Rule 33 interrogatories as evidenced by (Ex.61-70). The purported unverified answers and objections were signed by defendant's attorney, Karen A. Carroll (Carroll) in violation of Rule 33.

46. Carroll has been acting as the judge in this case by "ruling" that plaintiff exceeded the number of interrogatories. (Ex.67-70).

47. During the court hearing of 12/11/06, Carroll admitted answering and signing the interrogatories but the judge did nothing about it or sanction her

48. MFHWH failed to provide plaintiff with complete and full responses to Rule 34 production requests as evidence by (Ex.83-88). Also it provided plaintiff with evasive, incomplete or no responses to Rule 33 interrogatory requests as evidence by (Ex.89-96). Again, the purported unverified answers and objections were signed by defendant's attorney, Carroll in violation of Rule 33. The answers were not verified pursuant to Rule 33.

49. During the court hearing of 12/11/06, Carroll admitted answering and signing the interrogatories but the judge did nothing about it or sanctioned her

50. Defendant Grinnell MFHWH failed to provide plaintiff with responses to Rule 34 production requests as evidence by (Ex.108-117). He provided plaintiff with evasive, incomplete or no responses to Rule 33 interrogatory requests as evidenced by (Ex.118-126). Again, the purported unverified answers were signed by defendant's attorney, Carroll in violation of Rule 33. The answers were not verified pursuant to Rule 33. During the court hearing of 12/11/06, Carroll admitted answering and signing the interrogatories but the judge did nothing about it or sanctions her.

51. Defendant McCoy, Daleiden, Bronnert and Lobeck failed to provide plaintiff with complete and full responses to Rule 34 production requests as evidence by (Ex.127-133). This court and

Sixth Circuit have adopted a ruling that defendant employees' personnel files are discoverable yet defendants by their attorney refused to produce requested documents

52. Lobeck provided plaintiff with evasive, incomplete or no responses to Rule 33 interrogatory requests as evidenced by (Ex.134-143). Again, the purported unverified answers were signed by defendant's attorney, Carroll in violation of Rule 33. The answers were not verified pursuant to Rule 33. During the court hearing of 12/11/06, Carroll admitted answering and signing the interrogatories but the judge did nothing about it or sanctions her.

53. Defendant Berry failed to provide plaintiff with responses to Rule 34 production requests as evidenced by (Ex.164-169). He provided plaintiff with evasive, incomplete or no responses to Rule 33 interrogatory requests as evidenced by (Ex.170-183). Again, the purported answers were signed by defendant's attorney, Deborah R. Lydon (Lydon) in violation of Rule 33. The answers were not verified pursuant to Rule 33. During the court hearing of 12/11/06, Lydon admitted answering and signing the interrogatories but the judge did nothing about it or sanctions her.

54. Defendants via their counsels received numerous plaintiff's signed authorizations to release medical records and employment records from all specifically identified sources but defendants wanted more blanket authorizations to release information and materials from unidentified or unspecified sources as evidenced by (Ex. 184-185). Plaintiff in good faith requested defendants to specify the name of person, agency or facility from which they sought to obtain information but they refused to do that.

55. The magistrate's findings and conclusions and order are against the totality of circumstances and weight of evidence in the record.

56. Defendants are collusively playing "fast and loose" game with the court for exigency of their self-interest to the prejudice of plaintiff.

57. Plaintiff intends to rely solely upon a theory of liability that does not require the submission into evidence of any expert opinion to establish a prima facie case in this action pursuant to RC 2305.011 and because expert testimony is not required to prove elements of the theories of plaintiff's claims.

58. I was never admitted or treated at or by Crisis Stabilization Center, This I told defendants over and over again but they continued to request my authorization for release of medical record from CSC. Such request constitutes intentional harassment

59. A review of the transcript of deposition of plaintiff by defendants, exhibits attached to Doc.25 and 59, and 54) would show that defendants had engaged in duplicative and redundant requests

for documents and materials, that is, they repeatedly requested for documents and information already disclosed and delivered to them.

60. Defendants' refusal to submit and the court refusal to compel defendants to provide the Rule 33, 34 and 36 discovery responses substantially prejudiced plaintiff because plaintiff was hindered, prevented and impaired in preparing his case, adequately and timely opposing summary judgment motion and making his motion for summary judgment.

61. The actions and inactions of defendants deprived plaintiff of the right to have the benefits of discovery procedure perverted the integrity of the normal judicial process of adjudication perpetrated by judicial and legal officers of the court

62. The collusive actions and inactions of the defendants and the magistrate constitute misconduct and fraud upon the court within the purview of FRCP 60

63. Exhibits 194 through 198 are case-law establishing that summary judgment in favor of defendants are precluded by issues of informed consent.

Darlington Amadasu, M.D.
AFFIANT

SWORN to and subscribed in my presence

This 30th day of July, 2007

NOTARY PUBLIC

THELMA L. THOMAS
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES 09-25-11



MERCY Health Partners

☐ Mt. Airy
☐ Western Hills
☐ MediCenter

PA310112260 FC-H04/2
LEMPERT, HAMILTON H
EMERGENCY
DOB-01/01/49 51 Y
SEX-M MR700540530
OTHER

# ED RECORD

PATIENT'S NAME | AGE | WT: | ALLERGIES ☒ NONE KNOWN

CHIEF COMPLAINT: depression | DVA: | VISUAL ACUITY R ___ L ___

ARRIVED: ☐ AMB ☐ W/C ☐ SQUAD:

| TRIAGE TIME | TEMP | PULSE | RESP | BLOOD PRESSURE |
|---|---|---|---|---|
| 1750 | 98.5 | 70 | 16 | 148/90 |

♂ BP ___ P ___ ♀ BP ___ P ___
TETANUS: ☐ UTD ☐ <5 YRS ☐ >10 YRS. ☐ UNKNOWN
LMP.

TIME: 1900 SKIN: ☒ NATURAL ☒ WARM ☒ DRY ☐ PALE ☐ COLD ☐ DIAPHORETIC

LOC: ☒ AWAKE ☒ ORIENTED ☒ COOPERATIVE ☐ CONFUSED ☐ COMBATIVE ☐ UNRESPONSIVE ☐ ACTIVE

CNS & EXT: PERRLA Y N DEFICIETS: MOTOR Y N SENSORY Y N PULSES. Y N

LUNG SOUNDS: ☐ CLEAR ☐ RHONCHI ☐ RALES ☐ WHEEZES ☐ BILATERAL ☐ DECREASED ☐ R ☐ L ☐ LABORED

ABD: ☐ SOFT ☐ NON-TENDER ☐ TENDER ☐ DISTENDED ☐ N ☐ V ☐ D. B. S. + -

PAST MED HX: SMOKE ☐ ETOH ☐
clinical depression

CURRENT MEDS. SEE SHEET ☐

| | |
|---|---|
| Paxil | Not |
| Ambien | taking for |
| F 1994 | 2 mos |

Pt states last 3 mos, ↑ in depression. Stop taking medication. Did not want to take medication anymore. H/x of clinical depression. Biotaly/2000 Resting quietly awake alert. Lying in bed. Up ☐ ambulated 140/80 - 72 - 16. Aware Pt. await PERT — Knyn RN ADD'L NOTES ☐

IV ORDERS: ☐ LOCK ☐ IV D5W / LR / D5-1/2 NS / NS

MEDICATIONS | MEDICATIONS.

SIDERAILS ☐
CALL LIGHT ☐
SAT: TIME O2
% on
% on
% on
HHN
MONITOR ☐
O2 ___ ☐

☐ Old Records
☐ Old X-Ray
☐ EKG X
☐ CXR
☐ Port
☐ Abd. Series
☐ KUB
☐ C-Spine
☐ L-Spine
☐
☐
☐
☐

ORDERS | TIME ORDERED
☐ CBC
☐ CMP
☐ BMP
☐ ABG
☐ THROMBIC LABS
☐ CPK
☐ PT/PTT
☐ TPN-1
☐ T&S ☐ T&C
☐ AMYLASE
☐ UCG
☐ U/A
☐ GCNA
☐ DRG SCR
☐ CARDIAC W/U
☐ ABD. WU
☐ SEPTIC W/U
☐

TIME: 1922 M.D. ASSESSMENT ☐ DICTATED ☐ ADD'L NOTES

☐ OLD RECORD REVIEW ☐ OLD X-RAY REVIEW 51 YO

(D)

IMPRESSION: (1) MAJOR DEPRESSION
(2) PTSD

CULTURES
☐ BLOOD
☐ X 2
☐ URINE
☐ SPUTUM

DISCHARGE INSTRUCTIONS:

PATIENTS DISPOSITION: ☐ ADMITTED (RM ______) ☐ HOME ☐ AMA ☐ TRANSFERRED TO: How:

PATIENTS CONDITIONS ON DISPOSITION ☐ CRITICAL ☐ SERIOUS ☐ FAIR ☐ GOOD ☐ EXPIRED ☐ FUNERAL HOME

| COMMUNICATION WITH PHYSICIAN | TIME CALL PLACED | TIME CALL RETURNED | RESPONSE |
|---|---|---|---|
| PERT | 1935 cy | | DISC - |
| FMC. | 0025 | | |

ED PHYSICIAN [signature]

☐ Discharge instructions ☐ Verbalized Understanding | TIME OUT | CONSULTING PHYSICIAN

DISCH PER ☐ AMB ☐ W/C ☐ BLS ☐ ALS Medical Records-White ED Audit - Yellow (Dictation to Private Physician Insurance Billing, ED Physician Consultant) PR2013 Rev 7/99

20

Ex. 1

☐ Franciscan Hospital - Mt. A
☐ Franciscan Hospital - West

LEMPERT, HAMILTON H
EMERGENCY
DOB-01/01/49 51 Y
SEX-M
OTHER

Franciscan

# DOCTOR CERTIFICATION: PATIENT TRANSFER ORDER

Name of Patient ____ Name of Doctor ____ Date ____ Time ____

An appropriate medical screening examination has been provided to the patient to determine whether an emergency medical condition exists or whether the patient is in labor. ___ Yes ___ No

Diagnosis: depression

(Diagnosis or explanation for not conducting medical screening examination)

**SECTION 1: PATIENT CONDITION (Check one of the following):**

a. X The patient has been stabilized such that, within reasonable medical probability, no material deterioration of the patient's condition is likely to result from or occur during transfer.

b. ____ Patient's condition has not been stabilized.

c. ____ Patient is in labor. Please explain: ____

**Vital signs at time of transfer: BP** 140/80 **T** 98.0 **P** 76 **R** 16

**SECTION 2: RECEIVING FACILITY (Check all that apply and fill in below as appropriate):**

a. X The receiving facility has available space and has agreed to accept transfer.

1. Receiving Facility: MFMA
2. Report called to: MFMA
3. Report called by: Raja
4. Accepting doctor: Dr. Rai. Berry
5. Nursing Notes: Kim

Called to: ____ Nurse's signature ____

b. X The receiving facility has been provided with appropriate medical records of the examination and treatment of the patient.

1. Copy of entire chart sent in a sealed envelope.
2. Medical record prepared and sent by: Kmyn
3. Medical record given to: Tran Mobile Care
4. Faxed medical record will be sent when available.

Faxed: Time ____ Date ____

**SECTION 3: METHOD OF TRANSFER (Check and fill in below as appropriate):**

a. X The patient is being transferred by qualified personnel and transportation equipment, as required, including the use of necessary and medically appropriate life support measures.

b. ____ The patient or the legally responsible person acting on the patient's behalf requests and agrees to be transported by taxi, private automobile or other privately arranged transportation, without the assistance of medical personnel, per the consent privately arranged transportation, without the assistance of medical personnel or the doctor. The patient will be accompanied by: ____

**SECTION 4: REASON FOR TRANSFER (Check all that apply and fill in below as appropriate):**

a. ____ The patient or the legally responsible person acting on the patient's behalf agrees to the transfer for the following reasons and gives permission for the release of their medical record(s): X ____

Patient or Legally Responsible Person's Signature

b. ____ To a reasonable degree of medical probability, based upon the information available at this time, the medical benefits of the transfer and the provision of appropriate medical treatment at another medical facility outweigh the increased risks to the patient's medical condition from the transfer. **LIST BENEFITS AND RISKS:** NONE ANTICIPATED

c. ____ The patient's personal doctor (the doctor requested by the patient) refuses to come and see the patient at this facility at this time and, as a result, the patient, with the consent of patient or the person legally responsible acting on the patient's behalf, is being transferred in order to receive treatment from the doctor at another facility.

Name of doctor refusing to come and see the patient at this facility: ____

Reason for doctor's refusal to come and see the patient at this facility (if known): ____

Ex. 2

ECTION 5: REFUSAL OF TRANSFER (Check and fill in below or...

AHADASU, DARLINGTON O MER
PA310112280 FC-M04/24/00 - EMERGENCY
DOB-01/01/49 51 Y
SEX-M MR700540830
OTHER
LEMPERT, HAMILTON H

_____ Patient or legally responsible person acting on pa... ...on for refusal is:

1. _____ The patient's personal doctor (the doctor r... ...see the patient at facility at this time (see Section 4, above) a..., the patient or legally responsible person acting on the patient's behalf requests that the Emergency Room doctor or his or her designates provide treatment to the patient.

2. _____ The patient is unstable or in labor (see Section 1) and, as a result, the patient or the legally responsible person acting on the patient's behalf requests that the Emergency Room doctor or his or her designees provide treatment to the patient.

3. _____ For convenience or other personal reasons, the patient or the legally responsible person acting on the patient's behalf requests that the Emergency Room doctor or his or her designees provide treatment to the patient. Explain (if necessary).

4. _____ Other reason(s) for refusal: _____

(Space may be used to further explain 1, 2, or 3)

Person Refusing Transfer: _____
Relationship to Patient: _____
NA Transfer refused by receiving facility.
Facility refusing transfer: _____
Doctor refusing transfer: _____
Title: _____
Reason(s) for refusal: _____

ECTION 6: PATIENT (OR PATIENT REPRESENTATIVE) CERTIFICATION AND SIGNATURE

I certify that the nature of the patient's condition and medical stability have been fully explained to me, that the purpose and general nature of the proposed patient transfer have been fully explained to me, I understand the potential risks and consequences of transfer or of refusing a transfer, possibly including but not limited to serious injury or death, that I understand the available alternatives to transfer or to refusing a transfer. I further certify that this form, Patient Transfer Order, has been filled out completely, that I have had an opportunity to ask questions concerning these matters and that my questions have been answered to my satisfaction.

_____ Refusal of Transfer: I hereby refuse to consent, authorize or permit the patient to be transferred for the reasons set forth in this form, Patient Transfer Order.

X Consent to Transfer: I hereby consent, authorize and permit the patient to be transferred for the reasons set forth in this form, Patient Transfer Order.

certify that I am legally qualified to execute this patient's certification and signature.

X [signature]

Certification and signature of patient, spouse, parent (of minor patient), custodial parent (if applicable), closest relative, guardian or legal representative.

[signature]

Franciscan Witness Signature

ECTION 7: DOCTOR'S CERTIFICATION AND SIGNATURE

I hereby certify that I am licensed to practice medicine in the State of Ohio, and utilizing my best professional judgment, I have answered the above questions to the best of my ability based upon the information available to me at the time of the patient's examination.

[signature] Doctor's Certification and Signature

[signature] Witness Signature

Ex. 3

PROGRESS NOTES

Date

Admission Note

4/25/00 51 y o naturalized American citizen of Nigerian background. 's a Graduate Student of Environmental Health. Lives alone.

He went to Mercy Western Campus because "I was very depressed, not interested in anything. Can't sleep at night & be sleepy during the day. Even when I am hungry I don't eat & not [illegible] agitated, loss of energy, fatigue, body ache, loss of concentration, flashbacks & nightmares (flashback of suddenly termination from my program) (flashbacks of thrown to street - I was locked out of my house by my spouse) wife is in New York & has filed for divorce.

Intake note indicates Pt was think of taking overdose of prescription medication. Ambien & Paxil

PRIOR Psych Hosp :- 1997 Once in New York Hosp - F/U by outpatient clinic. Ambien & Paxil. "They try to put me on many medication that were not compatible with me" Paxil caused headache & palpitation

MSA Patient is lying in bed. Maintains limited Eye contact. Blunted affect. soft spoken

Cont'd / -

Ex. 4

MERCY
Health Partners

- [ ] Mt. Airy
- [ ] Western Hills
- [ ] Medi Center
- [ ] Surgery Center West

AMADASU, DARLINGTON O
PA710179329 FC-*04/25/00 612A-01 ADU
INPATIENT
BERRY, RAVI S
OTHER

# PHYSICIAN PROGRESS RECORD

Note progress of case, complications, consultations, changes in diagnosis, condition on discharge, instructions to patient

| Date | |
|---|---|
| 4/25/00 | coherent speech with normal rate & volume. Depressed mood "everybody" no delusional [illegible] no psychotic s/s oriented x 4. |
| | Cigarette [illegible] |
| | ETOH "no" |
| | Drug abuse "no" |
| | He comes across as a person who feels victimized for no fault of his own. Is not feeling suicidal at present |
| Diag | Major Depression, Recurrent by Hx |
| Plan | (1) Patient wants Paxil restarted |
| | (2) Psychotherapy |
| | (3) To consider transfer to Crisis Stab Center |
| | [signature] |

PROGRESS RECORD

NS3804 7/99

Ex. 5

PROGRESS NOTES

| Date | |
|---|---|
| 4/26/00 | Mr. Amadasu was sitting in his room reading newspaper. When I enquired how he was feeling he wouldn't answer and stated What did I have on the record already. I shared with him our perception of his behavior that he refuses to answer some of the questions we ask. He got angry and stated I was accusing him. He wouldn't discuss any other issues and asked the nurse for a paper to file grievance. His speech was coherent. |
| | RBB [illegible] |
| | Labs reviewed with patient |
| 4/27/00 | Mr. Amadasu reports improved appetite & sleep though sleep is still not satisfactory. He's mood is still depressed. He can't get his mind off the issue of termination from Grad work at UC. Says he was told on the phone about it & [illegible] it was a traumatic experience. We discussed the issue of working relationship between him & me. He felt we could continue to work together to help him deal with his problems. No [illegible] noted. |
| | RBB [illegible] |

Ex 6



☒ Mt. Airy
☐ Western Hills
☐ Medi Center
☐ Surgery Center West

AMADASU, DARLINGTON O
PA710179329 FC-*04/25/00 612A-01 ADU
INPATIENT
DOB-01/01/49 51 Y
SEX-M
BERRY, RAVI S
OTHER

PHYSICIAN
PROGRESS RECORD

Note progress of case, complications, consultations, changes in diagnosis, condition on discharge, instructions to patient.

| Date | |
|---|---|
| 4/25 | Reports he was crying last night and also had bad dreams i.e. climbing staircase & nobody support gives in. Interpreted this in light of "4.3" problems in marriage and at school. He is more spontaneous during our conversation. Improved eye contact. Decreased anxiety but still very frustrated. "[illegible] ... you trust a woman ..." Finds marital situation "very traumatic". His wife had been here illegally & he felt she changed after marriage and after he applied for her Green Card. Plan: Continue medication & psychotherapy. [signature] |
| 4/29/00 | Patient felt offended that staff took away ice cream he brought to the room last night. I explained to him the hospital rules & [illegible] to find a less restrictive environment but he felt too depressed to consider it & said he may be ready by Monday. [signature] |

PROGRESS RECORD

NS3804 7/99

Ex. 7

PROGRESS NOTES

| Date | |
|---|---|
| Cont'd 4/29/00 | Side Effects of [illegible]: No Nausea. [illegible] affect. Coherent speech. Not Suicidal. [signature] |
| 4/30/00 | I met with patient along with RN. Mr Anderson says he is sick and needs to be treated. Yet, he refuses to attend group, discharge planning, RET and Exercise & Community meeting. He feels he is not being treated with courtesy. I [illegible] observe psychotic thinking or paranoid thinking. I explained Biopsychosocial aspects of treatment to him. He was reluctant to allow us to meet with his Sister. [signature] |
| 5-1-00 | I discussed with patient his "self defeating" behavior. I have advised him I will be requesting patients rights advocate to meet with me. No Somatic Complaints. He c/o Insomnia. No Complaints of Nausea. Coherent speech. No psychosis. Not Suicidal. He is [illegible] a note to say |

Ex 8

MERCY Health Partners

☐ Mt. Airy
☐ Western Hills
☐ Medi Center
☐ Surgery Center West

AMADASU, DARLINGTON D
PA710179329 FC-1 04/25/00 512A-01 ADU
INPATIENT
DOB-01/01/49 51 Y
SEX-M 9R500420463
BERRY, RAVI B
OTHER

# PHYSICIAN PROGRESS RECORD

Note progress of case, complications, consultations, changes in diagnosis, condition on discharge, instructions to patient.

| Date | |
|---|---|
| Cont. | he can't travel to New York to attend court case. |
| 9-1-00 | I explained to him a decision will be made |
| | at a later date. I have given him a |
| | [illegible] |
| | will start [illegible] |
| | [signature] |

Ex. 9

MS3604 7/99



MERCY FRANCISCAN HEALTH SYSTEM

FORM NO NS3819 (REV 2/00)

## PHYSICIAN'S ORDER FORM

"I HEREBY AUTHORIZE THE PHARMACY, UNDER THE FORMULARY SYSTEM: TO DISPENSE A DIFFERENT BRAND OF DRUG OF IDENTICAL COMPOSITION AND COMPARABLE QUALITY, UNLESS THE BRAND NAME I HAVE PRESCRIBED IS CIRCLED ON THIS ORDER SHEET."

ALL ORDERS MUST INCLUDE DATE, TIME, & PHYSICIAN'S SIGNATURE

ALLERGIES / TYPE OF REACTION: Chloroquine

AMADASU, DARLINGTON O
PA710179329 FC-*04/25/00 S12A-01 ADU
INPATIENT
DOB-01/01/49 51 Y
SEX-M MR600420469
BERRY, RAVI B
OTHER

DATE & TIME: 4/25/00

✓- Atrovent inhaler ii puffs PRN QID
✓- Albuterol inhaler ii puffs PRN QID
✓- Flagyl 500mg PO BID 5 days
posted Medicatn [illegible] 4-25-00 1100

V.O. [illegible] | SIGNATURE [illegible]

(circled) [illegible] 4/26

Darlington Amadasu

DATE & TIME: 4/26 1015

Staff may review chart with pt.

V.O. Dr Berry / [illegible] RN

SIGNATURE [illegible signature]

(circled) [illegible] 4/27

Darlington Amadasu

DATE & TIME

FRANCISCAN HOSPITAL

SIGNATURE

Darlington Amadasu

Ex. 10

B-0000016

FRANCISCAN HEALTH SYSTEM OF CINCINNATI, INC.

FORM NO. NS3819 (Rev. 3/90)

# PHYSICIAN'S ORDER FORM

"I HEREBY AUTHORIZE THE PHARMACY, UNDER THE FORMULARY SYSTEM: TO DISPENSE A DIFFERENT BRAND OF DRUG OF IDENTICAL COMPOSITION AND COMPARABLE QUALITY, UNLESS THE BRAND NAME I HAVE PRESCRIBED IS CIRCLED ON THIS ORDER SHEET."

ALL ORDERS MUST INCLUDE DATE, TIME, & PHYSICIAN'S SIGNATURE

ALLERGIES / TYPE OF REACTION

AMADASU, DARLINGTON O
PA710179329 FC-*04/25/00 612A-01 ADU
INPATIENT
DOB-01/01/49 51 Y
SEX-M MR600420469
BERRY, RAVI B
OTHER

DATE & TIME 4/29/00

may have ground privileges with staff

4/29/00 1130

4/30 [illegible]

SIGNATURE [signature]

DATE & TIME

AMADASU, DARLINGTON O
PA710179329 FC-*04/25/00 612A-01 ADU
INPATIENT
DOB-01/01/49 51 Y
SEX-M MR600420469
BERRY, RAVI B
OTHER

4/29 1130

DC

VO Dr Berry

4/29 1130

SIGNATURE [signature]

DATE & TIME 4/30/00

AMADASU, DARLINGTON O
PA710179329 FC-*04/25/00 612A-01 ADU
INPATIENT
DOB-01/01/49 51 Y
SEX-M MR600420469
BERRY, RAVI B
OTHER

Request Social Services to meet with patients sister to assess community support system

SIGNATURE [signature]

Ex. 11

B 0000015



MERCY FRANCISCAN HEALTH SYST

FORM NO. NS3819 (REV 2/00)

## PHYSICIAN'S ORDER FORM

"I HEREBY AUTHORIZE THE PHARMACY, UNDER THE FORMULARY SYSTEM: TO DISPENSE A DIFFERENT BRAND OF DRUG OF IDENTICAL COMPOSITION AND COMPARABLE QUALITY. UNLESS THE BRAND NAME I HAVE PRESCRIBED IS CIRCLED ON THIS ORDER SHEET."

ALL ORDERS MUST INCLUDE DATE, TIME, & PHYSICIAN'S SIGNATURE

ALLERGIES / TYPE OF REACTION

DATE & TIME 5-1-00

- Restoril 30 mg po QHS

ENTERED

- Patient is agreeable to [illegible]

[illegible] Stat now

AMADASU, DARLINGTON O
PA710179329 FC-*04/25/00 612A-01 ADU
INPATIENT
DOB-01/01/49 51 Y
SEX M MR600420463
BERRY, RAVI B
OTHER

SIGNATURE [signature]

DATE & TIME

AMADASU, DARLINGTON O
PA710179329 FC-*04/25/00 612A-01 ADU
INPATIENT
DOB-01/01/49 51 Y
SEX-M MR600420463
BERRY, RAVI B
OTHER

SIGNATURE

DATE & TIME

AMADASU, DARLINGTON O
PA710179329 FC-*04/25/00 612A-01 ADU
INPATIENT
DOB-01/01/49 51 Y
SEX-M MR600420463
OTHER

SIGNATURE

Ex. 12

B-0000014

## DISPOSITION PLANNING REQUIREMENTS

| | | Interventions/Recommendations |
|---|---|---|
| Housing/Placement Changes | YES/NO (NO circled) | return home on Crisis Stabilization |
| Social Support/Community Resource Referrals | YES/NO (NO circled) | |
| Outpatient Therapy/Aftercare | YES/NO (YES circled) | refer to OP therapy & med f/u |
| Legal/Other | YES/NO (NO circled) | |
| Family Treatment Focus | YES/NO (NO circled) | |

## PATIENT PARTICIPATION IN TREATMENT PLANNING (check as appropriate)

Contributed to Goals and Plans _______

Aware of Plan Content _______

Refused to Participate _______

Unable to Participate _______

Refused to Sign Plan _______

Patient comments: (optional)

Patient signature and date

Parent or Guardian Signature and date

If Guardian, relation to patient

Staff Signature

Treatment Team Members and Date:

[signatures] LPCC

Ex 13

AMADASU, DARLINGTON O
PA710179329 FC-*04/25/00 612A-01 ADU
INPATIENT
DOB-01/01/49 51 Y
SEX-M MR600420469

3176M 10/99

MERCY FRANCISCAN BEHAVIORAL HEALTH SERVICES
MT. AIRY CAMPUS

DISCHARGE SUMMARY

Name: AMADASU, DARLINGTON O. MR#: 600420469

PA# 00710179329

**ADMITTED:** 04/25/2000 **DISCHARGED:** 05/01/2000

**HISTORY:** The patient is a 51-year-old naturalized American Citizen of Nigerian background. He is a graduate student at Environmental Health. He lives alone.

The patient states that he went to Franciscan Behavioral Health Services because, "I was very depressed, not interested in anything, cannot sleep at night, and I am sleepy during the day. Even when I am hungry, I do not eat." He reported having lost about 45 pounds of weight over 45 weeks. He reported that he gets agitated easily, has loss of energy, fatigue, complains of body aches, loss of concentration, flashbacks and nightmares of termination from his program, and flashbacks of being thrown into the street by his wife, who locked the house on him. His wife is in New York and has filed for divorce.

The intake data indicated that the patient was thinking of taking an overdose of his prescription medications, including Ambien and Paxil.

**PAST PSYCHIATRIC HISTORY:** Noteworthy for one admission in a New York Hospital in 1997 followed by outpatient followup. The patient recalled a trial on a number of medications which he found incompatible. He stated that Paxil gave him a headache and palpitations.

**MENTAL STATUS EXAMINATION:** Noteworthy in that the patient came across as a person who felt victimized for no fault of his own. His affect was blunted. He was soft-spoken with coherent speech of normal rate and volume. He reported a depressed mood without any daily mood variations. Orientation was normal. There was no evidence of psychosis. He reported no alcohol or drug abuse.

It was difficult to establish a positive working relationship with the patient because of some of the cultural issues and his perception that we were not respecting him properly. For example, when I inquired of him as to why he was not answering some of the questions asked by the staff, the patient became very angry and stated I was accusing him. He stated he would not discuss any other issues and asked for the nurse to file a paper for a grievance. On a subsequent visit, the working relationship issue was discussed and the patient felt that he could continue to work with me and the rest of the staff to address his problems. He stated that he could not get his mind off the issue of being terminated from his graduate program at the University of Cincinnati. He reported that he was told of this termination on the phone and found this a very traumatic experience. He was also at a loss as to why his wife would treat him the way she did.

Ex. 14

DISCHARGE SUMMARY

During my visit on 04/28/00, I found him more spontaneous with improved eye contact. His anger was less, but he was still very frustrated. He was very angry with his wife.

The patient had difficulties going along with the unit's rules. On 04/30/00, I met with him along with the unit nurse and acknowledged that he needed to be treated and yet he refuses to attend groups and participate actively in his milieu. The patient reported that he was withdrawing to his room because he was not being treated with courtesy. No paranoid thinking or psychotic behavior was noted. In our attempt to find a community support system, we approached him to get permission to talk to his sister, but he declined. His *Help Rejecting* behavior was addressed directly and the patient was given the option to meet with the patient's rights advocate. He was also given the option of transfer to the Crisis Stabilization for further treatment, which he accepted somewhat reluctantly.

Medications used during this stay included Paxil 20 mg p.o. q.h.s., Atrovent inhaler p.r.n., Albuterol inhaler p.r.n., and Flagyl 500 mg b.i.d. for five days. Restoril 30 mg p.o. q.h.s. was used for insomnia.

LABORATORY DATA: Chemistry profile was essentially within normal limits. Urine toxic screen for drug abuse was negative.

DISCHARGE DIAGNOSIS:
1. Major depression, recurrent, by history.

DISPOSITION: Transferred to Crisis Stabilization.

RAVI B. BERRY, M.D.

RBB/kj
D: 07/24/2000
T: 07/31/2000 3:41 P
cc RAVI B. BERRY, M.D.

Ex. 15

Mercy Franciscan Hospital

Mercy Franciscan Health System of the Ohio Valley, Inc.
Mercy Franciscan Behavioral Health Services
*Member - Franciscan Sisters of the Poor Health System, Inc.*

AMADASU, DARLINGTON O
PA710179329 FC-*04/25/00 612A-01 ADU
INPATIENT
DOB-01/01/49 51 Y
SEX-M MR600420469
BERRY, RAVI B
OTHER

# DISCHARGE & CONTINUING CARE PLAN

Discharge needs: Discharge destination/accompanied by: Crisis Stabilization / Taxi
~~Home~~

What are the patient's plans for aftercare follow-up (with whom, when, where)? Referral made to Mental Health Access Point for case management. They will assist at crisis emergency # 384-8887 Stabilizal

Based on the above information, will the patient/significant other(s) be able to meet the patient's Continuing Care Needs?: If patient follows up with aftercare

Social Worker's Signature: [signature] LSCC
Date/Time: 5/1/00

Psychological: Describe the patient's status & gains made: Has refused to participate in group activities. Has been seclusive to his Room. Denies feeling suicidal or homicidal. Acknowledges need for treatment → yet refuses treatment program.

NB (1) I WAS ILLTREATED, PARTICIPATED IN ALL, NEVER REFUSED TREATMENT (DISAGREED WITH ALL THE ASSERTION.)

(2) The Hospital & Staff made me sicker than when I came in

Physical: Describe the patient's status & gains made: Vital signs has been stable. Needs to followup up with his medical physican regarding all of medical concerns.

List discharge materials given to the patient (belongings, educational materials, etc.): 2 prescription, all belongings

Medication instructions: Refer to the Patient Discharge Instruction

Form given to patient/guardian __________ yes ________ not applicable

RN Signature: [signature] RN

Patient/Guardian Signature: X [signature]

Date/Time: 5-1-00 1500

Ex. 16

Original in Chart - WHITE Copy to patient/guardian - YELLOW Copy to Utilization - PINK

2579M (Rev. 4/99)

[illegible] have specialty training and experience in treating mental health issues that develop in late life. Services are generally provided in-home with physician visits also included. Evaluation and treatment planning, counseling, medication management, advocacy and referral are typical client services. Staff are available for consultative and education requests from other professional or the general public. The GOP continues to provide the psychiatric screening for prospective nursing facility residents in Hamilton County in conjunction with the Council on Aging and the Ohio Department of Mental Health.

## PARTIAL HOSPITALIZATION (ADULT DAYTREATMENT) and CRISIS STABILIZATION CENTER

[illegible]'s Partial Hospitalization Program is a psycho-[illegible] [illegible] group [illegible] medication [illegible] recreational [illegible] therapy and community [illegible]. The goal of the program is to pre-[illegible] hospitalization [illegible] their ability to [illegible] community [illegible] living skills.

[illegible] Crisis Stabilization Program provides treatment [illegible] structured living arrangement [illegible] individuals experiencing severe stress in their current environment. The program serves as an alternative to hospitalization [illegible] individuals exhibiting [illegible] behavior and [illegible]. [illegible] treated at the center are engaged in a schedule of treatment activities to assist them in making a smooth transition back into the community.

[illegible] Management [illegible] sulting division of [illegible] human resource dev[illegible] ing, team building and [illegible]

## RESIDENT[illegible]

There are approximat[illegible] and group facilities in [illegible] tracted and/or affiliat[illegible] provides personal care [illegible] been diagnosed with a [illegible] nosis such as substance [illegible] tardation (MI/MR). [illegible] promote and motivate [illegible] living. The Home Ad[illegible] Program (H.E.L.P.) an[illegible] two specialized program[illegible] that are designed to mee[illegible]

## PREVENTIO[illegible]

The primary goal of [illegible] to reduce the incide[illegible] through the promotion [illegible] ment, prevention, inte[illegible] training. Our Preven[illegible] provide instruction [illegible] competence of the [illegible] intervention programs [illegible] Challenging [illegible] for mental services [illegible] and facilitated by [illegible] & Education team.

Ex. 17

TO: The Manager of Community Behavioral Services
Or FBHS Administrator-On-Call
C/O Mercy Franciscan Hosp. Mt Airy. OH

From Darlington Amadasu.

Since I became an inpatient here, I have been subjected to series of abuses, denying my rights and I have also observed grossly poor Medical management, poor Nursing Services, poor food services; I was denied my participation in my own treatment plan, the Medical and Nursing staff have been imposing on me their discretions over my rights; I was being starved, denied choice of meals,

Dr Berry has been disrespectfully, judgemental about what I confidentially disclosed to him he failed to perform physicals on me.

Two nurses one white and one black who refused to disclosed their names came to assault and profusely abused me in my room without provocation.

Nurses Dispensing medications failed to identify the names and dosages of the medications they were giving me. This caused me intense anxiety and apprehension.

The "Nurse-practitioner" failed to perform physicals on me. This is but a partial Complaint.

Amadasu.

Ex. 18

PROVIDENCE HOSPITAL, INC.
Cincinnati, Ohio

# PATIENT REPRESENTATIVE WORK SHEET

Date Open: 4/26/00

Date Closed: 4/27/00

Patient's Name: Darlington Amadasu

Date of Service: 4/26/00 Rm #: 612-1

Patient's Physician: Dr Berry

Telephone:

Referred By: Cathy DeZarn RD

Other:

| SITUATION: | ACTION: |
| --- | --- |
| Pt c/o the following: | |
| A. Nurse practitioner "Julie" came into pt's room & introduced self as "family practitioner" and indicated to pt that she was the doctor. Pt felt she (1) misrepresented self (2) did not ask him his history or complete physical - only listened to chest at thompadon chest | Met c Julie to discuss her approach and pts misunderstanding [illegible] Julie was receptive |
| B. Dr Berry - felt approach was not courteous when pt asked doctor to review dx & plan, dr. reportedly said he did not have time. Stated Dr Berry did not complete physical | Cathy DeZarn to review chart c pt this afternoon |
| C. Social worker (Tim) - Tim came into room began asking questions. Pt asked if he had read his chart as questions had already been asked. SW said "no". SW reportedly left room & said he'd be back but did not return. | Tim - See back |

Appears that pt has experienced "snowballing" of issues - that one perceived negative experience has created overall negative opinion of care.

Route To: Kathy Wolfe for file

FX. 19

Conducted by Ann Thornton-Ross

Dr Berry: met ō Dr Berry to discuss pts concerns as well as staff concerns. Dr Berry receptive

Social work: Tim: Had been 1st to see patient yesterday. Spent 45 minutes ē him. Pt was not responsive to questions. Tim said he explained to patient that we want to help but we need to understand what problems are — pt not responsive. Tim talked of frustration ē Dr Berry re: his directing team to decide what to do ē pt. Said in "vague" cases this is often what he does rather than directing care himself. Said Dr Berry ~~also~~ sent message thru Tamara today for Tim to see if pt would go to Crisis Stabilization vs. talking ē pt about this himself.

Ex. 20

# Franciscan

Franciscan Health System of the Ohio Valley, Inc.
Member — Franciscan Sisters of the Poor Health System, Inc

## AUTHORIZATION FOR RELEASE OF MEDICAL INFORMATION

I hereby grant my permission for release of medical information between the following parties, with no limitations, including any information concerning treatment for psychiatric illness, alcohol and drug abuse, HIV test results, or diagnosis of AIDS or AIDS related condition:

FROM: MERCY FRANCISCAN HOSPITAL
MT. AIRY
CINTI, OH

TO: DARLINGTON AMADASU
2680 WENDEE DRIVE #2303
CINCINNATI, OH 45238

Information Requested

(X) Final Diagnosis
(X) History/Physical
(X) Discharge Summary
( ) Operative Report(s)
( ) Pathology Report(s)
( ) Consultations
(X) Laboratory Reports
( ) X-Ray Reports
(X) Progress Notes
(X) Physician Orders
( ) EKG Interpretation
(X) Copies of Entire Record
(X) Other - Please specify: ALL NURSES NOTES PATIENT COMPLAINTS

Reason for Information Request: For further medical treatment.

DARLINGTON AMADASU
Patient's Name

01/01/49
Date of Birth

(513) 662-7547.
Phone Number

Address 2680 WENDEE DRIVE, #2303
CINCINNATI, OH 45238

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
Social Security Number

Date of Hospitalization (please specify whether inpatient, clinic, Emergency Room, etc.)

This consent expires in 60 days from the date signed or sooner by my choice, in which case it will expire on _________. This consent is subject to revocation at any time prior to the expiration date, except to the extent action has been taken prior to revocation. This information can be released in the form of written, verbal, electronic, photocopy, microfiche or facsimile

May 01, 2000
Date

[signature]
Signature of Patient ~~or Legal Guardian~~

Witness

If person other than the patient is authorizing the release of information, please complete the following information:

Reason patient unable to sign__________
Relationship to patient__________

** Please note that time is required for copy preparation. There is a charge for copies requested for purposes other than further medical treatment.

ANY REDISCLOSURE OF MEDICAL INFORMATION BY THE RECIPIENT IS PROHIBITED

Ex. 21

MERCY
Health Partners

URGENT!

## AUTHORIZATION FOR RELEASE OF MEDICAL INFORMATION

I hereby grant my permission for release of medical information between the following parties, with no limitations, including any information concerning treatment for psychiatric illness, alcohol and drug abuse, HIV test results or diagnosis of AIDS or AIDS related condition.

FROM: Mercy Franciscan Hosp. Western Hills. CINTI OH

TO: Darlington Amadasu, MD, MPH 2680 Wendee Dr. #2303 Cinti, OH 45238

**Information Requested** ENTIRE MEDICAL RECORD

- [x] Final Diagnosis
- [x] History/Physical
- [x] Discharge Summary
- [ ] Operative Report(s)
- [ ] Pathology Report(s)
- [x] Consultations
- [x] Laboratory Reports
- [x] X-Ray Reports
- [x] Progress Notes
- [x] Physician Orders
- [ ] EKG Interpretation
- [x] Copies of Entire Record
- [ ] Other – Please Specify

Reason for Information Request: Review and Continue Care with a physician.

Patient's Name: DARLINGTON AMADASU

Date of Birth: [redacted]

Address: 2680 WENDEE DRIVE #2303 CINCINNATI, OH 45238

Phone Number: (513) 662-7542

Social Security Number

Date of Hospitalization (please specify whether inpatient, clinic, Emergency Room, etc.)

This consent expires in 60 days from the date signed or sooner by my choice, in which case it will expire on ________. This consent is subject to revocation at any time prior to the expiration date, except to the extent action has been taken prior to revocation. This information can be released in the form of written, berbal, electronic, photocopy, microfiche or facsimile.

Date: May 03, 2000

Signature of Patient or ~~Legal Guardian~~: [signature]

Witness

If person other than the patient is authorizing the release of information, please complete the following information:

Reason patient unable to sign ________

Relationship to patient ________

**Please note that time is required for preparation. There is a charge for copies requested for purposes other than medical treatment.

**ANY REDISCLOSURE OF MEDICAL INFORMATION BY THE RECIPIENT IS PROHIBITED.**

FORM #4137K 9/00

EX. 22

MERCY Health Partners "A REMINDER"

## AUTHORIZATION FOR RELEASE OF MEDICAL INFORMATION

I hereby grant my permission for release of medical information between the following parties, with no limitations, including any information concerning treatment for psychiatric illness, alcohol and drug abuse, HIV test results or diagnosis of AIDS or AIDS related condition.

FROM: MERCY FRANCISCAN HOSP WESTERN HILL DIVISION CINCINNATI, OH.

TO: DARLINGTON AMADASU

**Information Requested**

- ☐ Final Diagnosis
- ☐ History/Physical
- ☐ Discharge Summary
- ☐ Operative Report(s)
- ☐ Pathology Report(s)
- ☐ Consultations
- ☐ Laboratory Reports
- ☐ X-Ray Reports
- ☐ Progress Notes
- ☐ Physician Orders
- ☐ EKG Interpretation
- ☒ Copies of Entire Record
- ☐ Other – Please Specify

Reason for Information Request: REVIEW & CONTINUE CARE WITH A PHYSCCIAN.

Date of Birth: [redacted]

Patient's Name: Darlington Amadasu.

Phone Number: (513) 662-7542.

Address: 2650 Wendee Drive; #2303 Cinti, OH 45238

Social Security Number

Date of Hospitalization (please specify whether inpatient, clinic, Emergency Room, etc.)

This consent expires in 60 days from the date signed or sooner by my choice, in which case it will expire on ________. This consent is subject to revocation at any time prior to the expiration date, except to the extent action has been taken prior to revocation. This information can be released in the form of written, berbal, electronic, photocopy, microfiche or facsimile.

Date: 08/07/2000

Signature of Patient or Legal Guardian: [signature]

Witness

If person other than the patient is authorizing the release of information, please complete the following information:

Reason patient unable to sign ________

Relationship to patient ________

**Please note that time is required for preparation. There is a charge for copies requested for purposes other than medical treatment.

**ANY REDISCLOSURE OF MEDICAL INFORMATION BY THE RECIPIENT IS PROHIBITED.**

FORM P-137K 9/00

EX. 23



Franciscan Health System of the Ohio Valley, Inc.
Member — Franciscan Sisters of the Poor Health System, Inc.

# AUTHORIZATION FOR RELEASE OF MEDICAL INFORMATION

I hereby grant my permission for release of medical information between the following parties, with no limitations, including any information concerning treatment for psychiatric illness, alcohol and drug abuse, HIV test results, or diagnosis of AIDS or AIDS related condition:

FROM: ~~DARLINGTON AMADASU,~~ ~~MTHMA~~

TO: DARLINGTON AMADASU
2680 WENDEE DRIVE #2303.
CINTI, OH 45238.

Information Requested

- (X) Final Diagnosis
- (X) History/Physical
- (X) Discharge Summary
- ( ) Operative Report(s)
- ( ) Pathology Report(s)
- ( ) Consultations
- (X) Laboratory Reports
- ( ) X-Ray Reports
- (X) Progress Notes
- (X) Physician Orders
- ( ) EKG Interpretation
- (X) Copies of Entire Record
- ( ) Other - Please specify: ______

Reason for Information Request: X FOR MY PHYSICIAN.

X DARLINGTON AMADASU
**Patient's Name**

X [redacted]
**Date of Birth**

**Address** 2680 WENDEE DRIVE; #2303.
CINTI, OH 45238

[redacted]
**Phone Number**

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
**Social Security Number**

**Date of Hospitalization (please specify whether inpatient, clinic, Emergency Room, etc.)**

This consent expires in 60 days from the date signed or sooner by my choice, in which case it will expire on ________. This consent is subject to revocation at any time prior to the expiration date, except to the extent action has been taken prior to revocation. This information can be released in the form of written, verbal, electronic, photocopy, microfiche or facsimile.

X 8/21/00
Date

X [signature]
Signature of Patient or Legal Guardian

______
Witness

If person other than the patient is authorizing the release of information, please complete the following information:

Reason patient unable to sign ______
Relationship to patient ______

** Please note that time is required for copy preparation. There is a charge for copies requested for purposes other than further medical treatment.

ANY REDISCLOSURE OF MEDICAL INFORMATION BY THE RECIPIENT IS PROHIBITED.

Ex. 24

MERCY
Health Partners

## AUTHORIZATION FOR RELEASE OF MEDICAL INFORMATION

I hereby grant my permission for release of medical information between the following parties, with no limitations, including any information concerning treatment for psychiatric illness, alcohol and drug abuse, HIV test results or diagnosis of AIDS or AIDS related condition.

FROM: MERCY FRANCISCAN HOSP

TO: DARLINGTON AMADASU
2680 WENDEE DRIVE #230
CINCINNATI OH 45238

### Information Requested

- ☑ Final Diagnosis
- ☑ History/Physical
- ☑ Discharge Summary
- ☐ Operative Report(s)
- ☐ Pathology Report(s)
- ☐ Consultations
- ☐ Laboratory Reports
- ☐ X-Ray Reports
- ☐ Progress Notes
- ☐ Physician Orders
- ☐ EKG Interpretation
- ☒ Copies of Entire Record
- ☐ Other – Please Specify

Reason for Information Request: Pt. review + record a continue care with a physician.

Patient's Name: DARLINGTON AMADASU

Date of Birth: [redacted]

Address: 2680 WENDEE DRIVE #2303
CINTI, OH 45238

Phone Number:

Social Security Number:

Date of Hospitalization (please specify whether inpatient, clinic, Emergency Room, etc.)

This consent expires in 60 days from the date signed or sooner by my choice, in which case it will expire on ________. This consent is subject to revocation at any time prior to the expiration date, except to the extent action has been taken prior to revocation. This information can be released in the form of written, berbal, electronic, photocopy, microfiche or facsimile.

Date: 11/28/00

Signature of Patient ~~or Legal Guardian~~: [signature]

Witness: ________

If person other than the patient is authorizing the release of information, please complete the following information:

Reason patient unable to sign ________

Relationship to patient ________

**Please note that time is required for preparation. There is a charge for copies requested for purposes other than medical treatment.

Ex. 25

ANY REDISCLOSURE OF MEDICAL INFORMATION BY THE RECIPIENT IS PROHIBITED.

FORM #4137K 9/00

[illegible]
Cincinnati, OH [illegible]
October [illegible]

[illegible]
[illegible] Avenue
Cincinnati, OH [illegible]

Dear Steven,

[illegible] of your hospital sometime in May 200[illegible]. Upon my being discharged I formally requested [illegible] of my complete entire medical record in your security and custody by filling and signing a blank [illegible]. After your hospital failed to send me the requested copies I continually made phone calls remind[illegible] [illegible] medical record personnel, including but not limited to Diana, Cindy to send my medical record. They [illegible] and failed to send them. They display gross lack of courtesy and respect on the phone, put me on the [illegible] for indefinite period, they bang the phone on my ears, and they screened my calls by what they [illegible] "heavy African Accent" and will not answer my calls. They railroaded me.

They gave various reasons, some conflicting, why they could not send me my record, including but not limited to: (1) your policy forbids giving medical records to patient even when the patient authorize the [illegible] signed written form, (2) Dr Berry sent your hospital a written memo denying the release of my medical record to me, (3) changing the story, they said Dr Berry orally directed your hospital not to [illegible] the record to me, (4) Patie[illegible] right to personally request for their medical records.

[illegible] efforts to communicate with the Director of your medical record dept were frustrated by the [illegible] especially by Diana, and Cindy in the dept. They [illegible] the name and telephone number of the medical record director and the hospital director [illegible] to disclose the [illegible] [illegible] pager and mailing address of Dr Berry in order for me to verify their allegation.

[illegible] mail [illegible] copy of Dr Berry's [illegible] denying the release of [illegible] medical record to me and or a letter confirming [illegible] Dr Berry denying me my record. [illegible] I have requested in order to confirm their stories and to obtain reason from Dr Berry why he [illegible] my record. In August 20[illegible] your hospital told me that They could find my May authorization form and [illegible] invited me to come and make another authorization, which I did on August 2[illegible] 2000. [illegible] refused to send my record to me. They continue railroading, evading and ridiculing me. I wrote Dr Berry a letter via the hospital address [illegible] to respond to my letter [illegible] messages I left for him.

Sincerely

[illegible]

Ex. 26

BY FAX (513) 853-5910

2680 Wendee Drive; #2303
Cincinnati, OH 45238
October 16, 2000

Steven Grinnell
President
Mercy Franciscan Hospital – Mt Airy
2446 Kipling Avenue
Cincinnati, OH 45239

Dear Steven:

I was an inpatient at your hospital in May 2000. Upon being discharged, I formally by filling and signing a blank form requested copies of my complete entire medical record in your custody and security.

Inspite of my consistent and persistent continual phone reminders your hospital refused, neglected and failed to release my medical record. Instead, your hospital continually made unsubstantiated, baseless and conflicting excuses for not releasing the record. In August 2000 your medical record officials told me that they had lost my May request form and asked me to come to fill and sign another authorization, which I did on August 21, 2000 but your hospital continues to fail and refuse to send the record, instead continues to railroad me.
On or about October 4, 2000 your hospital invited me to come and pick up my record on October 6, 2000. On that day 10/6/2000 I quietly and peacefully presented myself at the medical record dept and upon my request, the June Bronhert, the Med. Record Director, appeared. Politely and friendly, I told her I came to pick up my record as per the invitation. Next she went to the computer, called in about three hefty security guard to whom she disclosed my medical records and health conditions then she told me that Dr Berry had instructed the hospital in writing and orally not to release my record. Upon my requesting copies of Dr Berry's directives, she changed the story that the directives were oral. At this point I requested to see her immediate boss whom she denied existed, then I requested to see the hospital administrator/president. She accompanied me to your office where you directed her to give me in writing Dr Berry's oral directives to deny me my records. Upon arriving at the med. record dept. she asked me to sit and I sat reading while she wrote the letter. Soon after about two policemen entered and your hospital disclosed my medical records and health conditions to them and told them that I was an impersonator and trespasser. The police also called me impersonator and trespasser as well as intimidated me with threat of arrest and prosecution.

At the moment of this letter you have neglected, refused and failed to release my medical record.
Advise me in writing reasons and or explanations why you have refused, neglected and failed, and continue to refuse, neglect and fail to release my record to me.

I also would like to know why you and your henchpersons subjected me to the abuses, defamation, humiliation, intimidation, ordeals, distresses, etc that I did not and do not deserve and provoke.

Let me know in writing when you want to send certified and notarized copies of my medical record to me.

Sincerely,

[signature]

Darlington Amadasu

Ex. 27



MERCY
Health Partners

**Mercy Franciscan Hospital – Mt. Airy**
2446 Kipling Avenue
Cincinnati, Ohio 45239

513 • 853 • 5000

October 17, 2000

Darlington Amadasu
2680 Wendee Drive #2303
Cincinnati, Ohio 45238

Dear Mr. Amadasu:

Please accept my sincere apology for any inconvenience or frustration that you may have felt when requesting a copy of your medical records from your May 2000 admission.

Our staff was merely following your physician's orders and the legal statute that governs the release of medical records. As you know, our Patient Representative contacted Dr. Berry and did ultimately obtain his verbal approval to release your records. For your convenience, the records you requested are enclosed herein.

Again, I apologize for any inconvenience you may have experienced.

Sincerely,

Steven Grinnell
President

\jh

Ex. 28



MERCY
Health Partners

December 11, 2000

Mr. Darlington Amadasu
2680 Wendee Dr
Cincinnati, OH 45238

Re: Request

Dear Mr. Amadasu,

Kyle Rife, patient representative, forwarded your request for information to me. In response, the name of the patient advocate who met with you on April 26, 2000, was Ann Hoffman-Ruffner.

Each of the issues that you raised was addressed by Ms. Hoffman-Ruffner to the staff. In addition, she indicated that you completed a review of your chart as requested. The written documentation of your complaint is part of our internal quality review process and, therefore, not part of the medical record.

Each concern raised is an opportunity to evaluate the quality of the services provided. Your input is appreciated.

Sincerely,

Colleen Chamberlain

Colleen Chamberlain
Regional Director of Behavioral Health

CC/emd
CORR:

Ex. 29

**BY MAIL/FAX**

2680 Wendee Drive; #2303
Cincinnati, OH 45238

December 18, 2000

Ravi B. Berry, MD
6200 Colerain Avenue. White Oat
Cincinnati. OH 45239

Dear Dr Berry:

I was an in patient at Mercy Franciscan Hospital – Mt Airy Behavioral Health Services and you served as the attending and or the treating physician from April 25 through May 01, 2000.

At the time of discharge against my will on or about May 1st, 2000 and subsequently, on or about August 21, 2000 again I submitted my duly and completely executed application for my entire and complete medical records. The hospital refused, neglected or failed to deliver my medical records to me because according to the hospital, its employees, servants and agents, you Dr Berry continually by oral/telephone and written communications directed and instructed that I had no right to have my medical records, they should not give me my medical records and your address and telephone number should not be given to me.

Please advise me in writing to admit and or refute partially or wholly the reasons that the hospital gave for not giving me my medical records. If you admit the said reasons in part or in whole please state your objective reasons for denying me my medical records. I wrote you about three letters through the hospital address but you failed to reply to them. Why did you refuse or fail to reply to my letters?

However, following my Herculean ordeals, on or about October 30, 2000 my incomplete medical record was mailed to me. Upon review of the said medical records, I discovered that the records was incomplete, have many omissions, misstatements, documentation of what were not done for or said to me, mischaracterization or false statements of facts, incomplete diagnosis, to say but a few. The Mercy Hospital, Westernhill Emergency Room and admission medical records of 4/24/00 were also incorrect and incomplete.

4/26/00 during a review of my chart with the attending nurse, I discovered that my patient complaints, history and diagnosis were not completely documented and paradoxically there was documentation of procedures that were never performed. Your admission note of 4/25/00 was incomplete and the House Doctor/FP Assistant documented procedures that were not done. Your physician progress notes, physician records and physician discharge summary are incomplete, incorrect and or distorted. Also my then **"current stressors"** that prompted my voluntary admission were grossly incompletely recorded and or omitted by you and other personnel. I wrote these findings and submitted them with my grievances to the attending nurse for transmission to you and the hospital.

On or about 4/27/00 during a meeting attended by you, the patient advocate and me I complained of all of the above and other abuses and inappropriate practices I was subjected. Your and the patient advocate promises to correct the defects in my medical records were not fulfilled. You recorded the untrue ice cream story the nurse made up but you covered up my complaint about nurses abusing and starving me and not knowing the names and doses of the medications they were giving me.

I am writing you this letter to request you in particular and the hospital in general to set a date for us to meet for the purpose of correcting and completing my medical records, and for you to state in writing your position on the non release and the belated release of my medical record.

Yours sincerely,

Dr Darlington Amadasu, MD. MPH

CC: Presidents, Mercy Hospitals, Mt Airy & Westernhills Campuses.
Colleen Chamberlain
Your letter 12/11/2000 refers

Ex. 30


MERCY
Health Partners

January 4, 2001

Mr. Darlington Amadasu
2680 Wendee Dr.
Cincinnati, OH 45238

Dear Mr. Amadasu,

In response to your letter dated 12/18/00, Dr. Berry and I have reviewed your concerns. As stated in Mr. Steve Grinnell's letter that accompanied your medical record, we are sorry for any delay and frustration that you experienced in obtaining your chart.

As for the medical record, you may write any comments/corrections you wish to be included in your medical record. You may send that information to me and I will see that it is included as part of your medical chart.

Mercy Franciscan Hospital
Attn: Colleen Chamberlain, Regional Director Behavior Health
2446 Kipling Avenue
Cincinnati, Ohio 45239

Thank you for taking time to share your concerns.

Sincerely,

Colleen Chamberlain

Colleen Chamberlain

RBBerry

Ravi, Berry, M.D.

CC/emd
CORR:

Ex. 31

August 21, 2000

To: Dr. Desai

From: Connie

Re: Darlington Armadasu

Enclosed is a demo tape of the Echosonographer applicant, Darlington Armadasu. The original is at Mt. Ariy for Dr. Ghazi to review. The copies of the 2D images did not xerox well. I can obtain the originals if you need to see them.

I would like to sit with you when you review this study, if possible. Please page me at 230-9304. If not, please make your comments below.

Thanks!

- Knows image - on apical
- [illegible] the [illegible] Doppler [illegible]
- Measurements questionable - AR
- Frequent failure to get a better image.
- Moving image to [illegible] rather than [illegible] to image.
- Knows where the [illegible].
- Needs to [illegible] [illegible] image - would [illegible] [illegible].
- [illegible] to [illegible] on [illegible]
- old technology (pulsed wave).

Cardiologist

- Knows Color
- Knows pulse wave

No training
apical 2
apical long

Thurs 8/24 @ MA 4:30 pm. normal [illegible].

E4-32

Ex. 33

MHP POSTINGS 06/06/01

| Req# | Position # | Open Dt | Site | Dept | Dept Name | Job Code | Position Descr | Status | Hrs/Wk | Shift | Schedule | Qualifications |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4181 | 6951 | 12/20/00 | Anderson | 17270 | Ct Scan | A3006 | CAT Scan Tech | Part-Time | 20 | 2 | 03:00 PM to 11:00 PM | Must be AART registered or board eligible. Must have license with Ohio Dept of Health |
| 2737 | 5661 | 09/13/00 | Anderson | 17280 | Ultrasound | A3034 | Ultra/Echocardiographer Reg | Full-Time | 37.5 | 1 | 08:00 AM to 04:00 PM | Must be ARRT registered or RDMS.One year experience in diagnostic ultrasound. |
| 4074 | 4448 | 12/13/00 | Anderson | 17390 | Radiation Therapy | A3519 | Specialist Medical Record | Full-Time | 40 | 1 | 08:00 AM to 04:30 PM | Medical record clerical function skills required. Outpatient coder experience preferred, knowledge of ICD9 coding required. Graduate of AHIMA with registered information health technician status preferred or must obtain within one year of employment. Two years of acute care setting required. Willingness to learn cancer registry function. |
| 6445 | 7023 | 05/23/01 | Anderson | 17390 | Radiation Therapy | A3020 | Radiation Therapist | Relief Call | 0 | 1 | 08:00 AM to 04:30 PM | Ohio Licensed radiation therapist with experience. Flexibility in hours to work and able to work at MHA & MHC |
| 5021 | 6612 | 02/14/01 | Anderson | 17500 | Physical Therapy/Hospital | A2501 | *Therapist Physical | Relief Call | 0 | 1 | 08:00 AM to 05:00 PM | Ohio licensed physical therapist with 1-3 years experience working in acute care setting. CPR certification. Must be available during the week and be flexible with coverage on short notice. |
| 6223 | 5511 | 05/09/01 | Anderson | 17500 | Physical Therapy/Hospital | A2501 | *Therapist Physical | Relief Call | 0 | 1 | 08:00 AM to 04:30 PM | licensed physical therapist in the state of Ohio with 2-3 years acute care experience. CPR certification. Candidate must be willing to work on weekends and have flexibility for during the week. Candidate must be flexible and have good organizational skills. |
| 6516 | 4712 | 05/23/01 | Anderson | 17510 | Physical Therapy/Satellite | A3520 | *Asst Physical Therapy | Part-Time | 20 | 1 | 10:00 AM to 07:00 PM | Candidate must be an Ohio licensed PTA with CPR certification. 2-3 years experience working in orthopedic setting required. Experience working with chronic pain and neurological disorders a plus. Candidate must possess good communication, and organizational skills. Must be willing to work in a fast paced, changing environment. |
| 6588 | 6938 | 05/30/01 | Anderson | 17510 | Physical Therapy/Satellite | A5036 | *Aide Therapy | Full-Time | 40 | 1 | 08:00 AM to 05:30 PM | Candidate must be a high school graduate. Experience working in a health care environment preferred. Candidate must be willing to work in a fast paced environment and able to learn the various treatment techniques of the therapists in the department. In addition, candidate must be flexible and able to work some evenings until 7pm |
| 6691 | 848 | 06/06/01 | Anderson | 17510 | Physical Therapy/Satellite | A1305 | *Mgr Therapy Svcs | Full-Time | 40 | 1 | 08:00 AM to 05:00 PM | Graduate of an accredited program in Occupational or Physical Therapy. Master's degree preferred. Holds current license from the State of Ohio. CPR certification. A minimum of 7 years clinical experience and 3 years supervisory experience. Effective communication skills to respond to internal and external customers. |
| 5192 | 14184 | 02/28/01 | Anderson | 17600 | Pharmacy | A2498 | *Pharmacist Staff | Full-Time | 40 | 1 | 07:00 AM to 03:30 PM | Ohio Licensed Pharmacist, preference will be given to candidates with recent hospital experience. |



The *Employee Referral Program*, which awards employees who refer new hires in specific job categories, has been a tremendous success. **KEEP UP THE GOOD WORK!**

It's not too late to be part of the program. If you refer an applicant in one of the following job categories, you could earn a $1500 or $750 referral bonus:

## Positions eligible for a $1500 Referral Bonus:

| | | | |
|---|---|---|---|
| Radiology Tech | OR RN | Surg. Asst./RNFA | Acute Care RN* |
| Mammo Tech | Surg. Tech | Clinical Admin | CT Tech/MRI Tech |
| Pharmacist | Unit Based Educator | Ultrasound Tech | Resp. Therapist |
| IV Infusion RN | Nuclear Med Tech | Echo Tech | Speech Therapist |

*Evening, Nights and Rotating Shifts Only

## Positions eligible for a $750 Referral Bonus:

| | | | |
|---|---|---|---|
| Transcriptionist | Call Center Assoc. | E.D. Tech | PCA/CNA/STNA |
| Phlebotomist | EKG Tech | Paramedic/EMT | IS Systems Analyst |
| Coder | | | |

If we hire a person you refer, you will receive the cash bonus listed above. The bonus is paid after the 90th and 180th day of employment of the referred person. In order to receive payment, you and the person you refer, **must** be employed during the effective period of this program by Mercy Health Partners. Positions must be full-time (72+ hours per 2-week pay period) and posted. Part-time positions (36 through 71 per 2 week pay period) will receive half of the listed bonus amount. A change in status will result in a reduction or loss of bonus. Positions with less than 36 hours per 2 week pay period and PRN positions are not eligible. Managers are not eligible to participate in this program.

Pick up a referral form at your on-site HR office. ***The application or resume of the referred person must accompany the referral form.*** This program will be in effect from **February 1, 2001 through June 30, 2001.**

## Forms are available in the Human Resources Office.

Ex. 34

MERCY Health Partners

☐ A  C ☐
☐ F  H ☐
☒ MA  WH ☐

# Mercy Health Partners
## Security Incident Report

Date of Report: October 6, 2000  Time Reported: 1406
Location: MFMA  Time of Incident: 1400
Unit: MEDICAL RECORDS

- For each category mark as many items as are appropriate to adequately describe the incident.

☐ Property Damage
- ☐ MHP Property
- ☐ Personal Property
  - ☐ Employee
  - ☐ Patient
  - ☐ Visitor
  - ☐ other ____________

☐ Visitor Injury
- ☐ Fall
- ☐ other ____________

☐ Workplace Violence
- ☐ Violent/Aggressive Patient/Visitor/Employee
- ☐ Domestic Situation (see box below)
- ☐ Assaults
- ☐ Threat
  - O phone
  - O verbal
  - O written
  - O other

☐ Thefts
- ☐ MHP
- ☐ employee
- ☐ other

☐ Unlocked/Unauthorized Entry
☒ Suspicious Activity
☐ Safety hazard  Describe ____________
☐ Actual fire
☐ Miscellaneous

**Intervention/Outcome**

| | yes | no |
|---|---|---|
| Restraints applied | ☐ | ☒ |
| Assistance alert | ☐ | ☐ |
| Police notified | ☒ | ☐ |
| Arrest/detention | ☐ | ☒ |
| 911 notified | ☒ | ☐ |

Brief Description of Incident: EX-PSYCH PT FROM MFBHS INITIALLY ABOUT 3 WKS AGO CALLED VIA TELEPHONE AND REQUESTED HIS MEDICAL RECORDS - HE WAS DENIED - EX PT THEN VERBALLY THREATENED STAFF MEMBER + HER CO-WORKERS SAFETY OVER THE PHONE. POLICE NOTIFIED TELEPHONE HARASSMENT REPORT WAS FILED - TODAY SAME MAN ARRIVED IN PERSON @ MFMA MED REC + REQUEST RECORDS FOR SAME - THIS TIME PT IS CLAIMING TO BE A PHYSICIAN - EX-PT DENIED - CPD CALLED + ARRIVED - INFORMED OF THE THREATS - MAN WARNED NOT TO RETURN UNDER CRIMINAL TRESPASS + ESCORTED OFF

Subjects involved and/or person interviewed: HOSP PROPERTY BY HOSP SECURITY + CPD OFC [illegible]

Name: DARLINGTON AMADASU  Phone: (513) 662-7547

Address: 2020 WENDEE DR
CINTI OHIO 45238

Witnesses:

Name: DEANNA MILLER, JEANNIE TWITTY, JANE BRUNERT, PAM PASCOE, ANDREA KEMPF  Phone: (513) 853-5218

Address: MERCY MT AIRY MEDICAL RECORDS EMPLOYEES

This form is a Risk Management/Quality Assurance Tool used to review and follow-up on occurrences for the purpose of identifying factors involved and to improve the quality of care by correcting deficiencies noted in the review of such occurrences

Signature (person completing): Kevin L Haines S. Sec. Ofc.

Ex. 35

1406 - Paged Med Records - Rx Psych
Pt Darlington Amadasu here @
Med Records claiming to be a
Dr. + attempting to obtain his
ED records - CPD notified - Of
Merritt c Dist 5 on scene - subject
last seen exiting hosp on foot in
direction of lot # 1 - per Psych Dr
Berry subject has record for
spousal abuse + assault on a police
officer - also per Dr Berry subject
is believed to carry out either
threats made or statements of
violence by same
Situation cleared 1530

→ Dr Berry informed security to
notify risk mgmt + have subject
taken off property - Dr Berry also
stated he will attempt to contact
Mr Amadasu for counseling

→ Mr Amadasu told not to return
to MFMA or risk possible arrest
under criminal trespass

10-6-00

"Per Psych Dr Berry subject (i.e. plaintiff) has record for spousal abuse & Assault on a police Officer - Also per Dr Berry subject(plaintiff) is believed to carry on Either Threats made or statements of Violence by same"

(From Mercy Franciscan Hopsital Security)

(Mr. Ravi Berry's Defamatory Statement)

Ex. 36

Incident History for: #P002800755

```
Entered      10/06/00  14:12:10  BY PC03/E40
Dispatched   10/06/00  14:44:29  BY CH05/D59       Wait Time     =  00:32:19
Enroute      10/06/00  14:44:29                    Dispatch Time =  00:00:00
Onscene      10/06/00  14:44:29                    Enroute Time  =  00:00:00
Closed       10/06/00  15:32:17                    Onscene Time  =  00:47:48
```

Initial Type: DISORD Initial Alarm Level: Final Alarm Level:
Final Type: DISORD (DISORDERLY PERSON(S)) Pri: 2 Dispo: ADV
Poli BLK: 0432 Fire BLK: 3971 CNT: I
Map Page: Group: P5 Beat: 04 Src: T Misc: Premise: OC
Loc: 2446 KIPLING AV ,CINC -- FRANCISCAN-MT AIRY ,CINC btwn SWEETBRIAR LN & KIPLINGWOOD DR

Loc Info:
Name: DOROTHY WILLIAMS/OPERAT Addr: SAME Phone: 853-5000

| | | | | |
|---|---|---|---|---|
| /1412 | (E40 ) | ENTRY | | SECURITY ASKING FOR HELP WITH DISORDERLY SUBJ WHO WILL NOT LEAVE PROPERTY --SECURITY WILL MEET POLIC E IN LOBBY AND SHOW WHERE HE IS |
| /1412 | (D59 ) | HOLD | | |
| /1424 | (*****) | $CODE96 | | |
| /1426 | (E22 ) | SUPP | | TXT: M/B, WAS RELEASED A MONTH AGO FROM PSCHY UNIT **HE REQUESTED FOR HIS RECORDS TO BE RELEASED ** H E THREATENED STAFF MEMBER 3-34 TIMES*CAME IN TODAY AND IS PRETENDING TO BE A DOCTOR TRYING TO GET TH E SAME RECORDS ** |
| /1427 | | SUPP | | TXT: SUBJ IS LAST NAME OF NAME AMADASU** UNK LAST NAME**LEAVING THE PRESIDENT' S OFFICE ON THE 2ND F L** |
| /1444 | (D59 ) | DISPOS | 5742 | #P268 MERRITT,RALPH,E*DUI* |
| /1506 | (D11 ) | OK | 5742 | |
| /1532 | | MISC | 5742 | ,10/06/00 15:31:35 TO CH05 FROM 5742 |
| /1532 | | MISC | 5742 | ,ADV ON 2446 KIPLING AV...SEND ME CEDAR AV RUN THX ...35 .... |
| /1532 | | CLEAR | 5742 | D/ADV |
| /1532 | | CLOSE | 5742 | |

Ex.37



**Mercy Franciscan Hospital – Mt. Airy**
2446 Kipling Avenue
Cincinnati, Ohio 45239

513 • 853 • 5000

TO: [illegible] DATE: [illegible]

PATIENT NAME [illegible]

MEDICAL RECORD NUMBER [illegible]

Dear Sir or Madam:

The following information is in accordance with Section 2317.422 of the Ohio Revised Code. I hereby certify that the attached is a true and complete photostatic copy of the original record on the patient whose name appears above. The above stated patient was seen at Mercy Franciscan Hospital-Mt. Airy Campus on the following date(s):

4-25-[illegible] [illegible]

This copy was reproduced from the original record and prepared in the usual course of business of the Medical Record Department of Mercy Franciscan Hospital-Mt. Airy Campus.

Sincerely,

[signature]

Department Manager

Ex. 38

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **DARLINGTON AMADASU, pro se** | : | Case No. 1:01cv182 |
| Plaintiff, | : | (Judge Spiegel/Magistrate Judge Black) |
| vs. | : | **RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSIONS TO MERCY FRANCISCAN HOSPITAL MT. AIRY** |
| **MERCY FRANCISCAN HOSPITAL – WESTERN HILLS, et al.,** | : | |
| Defendant. | : | |

**GENERAL OBJECTIONS**

(a) The information supplied in these Responses is not based solely upon the knowledge of the verifying party, but includes information assembled by and/or within the knowledge of the party's authorized agents, representatives, and, unless privileged, attorneys. Given the alleged facts and nature of Plaintiffs' claims combined with other circumstances, and because much of the information is of, or relates to, events of several years ago, it may be difficult, if not impossible, for Defendant to retrieve or produce some of the requested information. It is also possible that some of the individuals who might have had personal knowledge of the matters to which Plaintiffs' discovery relate are unavailable to Defendant. Defendant is engaged in an ongoing investigation with respect to the matters inquired into by Plaintiffs' discovery. Accordingly, Defendant, hereby reserves its right to amend these Responses if new or more accurate information becomes available or if errors are discovered. For this reason, Defendant cannot attest to the completeness, veracity or accuracy of all such information. Furthermore, these Responses are given without prejudice to the Defendant's

Ex. 39

(i) Defendant specifically objects to any Interrogatory or Request for Production of Documents that seeks to discover trial preparation or other privileged expert information and/or data. Appropriate disclosures shall be made in accordance with the Court's Scheduling Order.

(j) Defendant specifically objects to the Plaintiffs' use and definition of the term "incident" in their Interrogatories and Requests for Production of Documents. General use of the term "incident" is vague, ambiguous, subject to multiple interpretations and likely to engender substantial confusion, particularly in light of the fact that no definition of the term has been offered by Plaintiffs.

**REQUESTS FOR ADMISSION**

1. Admit that you have no records of communications between MFHMA and receiving/transferee Crisis Stabilization Center regarding plaintiff's transfer thereto.

**ANSWER**: DENY.

2. Admit that you have no and cannot produce documents showing that MFHMA and or your qualified employee or designee communicated with plaintiff in order for him to make informed consent for transfer to Crisis Stabilization Center (CSC).

**ANSWER**: DENY.

3. Admit that you failed to execute "Doctor Certification for Patient-Plaintiff Transfer Order" to Crisis Stabilization Center (CSC) showing executed sections, i.e., Patient Condition, Receiving Facility-CSC, Method of Transfer, Reason for Transfer, Patient-Plaintiff Certification and Signature, Doctor's Certification and Signature, and Summary of the risks and benefits upon which the certification is based

**ANSWER**: Objection to the extent that the request implies that the described form is applicable to Plaintiff's discharge to CSC; without waiving the objection, ADMIT.

4. Admit that receiving facility-CSC never signed document or certification assuring availability of space and qualified personnel for the treatment of the plaintiff, or agreement to accept transfer of plaintiff and to provide appropriate medical treatment that should you have enabled your transfer of plaintiff

Ex. 40

**ANSWER**: Objection to the extent that the request implies that the described procedure is applicable to Plaintiff's transfer to CSC; without waiving the objection, MMA has no information regarding the content of any record from CSC, and can therefore neither admit or deny the request.

5. Admit that you have no document showing the date and time of the day that accepting facility-CSC and or accepting physician or designated qualified medical staff of CSC actually received and accepted plaintiff upon his transfer by you

**ANSWER**: Objection to the extent that the request implies a requirement on the part of MMA; without waiving the objection, ADMIT.

6. Admit you failed to assess and document the actual state of the plaintiff's health, illnesses and conditions at the time of his discharge, transfer and the termination of your relationship with the plaintiff including diagnosis, differential diagnosis, course of treatment, progression, and prognosis of each of the complaints, conditions, illnesses, or injuries that plaintiff had.

**ANSWER**: Objection, the request is improperly directed to this Defendant; without waiving the objection, DENY.

7. Regarding the informed consent for transfer to Crisis Stabilization Center, admit
   a.) that you failed to obtained plaintiffs signed written informed consent for transfer to Crisis Stabilization Center
   b.) that no body or person obtained signed written informed consent from plaintiff before transfer,
   c.) that neither you nor any other person made any communication or disclosure to the plaintiff for the purpose of obtaining the mandatory signed written informed consent for the transfer,
   d.) that nobody in any manner, oral or in writing, communicated any plaintiff's consent to you that should have enabled you to transfer him
   e.) that you do not and cannot produce plaintiff's signed written informed consent to transfer

**ANSWER:** DENY, to the extent that the request implies that the statements set forth therein are applicable to plaintiff's transfer and to the extent that the request implies plaintiff did not consent to transfer. Defendant Admits plaintiff did not give written consent to transfer.

Ex. 41